IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

1:22cr24 AW/GRJ

UNITED STATES OF AMERICA

v.                                                              INFORMATION

PATRICK PARKER WALSH
_____/

THE U.S. ATTORNEY CHARGES:

COUNT ONE

A. INTRODUCTION

At all times material to this Information:

1. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

## The Paycheck Protection Program

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the SBA Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, called an SBA Form 2483. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to certify, among other things, its: (a) average monthly payroll expenses, and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll

expenses and that they were in business as of February 15, 2020. Further, businesses applying for a PPP loan were required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized, and not any duplicative, purposes.

5. PPP loan applications were required to be signed by an authorized representative of the business. By signing PPP loan applications, applicants attested that the information provided in the application and in all supporting documents and forms was true and accurate, and that the applicant understood that knowingly making a false statement to obtain a PPP loan was a crime.

6. PPP loan proceeds must have been used by the business on certain permissible expenses- payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and used at least 75% of the PPP loan proceeds on payroll expenses.

7. A PPP loan application was required to be processed by a participating financial institution ("the lender"). If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the loan application, including information

3

about the borrower, the total amount of the loan, and the listed number of employees, was electronically transmitted by the lender to the SBA in the course of processing the loan.

### Economic Injury Disaster Loans

8. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

9. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including: information about the gross revenues for the business prior to January 31, 2020; and the cost of goods sold. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or

4

misrepresentation to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

10. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

### Financial Institutions and Lenders

11. Celtic Bank ("Celtic"), WebBank, Renasant Bank, Trustmark National Bank ("Trustmark"), First Home Bank, and J.P. Morgan Chase Bank ("Chase") were financial institutions, the deposits of which were federally insured by the Federal Deposit Insurance Corporation, and which were headquartered outside of the state of Florida. Celtic, WebBank, Renasant Bank, Trustmark, and First Home Bank offered PPP loans to its customers.

12. Fountainhead SBF, LLC ("Fountainhead") was a non-bank commercial lender that offered SBA PPP loans to owners of small to midsize businesses.

13. Newtek Small Business Financial, Inc. ("Newtek") was a business development company that offered SBA PPP loans to its clients. Newtek used

computer servers located outside of Florida to process loan applications for its clients.

14. Harvest Small Business Finance, LLC ("Harvest") was a non-bank lender that offered SBA PPP loans to small business borrowers. Harvest used computer servers located outside of Florida to process loan applications for its clients.

## B. THE CHARGE

Between on or about April 7, 2020, and on or about January 18, 2021, in the Northern District of Florida and elsewhere, the defendant,

**PATRICK PARKER WALSH,**

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did cause a wire communication to be transmitted in interstate commerce.

## C. SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

1. **PATRICK PARKER WALSH** made and caused to be made false and fraudulent representations in SBA PPP and EIDL loan applications and in supporting loan documents submitted to Celtic, WebBank, Renasant Bank, Trustmark, First Home Bank, Chase, Fountainhead, Newtek, Harvest, and the SBA

in the name of business entities, namely, Airsign Inc, Airsign Airships Latin America, Eagle Ridge Management Group LLC, Airsign Airship Repair Station, Shiloh Oil Company, Airsign Group, Airsign Airship Group, Walsh Family Land Corp, Aero Capital LLC, Airsign Airships America, Airsign Airships Title, American Blimp Company LLC, Airsign Airships Asia Pacific, Palmetto Springs Plaza, Carter Oil, Airsign-MZ3A LLC, Mariena Oil Trust, Davis Oil, and Skywrite Aerial Advertising, in order to falsely qualify for SBA PPP and EIDL loans.

2. **PATRICK PARKER WALSH** specifically attempted to cause and caused Celtic, WebBank, Renasant Bank, Trustmark, First Home Bank, Chase, Fountainhead, Newtek, Harvest, and the SBA to issue SBA PPP and EIDL loans, and to disburse SBA PPP and EIDL loan proceeds to him based upon loan applications, loan documents, and emails that falsely represented the number of employees and average monthly payroll expenses for Airsign Inc, Airsign Airships Latin America, Eagle Ridge Management Group LLC, Airsign Airship Repair Station, Shiloh Oil Company, Airsign Group, Airsign Airship Group, Walsh Family Land Corp, Aero Capital LLC, Airsign Airships America, Airsign Airships Title, American Blimp Company LLC, Airsign Airships Asia Pacific, Palmetto Springs Plaza, Carter Oil, Airsign-MZ3A LLC, Mariena Oil Trust, Davis Oil, and Skywrite Aerial Advertising. In particular, the names and personal identification information for some former and current employees of **WALSH's** business entities

were falsely duplicated and submitted as part of the SBA PPP and EIDL loan applications for **WALSH's** business entities for which the employees did not work.

