# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

**v.**                                           **CASE NO.  1:22cr00024/AW**

**PATRICK PARKER WALSH**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America files the following memorandum in aid of sentencing, and to specifically address the impact of *United States v. Dupree*, 19-13776, 2023 WL 227633 (11th Cir. Jan. 18, 2023), as ordered by this Honorable Court (ECF No. 30):

## I.    INTRODUCTION

The Presentence Investigation Report ("PSR"), ECF No. 29, and the Statement of Facts ("SOF"), ECF No. 18, both set out many of the details of Defendant's crimes.  Thus, the Government will not restate the full factual and procedural background of the case.  Rather, the Government will discuss some of the sentencing factors for this Honorable Court's consideration, including its position as to the PSR objections raised by both parties.

## II.    LEGAL STANDARD

Since *United States v. Booker*, 543 U.S. 220 (2005), to impose a lawful sentence, trial courts must start by correctly calculating a defendant's advisory

United States Sentencing Guidelines ("U.S.S.G.") range. *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (*per curiam*).

<u>Objections to Guideline Calculations</u>

The Government objected to the guideline calculations contained in the PSR because it failed to include a two-level enhancement pursuant to USSG § 2B1.1(b)(17)(A). ECF No. 27. For the reasons set forth in its objection, the enhancement ought to be included in the applicable guideline calculation for Defendant Walsh's case.

The defense objected to the guideline calculations contained in the PSR, *inter alia*, because "intended loss" was used to determine his offense level under USSG § 2B1.1(b)(1), which the defense characterized as being contrary to *United States v. Frederick Banks,* 55 F.4th 246 (3d Cir. 2022)[1]—a non-binding case in this circuit—and others. The defense objection also cited *United States v. Dupree*, 19-13776, 2023 WL 227633 (11th Cir. Jan. 18, 2023), which involved an application note to USSG § 4B1.2 (defining a "controlled substance offense"), and which also cited *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019), as authority. PSR at ¶ 107. At the time of the defense objection, *Dupree* had not yet been decided.

---

[1] It is worth noting that the *Banks* court focused on the dictionary definition of "loss," which is important to the Government's argument, below. *See Banks*, 55 F.4th at 258 ("Our review of common dictionary definitions of 'loss' point to an ordinary meaning of 'actual loss.'")

<u>Government's response in light of *Dupree*</u>

Shortly after the defense objection was raised, and the Government filed its reply to that objection, ECF No. 28, the *Dupree* court decided that "that the text of § 4B1.2(b) unambiguously excludes inchoate crimes. Under *Kisor*,[2] that concludes our analysis, and we have no need to consider, much less defer to, the commentary in Application Note 1." *Dupree*, 2023 WL 227633, at *8.

This Honorable Court has ordered the parties to file memoranda that set out their positions on the issue in light of the recent *Dupree* decision. At the outset, the Government responds that its position has not changed, and that a 20-level enhancement pursuant to USSG § 2B1.1(b)(1)(K) is still appropriate for the reasons set forth in its reply to the defense objections in this case (ECF No. 28). The Government does concede that its reliance on *United States v. Moss*, 34 F.4th 1176, 1190 (11th Cir. 2022), has been defeated by the recent *Dupree* decision. However, the Government submits that *Dupree* did not address the heart of its

---

[2] In *Kisor*, the Supreme Court clarified several limiting principles for when deference to an agency's interpretation of its own regulation is appropriate. 139 S. Ct. at 2414. First, *Kisor* explained that deference to an agency's interpretation is unwarranted "unless the regulation is genuinely ambiguous." *Id*. at 2415. To determine whether there is a genuine ambiguity, courts must "exhaust all the 'traditional tools' of construction." *Id*. "[I]f there is only one reasonable construction of a regulation, a court has no business deferring to any other reading." *Id*. And even if ambiguity remains after careful consideration the "text, structure, history, and purpose" of the regulation, "the agency's reading must still be reasonable," meaning that "it must come within the zone of ambiguity the court has identified after employing all its interpretative tools." *Id*. at 2416. And then still, the Court must also determine "whether the character and context of the agency interpretation entitles it to controlling weight," which turns on three considerations: (1) whether the regulatory interpretation is actually made by the agency; (2) whether the interpretation implicates the agency's "substantive expertise;" and (3) whether the interpretation reflects "fair and considered judgment." *Id*. at 2416-17.