3. **PATRICK PARKER WALSH** electronically mailed and submitted, and caused to be electronically mailed and submitted, false and fraudulent documentation to Celtic, WebBank, Renasant Bank, Trustmark, First Home Bank, Chase, Fountainhead, Newtek, Harvest, and the SBA for the SBA PPP and EIDL loan applications.

4. **PATRICK PARKER WALSH** communicated, via email and telephone, with the financial institutions at which he applied for SBA PPP loans, and with Fountainhead, Newtek, Harvest, and the SBA, about the loan applications and their status, and the funding of such loans.

5. By this conduct, **PATRICK PARKER WALSH** fraudulently obtained and attempted to obtain more than $14,000,000 in monies and funds from Celtic, WebBank, Renasant Bank, Trustmark, First Home Bank, Chase, Fountainhead, Newtek, Harvest, and the SBA to which he was not entitled.

### D. EXECUTION OF THE SCHEME

Between on or about April 23, 2020, and on or about May 27, 2020, for the purpose of executing and attempting to execute the scheme to defraud, the defendant, **PATRICK PARKER WALSH** knowingly did cause wire

communications to be transmitted in interstate commerce, to wit, a Paycheck Protection Program Borrower Application Form (SBA Form 2483), a U.S. SBA Note, a loan agreement, and an Agreement to Cooperate, to Fountainhead.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

### A. INTRODUCTION

The allegations of Section A of Count One is hereby realleged and incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about April 20, 2020, and on or about November 10, 2020, in the Northern District of Florida and elsewhere, the defendant,

**PATRICK PARKER WALSH,**

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, to wit, a wire transfer and ACH payment of $272,455.53 to Superior Loan Servicing, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, as charged in Count One of this Information.

In violation of Title 18, United States Code, Section 1957 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One and Two of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From his engagement in the violations alleged in Counts One and Two of this Information, the defendant,

## PATRICK PARKER WALSH,

shall forfeit to the United States of America:

(A) pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as alleged in Count One of this Information, any and all of the Defendant's right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offense;

(B) pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as alleged in Count Two of this Information, any and all of the Defendant's right, title, and interest in any property, real and personal, involved in such offense, and any property traceable to such property.

The United States will also seek a forfeiture money judgment in the sum of $7,818,167.00, which is equal to the value of any property, real or personal, which:

1) constitutes or is derived from proceeds traceable to these offenses, and 2) is involved in such offenses and any property traceable to such property. The property subject to forfeiture includes, but is not limited to, the following:

1. Real property located and situated in Levy County, Florida, located at 17370 NE 75th Street, Williston, FL 32696, further described in Levy County Official Records Book 1480 and Page 268 as

> A PARCEL OF LAND LYING IN SECTION 23, INSIDE THE ARREDONDO GRANT, TOWNSHIP 12 SOUTH, RANGE 18 EAST, LEVY COUNTY, FLORIDA, Parcel Identification # 04123-000-00.

2. Real property located and situated in Eastland County, Texas, located at 7005 Hwy 183, Cisco, TX 76437, further described in Eastland County Official Records Volume 2020 Page 3259 as

> 2.625 ACRES, ABST. 249, BLK. 3, SEC 65, H & TC RR, EASTLAND COUNTY, TEXAS, Property Identification # 16937.

3. Real property located and situated in Levy County, Florida, located at 12 NW 5TH PL, WILLISTON, FL 32696, further described in Levy County Official Records Book 1565 and Page 643 as

> A PARCEL IN SECTION 31, TOWNSHIP 12 SOUTH, RANGE 19 EAST, LEVY COUNTY, FLORIDA, Parcel Identification # 04780-000-00.

4. Real property located and situated in Levy County, Florida, commonly known as "Sweetheart Island," and further described in Levy County Official Records Book 1534 and Page 942 as

> LOTS 6 AND 9 IN SECTION 2, TOWNSHIP 17 SOUTH, RANGE 15 EAST, LEVY COUNTY, FLORIDA, Parcel Identification # 02290-000-00.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendant:

    i. cannot be located upon the exercise of due diligence;

    ii. has been transferred, sold to, or deposited with a third party;

    iii. has been placed beyond the jurisdiction of this Court;

    iv. has been substantially diminished in value; or

    v. has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

JASON R. COODY
United States Attorney

JUSTIN M. KEEN
Assistant United States Attorney

8/29/2022
DATE