position: USSG §2B1.1 must be read in concert with the relevant conduct principles announced in §1B1.3, and that doing so results in no ambiguity.

The text of the Sentencing Guidelines requires adherence to the contents of Chapter One (titled "Introduction, Authority, and General Application Principles"), including, of particular importance, USSG §1B1.3 ("Relevant Conduct (Factors that Determine Guideline Range)"); the contents of Chapter One should further be applied to and considered alongside the remainder of the Sentencing Guidelines, including the text of Chapter Two (Offense Conduct)." *See* USSG §1B1.3(a). Among other things, relevant conduct "shall be determined on the basis of… all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, **and all harm that was the object of such acts and omissions**." USSG §1B1.3(a)(3) (emphasis added). In other words, the text of the Sentencing Guidelines defines the universe of harm that the district courts must consider, and a plain reading of the emphasized portion of that definition, *above*, includes actual and intended harms.

In this case, USSG §2B1.1 applies to the guideline calculations for Defendant Walsh's sentencing. PSR at ¶ 25. Specifically, the specific offense characteristics (§2B1.1(b)(1)) establish various loss thresholds for which corresponding increases in offense level apply. Yet it is important to note that the text of § 2B1.1, which increases the defendant's offense level based on the harm –

loss amount – caused by the defendant's conduct, must be read in concert with § 1B1.3. Section 1B1.3(a)(3) puts actual and intended harm on the same footing, and reading the text of both sections together shows the Sentencing Commission's intent to include "intended loss" in relevant conduct, and in turn, in the guideline calculations.

Significantly, this interpretation does not conflict with the plain meaning of the guideline—the term "loss" still carries its ordinary meaning of pecuniary harm. *See Banks*, 55 F.4th 258 (noting that, "in context, 'loss' could mean pecuniary or non-pecuniary loss and could mean actual or intended loss."). Read together, §§ 1B1.3(a)(3) and § 2B1.1(b)(1) simply instruct the Court to determine the extent to which the "harm that resulted from [the offense] and [the] harm that was the object of [the offense]" constitute pecuniary harm. To exclude the "harm that was the object of [the offense]"—*i.e.*, the intended harm—from the analysis would contravene the plain text of § 1B1.3(a)(3).

Recognizing the holdings of *Kisor* and *Dupree*, the Government submits that the text of the Sentencing Guidelines contains no ambiguity: the best reading of USSG §§1B1.3(a)(3) and 2B1.1(b)(1) reflects that "all harm that was the object of such [criminal] acts and omissions" includes "intended loss." The commentary to §2B1.1 is immaterial to the analysis in this case as the text of both §§1B1.3(a) and 2B1.1(b)(1) are not ambiguous. Thus, under *Dupree*, no further analysis (under

*Kisor*) is required, and this Honorable Court has "no need to consider, much less defer to, the commentary in Application Note [3]" to §2B1.1. 2023 WL 227633, at *8.

But even if this Court believes that the Government's interpretation conflicts with the plain meaning of the term "loss," that conflict would merely demonstrate that the "interpretative question" of whether §§ 1B1.3(a)(3) & 2B1.1(b)(1) together require consideration of intended loss "has no single right answer," leaving an ambiguity for the Sentencing Commission to resolve by interpretation. *Kisor*, 139 S. Ct. at 2415. And the Sentencing Commission's answer in Application Note 3 has all the hallmarks of an agency interpretation warranting deference. *See* ECF No. 28 at 3-5 (excluding any argument that *Moss* is binding authority which forecloses the defense objection as to this issue). In sum, the Sentencing Commission has made the reasoned and considered judgment that that intended loss is a better gauge of culpability than actual loss. In fact, given the Commission's expertise and collective wisdom, the Sentencing Guidelines have always defined "loss" to include "intended loss." *See* ECF 28 at 5. The Sentencing Commission's interpretation of §§ 1B1.3(a)(3) and 2B1.1(b)(1) is reasonable and should be respected here.

### III.    APPLICATION OF 18 U.S.C. § 3553(A) FACTORS[3]

After the Court calculates a defendant's advisory guideline range, it "may impose a more severe or more lenient sentence as long as the sentence is reasonable." *Williams*, 435 F.3d at 1353 (quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005)). That is, the Court is to properly calculate Defendant's guideline range but, after doing so, it must consider the factors set forth in 18 U.S.C. §3553(a) and may tailor Defendant's sentence based on those factors.  The Eleventh Circuit has summarized the §3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training and medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Ochoa-Torres*, 519 F. App'x 583, 584 (11th Cir. 2013).  The factors set forth in 18 U.S.C. §3553 mirror the reasons traditionally recognized for imposing sentence: (a) retribution, (b) deterrence, sometimes referred to as "general deterrence" (*i.e.*, the need to deter others from committing like crimes),

---

[3] This Sentencing Memorandum does not specifically discuss every § 3553 sentencing factor.

(c) incapacitation, sometimes referred to as "specific deterrence" (*i.e.*, the need to prevent Defendant from committing crime), and (d) rehabilitation. *Bullington v. Missouri*, 451 U.S. 430, 443 n.16 (1981); *United States v. Godfrey*, 22 F.3d 1048, 1058 (11th Cir. 1994).

### A. The Nature and Circumstance of the Offense and the History and Characteristics of Defendant – 18 U.S.C. § 3553(a)(1)

#### 1. *The Offense Conduct*

The Government urges this Court to rely on the PSR and the Statement of Facts as a complete account of Defendant's offense conduct. Such evidence against Defendant demonstrates that his crimes are egregious and the product of greed. In total, Defendant Walsh fraudulently obtained almost $8 million—and endeavored to obtain close to $15 million—through multiple false PPP loan and EIDL applications. In doing so, he took funds that were intended for honest business owners, to whom these funds meant the difference between survival and financial ruin, and used them instead to purchase luxury goods, oil fields, and a private island.

#### 2. *The History and Characteristics of Defendant*

Defendant's family life and upbringing are set forth in the PSR. Neither Defendant's history nor his personal characteristics justify a sentence mitigation or a downward variance in this case.

**B.** **The Sentence Should Reflect the Seriousness of the Offense, Promote Respect for the Law, Afford Adequate Deterrence to Criminal Conduct, Protect the Public from Further Crimes of Defendant, and Provide Just Punishment for the Offense - 18 U.S.C. § 3553(a)(2)**

*1.* *Reflecting Seriousness of the Offense*

The Government notes that economic crimes, like those at issue here, are as serious as many other cases that come before this Court. This is especially true when the case, such as this one, involves an on-going scheme to defraud federal government benefit programs during a time of an unprecedented pandemic. Thus, the Sentencing Guidelines should not be ignored or discounted because Defendant is being sentenced for what are typically referred to as "white-collar" crimes.

Section 3553(a)(2)(A) requires that district courts consider "the need for the sentence imposed" to "reflect the seriousness of the offense." Stated differently, "the length of the sentence should reflect the harm done and the gravity of Defendant's conduct." *United States v. Walker*, 844 F.3d 1253, 1256 (10th Cir. 2017); *see also United States v. Pugh*, 515 F.3d 1179, 1195 (11th Cir. 2008).

*2.* *General Deterrence*

Further, "[g]eneral deterrence is one of the key purposes of sentencing." *Walker*, 844 F.3d at 1257. Congress has recognized that general deterrence is particularly important in the context of white-collar crime. *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (citing *United States v. Martin*, 455 F.3d

1227, 1240 (11th Cir. 2006)) ("[T]he Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense."); S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime."). "In enacting § 3553, Congress was especially concerned that prior to the Sentencing Guidelines, major white collar criminals often were sentenced to small fines and little or no imprisonment." *United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) (cleaned up). "White collar criminals may be particularly susceptible to general deterrence because '[d]efendants in white-collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment.'" *Sample*, 901 F.3d at 1200 (citing *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013)); *see also United States v. Vrancea*, 136 F. Supp. 3d 378, 392 (E.D.N.Y. 2015) ("Persons who commit white-collar crimes like [D]efendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of punishments that may be imposed. A serious sentence is required to discourage such crimes."). Further, a district court's dismissal of the relevance of deterrence to others[4] was

---

[4] Such as by making the following comment: "[I] don't give much stock in the fact that others are deterred by the fact that you're sent to prison for a long time."

found to conflict with Congress' directive to sentencing judges. *Walker*, 844 F.3d at 1257.

Additionally, as a part of the Fifth Circuit's discussion in *United States v. Hoffman*, 901 F.3d 523, 556-57 (5th Cir. 2018), the Court noted that:

> Another problem with probation in multimillion dollar fraud cases is that it undermines public confidence in whether the justice system is "do[ing] equal right to the poor and to the rich" as our oath requires. 28 U.S.C. § 453. For these reasons, we have repeatedly expressed a "distaste for sentencing that reflects different standards of justice being applied to white and blue collar criminals," *United States v. Saleh*, 257 F. App'x 740, 745 (5th Cir. 2007) (citing *United States v. Andrews*, 390 F.3d 840, 848 (5th Cir. 2004)); see also *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (noting the need to minimize "discrepancies between white- and blue-collar offenses").

As it relates to PPP and EIDL fraud, this Court's sentence in this case will have nationwide importance, as there have been countless instances of such fraud since the beginning of the coronavirus pandemic. A significant sentence will deter others who might consider perpetrating similar fraud schemes; yet a lenient sentence might do little to dissuade such criminal conduct. In fact, the Eleventh Circuit has repeatedly emphasized that "general deterrence is a critical factor that must be considered and should play a role in sentencing defendants." *United States v. Oudomsine*, No. 22-10924, 2023 WL 220349, at *3 (11th Cir. Jan. 18, 2023) (a case involving pandemic-related SBA EIDL fraud) (quoting *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022)). More importantly, the Eleventh Circuit has expressed the view that "[g]eneral deterrence is more apt, not less apt,

in white collar crime cases." *Oudomsine*, 2023 WL 220349, at \*3 (quoting

*Howard*, 28 F.4th at 209); *see also United States v. Martin*, 455 F.3d 1227, 1240

(11th Cir. 2006) ("[T]he Congress that adopted the § 3553 sentencing factors

emphasized the critical deterrent value of imprisoning serious white collar

criminals, even where those criminals might themselves be unlikely to commit

another offense[.]"). "Economic and fraud-based crimes are more rational, cool

and calculated than sudden crimes of passion or opportunity, which makes them

prime candidates for general deterrence…[and] [b]ecause white collar criminals

often calculate the financial gain and risk of loss of their crimes[,] an overly lenient

sentence sends the message that would-be white-collar criminals stand to lose little

more than a portion of their ill-gotten gains and practically none of their liberty."

*Oudomsine*, 2023 WL 220349, at \*3 (quoting *Howard*, 28 F.4th at 209) (quotation

marks omitted).

### 3. *Purpose and Intent of Sentencing Guidelines*

In *United States v. Rigas*, two defendants were convicted of white-collar

offenses. 583 F.3d 108 (2d Cir. 2009). On appeal, the defendants noted that their

sentences for their white-collar crimes were only slightly shorter than the sentences

of some admitted or convicted terrorists. *Id*. The Second Circuit rejected the

argument and affirmed, finding that the sentences "were procedurally and

substantively reasonable." *Id*. at 126. Further, *Rigas* stated that "stiff Guidelines

sentences for 'white-collar' crimes reflect Congress' judgment as to the appropriate national policy for such crimes." *Rigas*, 583 F.3d at 124 (internal citation omitted); *see also Martin*, 455 F.3d at 1240 ("The fact that Martin's guidelines range was 108-135 months' imprisonment evinces Congress's attempt to curb judicial leniency in the area of white collar crime.").

### C.    Avoiding Sentencing Disparities - 18 U.S.C. § 3553(a)(6)

The rationale for using loss amount to calculate a Guidelines Sentence was to "eliminate disparities between white- and blue-collar offenders." *United States v. Prosperi*, 686 F.3d 32, 38 (1st Cir. 2012); *see also United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) ("One of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes."). Further, "[o]ne of the goals of the Sentencing Guidelines was to give greater equivalence between penalties for white collar crimes like fraud and violent crimes like robbery." *Prosperi,* 686 F.3d at 38. The fact that "some judges have chosen as a policy matter not to sentence white collar criminals to the harshest permissible punishments, [ ] does not entitle other white collar criminals to [receive] lighter punishments[.]" *United States v. Goffer*, 721 F.3d 113, 131 (2d Cir. 2013).

In other courts, convictions for pandemic relief fraud have resulted in lengthy prison sentences. For example, the Defendant in *Oudomsine* was sentenced to 36 months' imprisonment for wire fraud, an upward variance from the guidelines range of 8 to 14 months, for providing false information to obtain an $85,000 Economic Injury Disaster Loan (EIDL), and then using most of those fraud proceeds to purchase a $57,789 Pokémon card. *Oudomsine*, 2023 WL 220349, at *3. In another case, a Florida couple was sentenced to 18 months and 30 months in prison, respectively, for their participation in a scheme to file four fraudulent PPP loan and EIDL applications seeking more than $1.1 million. https://www.justice.gov/opa/pr/couple-who-falsely-claimed-be-farmers-sentenced-11-million-covid-relief-fraud. Additionally, a father and son were sentenced to 48 months and 87 months in prison, respectively, for COVID-19 relief fraud involving a loss of $1.7 million. https://www.justice.gov/opa/pr/father-and-son-sentenced-17-million-covid-19-relief-fraud. Another Defendant, who fraudulently sought over $1.2 million in PPP loans from federally-insured financial institution on behalf of eight different companies, was sentenced to 57 months in prison. https://www.justice.gov/opa/pr/man-sentenced-his-role-directing-covid-19-relief-fraud-scheme. A Georgia woman was sentenced to 41 months in prison for her scheme to fraudulently obtain more than $7.9 million—and for actually obtaining

$6 million—in PPP loans. https://www.justice.gov/opa/pr/georgia-woman-sentenced-41-months-covid-19-fraud-scheme.

## IV. DEPARTURES[5] AND VARIANCES [6] FROM DEFENDANT'S GUIDELINE RANGE

### A. Sentencing Framework – The Importance of the Guidelines

The sentencing guidelines "are an indispensable tool in helping courts achieve Congress's mandate to consider the need to avoid unwarranted sentence disparities among similarly situated defendants," *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) (cleaned up), which is required by 18 U.S.C. § 3553(a)(6).

---

[5] "Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). "A 'departure' is a divergence from the originally calculated sentence range based on a specific Guidelines departure provision, whereas a 'variance' is a divergence from the Guidelines range based on an exercise of the Court's discretion under § 3553(a)." *United States v. Gorbatenko*, 181 F. Supp. 3d 842, 849 (D. Or. 2015) (citing *United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011)).

[6] "A variance must be based on the factors in 18 U.S.C. § 3553(a)." *United States v. Myers*, 503 F.3d 676, 684 (8th Cir. 2007). "When the district court correctly calculated the guidelines range, found that the range did not address adequately the § 3553(a) factors, and did not cite a specific departure provision, [the Eleventh Circuit] has concluded that the above-guidelines sentence involved a variance rather than a departure." *United States v. Nelson*, 644 F. App'x 979, 982 (11th Cir. 2016). Where the district court's rationale for a particular sentence does not refer to the U.S.S.G. and is based on the 18 U.S.C. § 3553(a) factors, and its finding that the advisory guidelines range was inadequate, the district court's decision is properly considered an upward variance, not a departure." *Id.* at 983. Because the guidelines are now advisory (post-*Booker*), a "departure" is only a "variance" based on the sentencing factors in § 3553(a); thus, there is no longer a need for strict compliance with Fed.R.Crim.P. 32(h) (requiring prior notice to the parties) before imposing a variance sentence. *See United States v. DuBoc*, 2009 WL 150670, at *4 (N.D. Fla. Jan. 21, 2009) (J. Hinkle). In reviewing the sentence, the appellate court must give due deference to the district court's decision that the § 3553(a) factors justify the variance; "that the appellate court might have reasonably reached a different conclusion does not justify reversal." *Gall v. United States*, 552 U.S. 38, 39 (2007).

Even though not bound by the guidelines, a sentencing court may not give them so little consideration that it amounts to "not giv[ing] any real weight to the Guidelines range in imposing the sentence." *Pugh*, 515 F.3d 1179, 1200 (11th Cir. 2008); see also *Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); *see generally, Kimbrough v. United States*, 552 U.S. 85, 107 (2007) ("[I]t is unquestioned that uniformity remains an important goal of sentencing. As we explained in *Booker*, however, advisory Guidelines combined with appellate review for reasonableness and ongoing revision of the Guidelines in response to sentencing practices will help 'to avoid excessive sentencing disparities.'"); *Rita v. United States*, 551 U.S. 338, 348 (2007) ("The upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale."); *United States v. Irey*, 612 F.3d 1160, 1217-18 (11th Cir. 2010).

**B.     An Upward Departure May Be Warranted Per U.S.S.G. § 5K2.5**

The text of (and not commentary to) U.S.S.G. § 5K2.5 provides that:

If the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction.

Should this Court decline to calculate the Defendant's guideline level based, in part, on his "intended loss" (despite the Government's positions noted *above*), it could decide that an upward departure is warranted as the PPP and EIDL proceeds that the Defendant intended to steal or fraudulently obtain which exceeds the amounts that he actually obtained were not taken into account by the guidelines.

### C.     An Upward Variance May Also Be Warranted

<u>Caselaw Supports an Upward Variance</u>

"A sentence's variance outside the guidelines range, whether upward or downward, represents a district court's judgment that the combined force of the other § 3553(a) factors are entitled to greater weight than the guidelines range. Otherwise, there would never be any variances." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1259 (11th Cir. 2015); *see also United States v. Irey*, 612 F.3d 1160, 1182 (11th Cir. 2010) (en banc) (explaining that a case falls "outside the heartland" when "there [is] something unusual, either about Defendant or the circumstances surrounding the crime," that warrants a sentence outside of the guidelines range). A district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply. *Kimbrough,* 552 U.S. at 109.

Upward variances are routinely applied in white-collar cases where the §

3553(a) factors justify them.  As noted above, especially in the PPP loan and EIDL

fraud context, an upward variance was recently deemed substantively reasonable

by the Eleventh Circuit where the district court's reasoning was that the "fraud was

not the kind of ordinary fraud contemplated by the guidelines because [the

Defendant] used "his education, ability, and background to steal money from a

national benevolence," taking $85,000 from a federal relief program designed to

save the economy during the pandemic." *Oudomsine*, 2023 WL 220349, at *2.

The district court in *Oudomsine* further found that "[i]n committing that crime, [the

Defendant] had shown blatant disregard for the people who needed these funds and

for the people who paid for this program." *Id*.  In deeming deterrence to be the

most important sentencing factor, the *Oudomsine* district court further determined

that "the upward variance sentence was sufficient, but not greater than necessary,

to meet the crime [the Defendant] committed **and to demonstrate to the world

the likely result of the commission of the same or similar criminal act**." *Id*.

(emphasis added).

Other courts in this circuit and nationwide have found upward variances to

be appropriate in white-collar cases. *See, e.g.*, *United States v. Lantigua*, 749 F.

App'x 875 (11th Cir. 2018) (affirming sentence of 168 months' imprisonment – an

81-month upward variance from the top of the applicable guidelines range – for

conspiracy to commit mail fraud and wire fraud, bank fraud, passport fraud, and aggravated identity theft); *United States v. Turner*, 474 F.3d 1265, 1274, 1280-81 (11th Cir. 2007) (affirming 240–month sentence for, *inter alia*, conspiracy to steal U.S. mail, theft of U.S mail, and money laundering, despite guidelines range of only 51–63 months and the defendant's lack of criminal history, where the district court expressed its belief that crimes presented "a very serious matter," that the advisory range was "inadequate," and where the **court noted that the lengthy sentence was imposed to "provide adequate deterrence" and "to protect the public"**) (emphasis added); *United States v. Barnes*, 288 F. App'x 683 (11th Cir. 2008) (120–month sentence, which represented an upward variance from Guidelines range of 27 to 33 months' imprisonment, was not unreasonable for filing false tax returns, identity theft, and theft of government property where the **district court concluded that the sentence it imposed was necessary to protect the public from future crimes by defendant, deter others from similar crimes, and communicate the seriousness of defendant's crimes**) (emphasis added); *United States v. Rodriguez*, 486 F. App'x 30 (11th Cir. 2012) (affirming sentence of 144 months' imprisonment – an upward variance – for possession of counterfeit or unauthorized devices, possession of device-making equipment and aggravated identity theft based on the **need for future deterrence**) (emphasis added); *United States v. Coffie-Joseph*, 637 F. App'x 752 (4th Cir. 2016) (affirming total of 120

months' imprisonment for wire fraud, money laundering, passport fraud, and aggravated identity theft where district court "considered maximum sentence provided by Congress on all of defendant's counts, explicitly stated that **Guidelines' focus on amount of monetary loss did not sufficiently take into account consequences of crime or purposes of sentencing factors**, and stated that sentence imposed was necessary to promote respect for the law and deter conduct, and district court focused on defendant's history, characteristics, and need to protect public from further crimes by defendant") (emphasis added); *United States v. Bricker*, 574 F. App'x 906 (11th Cir. 2014) (upward variance for mail theft, wire fraud, and aggravated identity theft affirmed in light of the statutory sentencing factors).

## V.    CONCLUSION

The United States submits this memo in aid of sentencing in this case.

Respectfully submitted,

JASON R. COODY
United States Attorney

***/s/ Justin M. Keen***
JUSTIN M. KEEN
Assistant United States Attorney
Florida Bar Number: 021034
111 North Adams Street, Fourth Floor
Tallahassee, FL 32301
Justin.Keen@usdoj.gov
(850) 942-8430

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this memorandum complies with the type-volume limitation of Local Rule 7.1(F) because this pleading contains approximately 4,953 words.

*/s/ Justin M. Keen*
JUSTIN M. KEEN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system on this 27th day of January, 2023, which will send notification of such filing to all counsel of record.

*/s/ Justin M. Keen*
JUSTIN M. KEEN
Assistant United States Attorney