


GOVERNMENT EXHIBIT 1

PENGAD 800-631-6989

Patrick Walsh
17370 NE 75 St
Williston, FL 32696
September 22, 2022

Mr. Minafield
U.S. Probation Officer
401 S.E. 1st Ave., Suite 228
Gainesville, FL 32601

Dear Mr. Minafield,

I would like to formally request your authorization to temporarily relocate for work purposes. As discussed with the Court at my Initial Appearance (IA) on August 30th, I travel for business purposes to TN and Texas quite a bit and it often requires my extended stays especially in Texas. TN is where our main airship hanger is located for the AirSign Airship Group and West Texas is where the Oil Wells are located for Shiloh Oil, my present employer.

Starting in October of this year, we have some well projects taking place that require my onsite supervision. I would like to formally request your authorization to temporarily relocate there starting October 8th and running through the middle of December. The completion date is not concrete, but we would be completed and back at our home in Florida prior to Christmas and most likely by mid-December.

During our stay there I would have my family with me, and we would be staying at a company provided house located at 1402 CR 161 Ovalo, TX 79541. My work area would be in West Texas, predominantly in the Abilene and Sweetwater area, working specifically on oil and gas wells. At anytime if I was needed in Gainesville for a meeting with a few days' notice I could fly back and would be available for any in person meetings upon request.

The Chief Operating Officer of Shiloh Oil is Greg Jacobs and his contact is Greg@Shilohoil.com 440-812-5100 or 352-353-4799

I still can stay in close contact with you and continue to check in every Monday morning as well.

Sincerely,

CC: Attorney Nicole Waid (nicole.waid@FisherBroyles.com)
David Lazarus (dlazarus@verrill-law.com)

GOVERNMENT EXHIBIT 2
PENGAD 800-631-6989

2022-15226 07/19/2022 03:44 PM Total Pages: 5

220839F

# WARRANTY DEED WITH VENDOR'S LIEN

**Date:** July 14, 2022

**Grantor:** James M. Bell and Megan B. Myers-Bell, husband and wife

**Grantee:** 1402 CR 161 LLC, a Texas limited liability company

**Grantee's Mailing Address:** 12 NW 5th Place, Williston, FL 32696

**Consideration:**

Cash and a note executed by Grantee and payable to the order of HAS Reinsurance Company LTD, Anderson Family Trust c/o Kurt Anderson, Trustee, and CRF Commercial Bridge Fund II, LLC with Copper River Funding, LLC, acting as Administrative Agent in the principal amount of Five Hundred Seventy-Five Thousand and 00/100 Dollars ($575,000.00). The note is secured by a vendor's lien and superior title retained in this deed in favor of HAS Reinsurance Company LTD, Anderson Family Trust c/o Kurt Anderson, Trustee, and CRF Commercial Bridge Fund II, LLC with Copper River Funding, LLC, acting as Administrative Agent and by a deed of trust from Grantee to Copper River Funding, Trustee. HAS Reinsurance Company LTD, Anderson Family Trust c/o Kurt Anderson, Trustee, and CRF Commercial Bridge Fund II, LLC, with Copper River Funding, LLC, acting as Administrative Agent at Grantee's request, has paid in cash to Grantor all or a portion of the purchase price for the Property. The vendor's lien and superior title to the Property are retained for the benefit of HAS Reinsurance Company LTD, Anderson Family Trust c/o Kurt Anderson, Trustee, and CRF Commercial Bridge Fund II, LLC with Copper River Funding, LLC, acting as Administrative Agent and are transferred to that party without recourse on Grantor.

**Property:**

**BEING** 34.90 acres out of the J. F. Johnson Survey No. 474, Abstract No. 193, Taylor County, Texas, said 34.90 acres being all of that same 34.91 acre tract described in Instrument No. 2011-18232, Official Public Records, Taylor County, Texas and being more particularly described as follows:

**BEGINNING** at a 1/2" rebar found in Taylor County Road No. 161 on the EBL of said Survey No. 474 at the northeast corner of a 7.72 acre tract recorded as Tract 1 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas for the southeast corner of this tract, whence a PK nail with washer found in the intersection of said county road and Taylor County Road No. 162 at the southeast corner of said survey No. 474 bears S0°52'20"W 501.07 feet;

**THENCE** S85°40'28"W 1396.92 feet to a 1/2" rebar found at the northwest corner of an 8.29 acre tract recorded as Tract 2 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas and the southeast corner of a 25.39 acre tract recorded in Instrument No. 2018-5661, Official Public Records, Taylor County, Texas for the southwest corner of this tract;

**THENCE** N0°51'36"E at 593.29 feet pass a 1/2" rebar found and continue along for a total distance of 1090.23 feet to a point on the NBL of said Survey No. 474 at the northeast corner of said 25.39 acre tract for the northwest corner of this tract, whence an existing 2" pipe fence corner post bears S47°30'W 0.5 feet;

**THENCE** N85°28'55"E 1397.59 feet to a 1/2" rebar found in Taylor County Road No. 161 at the northeast corner of said Survey No. 474 for the northeast corner of this tract;

Unofficial Copy



PENGAD 800-631-6989 GOVERNMENT EXHIBIT 3

**THENCE** S0°52'20"W 1094.97 feet along Taylor County Road No. 161 and the EBL of said Survey No. 474 to the place of beginning and containing 34.90 acres of land.

**Reservations from Conveyance:**

None.

**Exceptions to Conveyance and Warranty:**

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; all presently recorded and validly existing restrictions, reservations, covenants, conditions, oil and gas leases, mineral interests, water interests or wind interests outstanding in persons other than Grantor, and other presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and any state of facts that an accurate survey of the Property would show. If a separate written agreement between Grantor and Grantee calls for the language in this paragraph to be narrower in scope than what is stated herein, then the narrower language applies and is incorporated herein by reference.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all of the following unless specifically reserved elsewhere herein: (i) any and all rights and appurtenances belonging or appertaining to the Property; (ii) any and all appurtenant easements and rights of way affecting the Property, and all rights of ingress and egress to and from the Property, and any of Grantor's rights to use same; (iii) any and all mineral, wind, and water rights and interests of Grantor relating to the Property; (iv) any and all rights to the present or future use of wastewater, wastewater capacity, drainage, water, or other utility facilities to the extent they pertain to or benefit the Property; (v) any and all rights and interest of Grantor in and to any leases covering all or any portion of the Property; and (vi) all right, title and interest of Grantor, (if any), in and to (a) any and all roads, streets, alleys and ways, whether open or closed, affecting the Property, (b) any and all strips, gores, or pieces of property abutting, bounding, or which are adjacent or contiguous to the Property, whether owned or claimed by deed, limitations, or otherwise, (c) any walls or fences situated on a common boundary line, and (d) any and all reversionary interests in and to the Property.

TO HAVE AND HOLD the Property to Grantee and Grantee's heirs, successors and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until the note described is fully paid according to its terms, at which time this deed shall become absolute.

This instrument may be executed in any number of identical counterparts, each of which shall be deemed an original for all purposes. If signatories to this instrument sign different counterparts, the original signature pages and corresponding acknowledgement pages may be detached from each counterpart and all attached together to form one instrument and/or duplicate original instrument.

When the context requires, singular nouns and pronouns include the plural.

James M. Bell

Megan B. Myers-Bell



Unofficial Copy

STATE OF TEXAS }

COUNTY OF TAYLOR }

This instrument was acknowledged before me on this the 14th day of July, 2022 by James M. Bell and Megan B. Myers-Bell.

{affix notary seal here}

LAURA MILLICAN
My Notary ID # 131115933
Expires May 4, 2025

Notary Public, State of Texas
(Notary's printed name)

(Notary's commission expires)

Unofficial Copy

**PREPARED IN THE LAW OFFICE OF:**
Bradshaw, McCall & Westbrook, PLLC
3417 Curry Lane
Abilene, Texas 79606

**AFTER RECORDING RETURN TO:**
1402 CR 161 LLC
12 NW 5th Place
Williston, FL 32696

**FIELD NOTES**
**34.90 ACRE**

**BEING** 34.90 acres out of the J. F. Johnson Survey No. 474, Abstract No. 193, Taylor County, Texas, said 34.90 acres being all of that same 34.91 acre tract described in Instrument No. 2011-18232, Official Public Records, Taylor County, Texas and being more particularly described as follows:

**BEGINNING** at a 1/2" rebar found in Taylor County Road No. 161 on the EBL of said Survey No. 474 at the northeast corner of a 7.72 acre tract recorded as Tract 1 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas for the southeast corner of this tract, whence a PK nail with washer found in the intersection of said county road and Taylor County Road No. 162 at the southeast corner of said survey No. 474 bears S0°52'20"W 501.07 feet;

**THENCE** S85°40'28"W 1396.92 feet to a 1/2" rebar found at the northwest corner of an 8.29 acre tract recorded as Tract 2 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas and the southeast corner of a 25.39 acre tract recorded in Instrument No. 2018-5661, Official Public Records, Taylor County, Texas for the southwest corner of this tract;

**THENCE** N0°51'36"E at 593.29 feet pass a 1/2" rebar found and continue along for a total distance of 1090.23 feet to a point on the NBL of said Survey No. 474 at the northeast corner of said 25.39 acre tract for the northwest corner of this tract, whence an existing 2" pipe fence corner post bears S47°30'W 0.5 feet;

**THENCE** N85°28'55"E 1397.59 feet to a 1/2" rebar found in Taylor County Road No. 161 at the northeast corner of said Survey No. 474 for the northeast corner of this tract;

**THENCE** S0°52'20"W 1094.97 feet along Taylor County Road No. 161 and the EBL of said Survey No. 474 to the place of beginning and containing 34.90 acres of land.

Surveyed on the ground April 26, 2022.

**SEE ATTACHED PLAT**

STATE OF TEXAS REGISTERED JAMES L. WILLIAMS, JR. 4885 PROFESSIONAL LAND SURVEYOR

James L. Williams Jr.
R. P. L. S. #4885

**Geotex Property Solutions**
209 S. Pioneer Drive, Suite 2
Abilene, Texas 79605
(325) 677-6712
File # 108-08-22-34.90ac
Firm Registration No. 10194134

Unofficial Copy

**THE STATE OF TEXAS**
**COUNTY OF TAYLOR**

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Offiial Public Records of Taylor County, Texas.

2022-15226 DE
07/19/2022 03:44:49 PM Total Fees: $38.00

Larry G. Bevill, County Clerk
Taylor County, Texas



Unofficial Copy



2022-15227 07/19/2022 03:44 PM Total Pages: 23

STATE OF TEXAS
COUNTY OF TAYLOR

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "**Deed**") is made and entered into this 13 day of July 2022, by and between **1402 CR 161 LLC, A TEXAS LIMITED LIABILITY COMPANY**, the party of the first part, as the borrower (hereinafter referred to as "**Borrower**"), and **HAS REINSURANCE COMPANY LTD**, an undivided 52.1739% interest, **ANDERSON FAMILY TRUST, C/O KURT ANDERSON AS TRUSTEE, AN UNDIVIDED 26.0869%** interest, and **CRF COMMERCIAL BRIDGE FUND II, LLC**, an undivided 21.7392% interest, with **COPPER RIVER FUNDING, LLC**, acting as Lender's Administrative Agent, the party of the second part, as the lender, its successors and or assigns, with a mailing address of 1931 Humble Place Dr., Ste 205, Humble, Texas 77338 (hereinafter referred to as "**Lender**");

WITNESSETH:

That for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Borrower hereinafter set forth, and Borrower does hereby grant, bargain, sell, convey, assign, transfer and set over unto Lender and the successors and assigns of Lender all of the following described land and interests in land, estates, easements, rights, improvements, property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "**Property**"):

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN.**

a. All those certain tracts, pieces, or parcels of land more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "**Land**"); and

b. All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property of every kind and nature whatsoever now or hereafter owned by Borrower and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including all extensions, additions, improvements, betterments, renewals and replacements of any of the foregoing and all the right, title and interest of Borrower in any such furnishings, furniture, fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Borrower or on behalf of Borrower, all trade-names, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Property or any part thereof or are now or hereafter acquired by Borrower; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Property as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed. The location of the above-described collateral is also the location of the Land.



GOVERNMENT EXHIBIT 4

PENGAD 800-631-6989

Initial Initial

TOGETHER WITH all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower and the reversion and reversions, remainder and remainders, the rents, issues, profits and revenues of the Property from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same; reserving only the right to Borrower to collect the same so long as Borrower is not in default hereunder.

TO HAVE AND TO HOLD the Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors and assigns of Lender, **IN FEE SIMPLE** forever; and Borrower covenants that Borrower is lawfully seized and possessed of the Property as aforesaid, and has good right to convey the same, that the same is unencumbered except for those matters expressly set forth in Exhibit "B" attached hereto and by this reference made a part hereof, and that Borrower does warrant and will forever defend the title thereto against the claims of all persons whomsoever, except as to those matters set forth in said Exhibit "B" attached hereto.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Property to Lender and is made under those provisions of the existing laws of the **State of Texas** relating to deeds to secure debt and not as a mortgage, and is given to secure the following described indebtedness (hereinafter referred to collectively as the "**Indebtedness**"):

a) The debt evidenced by that certain Promissory Note (hereinafter referred to as the "**Note,**" as same may be amended, modified, or assigned from time to time and to which Note reference is hereby made for all purposes) dated of even date herewith, made by Borrower, payable to the order of Lender in the principal face amount of **FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($575,000.00)**, with the final payment being due on **July 5, 2024**; together with any and all renewals and/or extensions of the indebtedness evidenced by the Note;

b) Any and all additional advances made by Lender to protect or preserve the Property or the lien hereof on the Property, or for taxes, assessments, or insurance premiums as hereinafter provided (whether or not the original Borrower remains the owner of the Property at the time of such advances); and

c) Any and all other indebtedness, however, incurred, which may now or hereafter be due and owing from Borrower to Lender, now existing or hereafter coming into existence, however, and whenever incurred or evidenced, whether express or implied direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations, and extensions thereof.

Should the indebtednesses secured by this Deed be paid according to the tenor and effect thereof when the same shall become due and payable, and should Borrower perform all covenants herein contained in a timely manner, then this Deed shall be canceled and surrendered.

Borrower hereby further covenants and agrees with Lender as follows:

## ARTICLE 1

1.01 *Payment of Indebtedness.* Borrower will pay the Note according to the tenor thereof and the remainder of the Indebtedness and all other sums now or hereafter secured hereby promptly as the same shall become due.

1.02 *Taxes, Liens, and Other Charges.*

a) Borrower shall pay, on or before the due date thereof, all taxes, assessments, levies, license fees, permit fees, and all other charges (in each case, whether general or special, ordinary or extraordinary, or foreseen or unforeseen) of every character whatsoever (including all penalties and interest thereon) now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon, the Property, or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and shall submit to Lender such evidence of the due and punctual payment of all such taxes, assessments, and other fees and charges as Lender may require.

b) Borrower shall pay, on or before the due date thereof, all taxes, assessments, charges, expenses, costs, and fees which .

(i) insurance against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, vandalism, and malicious mischief and against such other hazard as, under good insurance practices, from time to time are insured against for properties of similar character and location, the amount of which insurance shall be not less than the greater of (A) the balance of the Indebtedness or (B) one hundred percent (100%) of the full replacement cost of the Property without deduction for depreciation, and which policies of insurance shall contain satisfactory replacement cost endorsements;

(ii) rent insurance against loss of income arising out of damage or destruction by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, vandalism, and malicious mischief, and such other hazards as are presently included in so-called "extended coverage in an amount not less than one hundred percent (100%) of one (1) year's gross rental income from the Property"; and

(iii) such other insurance on the Property or any replacements or substitutions therefor and in such amounts, as may from time to time be reasonably required by Lender against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use, and occupancy, or any replacements or substitutions therefor.

b) Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03 and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender instead of to Borrower and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Borrower or to Borrower and Lender jointly, Borrower agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Borrower to endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of Borrower, and Borrower hereby irrevocably appoints Lender as Borrower's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed; all without affecting the lien of this Deed. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy, regardless of the cause of such failure.

c) At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this Paragraph 1.03, a renewal or replacement thereof satisfactory to Lender shall be delivered to Lender. Borrower shall deliver to Lender receipts evidencing the payment for all such insurance policies and renewals or replacements. The delivery of any insurance policies hereunder shall constitute an assignment of all unearned premiums as further security hereunder. In the event of the foreclosure of this Deed or any other transfer of title to the Property in extinguishment or partial extinguishment of the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies then in force shall pass to the purchaser or Lender, as the case may be, and Lender is hereby irrevocably appointed by Borrower as attorney-in-fact for Borrower to assign any such policy to said purchaser or Lender, as the case may be, without accounting to Borrower for any unearned premiums thereon.

1.04 *Monthly Deposits*. At the option of Lender and further to secure the payment of the taxes and assessments referred to in Paragraph 1.02 and the premiums on the insurance referred to in Paragraph 1.03, Borrower shall deposit with Lender on the due date of each installment under the Note, such amounts as, in the estimation of Lender, shall be necessary to pay such charges as they become due; said deposits to be held by Lender, free of interest, and free of any liens or claims on the part of creditors of Borrower and as part of the security of Lender, and to be used by Lender to pay current taxes and assessments and insurance premiums on the Property as the same accrue and are payable. Payment from said sums for said purposes shall be made by Lender at its discretion and may be made even though such payments will benefit subsequent owners of the Property. Said deposits shall not be, nor be deemed to be trust funds but may be commingled with the general funds of Lender. If said deposits are insufficient to pay the taxes and assessments and insurance premiums in full as the same become payable, Borrower will deposit with Lender such additional sum or sums as may be required in order for Lender to pay such taxes and assessments and insurance premiums in full. Upon any default in the provisions of this Deed or the Note, or any instrument evidencing, securing, or in any way relating to the Indebtedness, Lender may, at its option, apply for any money in the fund resulting from said deposits to the payment of the Indebtedness in such manner as it may elect.

1.05 *Condemnation*. If all or any portion of the Property shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any governmental or quasi-governmental authority and any transfer by private sale in lieu thereof, either temporarily or permanently, then the entire Indebtedness shall, at the option of Lender, immediately become due and payable. Borrower, immediately upon obtaining knowledge of the institution, or the proposed, contemplated, or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will notify Lender. Lender is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Lender, in its own or in Borrower's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action, and proceeds and the right thereto are hereby assigned by Borrower to Lender, and Lender is authorized, at its option, to collect and receive all such compensation, awards or damages and to give proper receipts and acquittances therefor without any obligation to question the amount of any such compensation, awards or damages. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Indebtedness, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Property and/or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the security interest created by this Deed, and any balance of such monies then remaining shall be paid to Borrower or any other person or entity lawfully entitled thereto. Borrower agrees to execute such further assignments of any compensation, awards, damages, claims, rights of action, and proceeds as Lender may require. If prior to the receipt by Lender of such award or proceeds, the Property shall have been sold on foreclosure of this Deed, or under the power of sale herein granted, Lender shall have the right to receive such award or proceeds to the extent





of any unpaid Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or proceeds.

1.06 *Care of Property.*

a) Borrower will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping, and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which will increase the risk of fire or other hazards to the Property or any part thereof or which would or could result in the cancellation of any insurance policy carried with respect to the Property.

b) Borrower will not remove or demolish nor alter the structural character of any improvement located on the Land without the written consent of Lender.

c) If the Property or any part thereof is damaged by fire or any other cause, Borrower will give immediate written notice thereof to Lender.

d) Lender or its representative is hereby authorized to enter upon and inspect the Property at any time during normal business hours.

e) Borrower will promptly comply with all present and future laws, ordinances, rules, and regulations of any governmental authority affecting the Property or any part thereof.

f) If all or any part of the Property shall be damaged by fire or other casualty, Borrower will promptly restore the Property to the equivalent of its original condition. If a part of the Property shall be damaged through condemnation, Borrower will promptly restore, repair or alter the remaining portions of the Property in a manner satisfactory to Lender. Notwithstanding the aforegoing, Borrower shall not be obligated to so restore unless, in each instance, Lender agrees to make available to Borrower (pursuant to a procedure satisfactory to Lender) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty loss or condemnation, to the extent such proceeds are required to defray the expense of such restoration; provided, however, that the insufficiency of any such insurance or condemnation proceeds to defray the entire expense of restoration shall in no way relieve Borrower of its obligation to restore. In the event all or any portion of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Borrower shall promptly deposit with Lender a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Lender in connection with such damage or destruction.

1.07 *Leases, Contracts, Etc.*

a) As additional collateral and further security for the Indebtedness, Borrower does hereby assign to Lender Borrower's interest in any and all leases, tenant contracts, rental agreements, franchise agreements, management contracts, construction contracts, and other contracts, licenses, and permits now or hereafter affecting the Property, or any part thereof. Borrower agrees to execute and deliver to Lender such additional instruments, in form and substance satisfactory to Lender, as may hereafter be requested by Lender further to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by Lender to any lease, tenant contract, rental agreement, franchise agreement, management contract, construction contract, or other contract, license or permit, or to impose upon Lender any obligation with respect thereto. Without first obtaining on each occasion the written approval of Lender, Borrower shall not cancel or permit the cancellation of any such lease, tenant contract, rental agreement, franchise agreement, management contract, construction contract, or other contract, license, or permit, or modify any of said instruments, or accept, or permit to be made, any

prepayment of any installment of rent or fees thereunder (except for security deposits and the usual prepayment of rent which results from the acceptance by a landlord on the first day of each month of the rent for that month). Borrower shall faithfully keep and perform, or cause to be kept and performed, all of the covenants, conditions, and agreements contained in each of said instruments, now or hereafter existing, on the part of Borrower to be kept and performed and shall at all times do all things necessary to compel performance by each other party to said instruments of all obligations, covenants, and agreements by such other party to be performed thereunder.

b) Borrower shall not execute an assignment of the income, rents, issues or profits, or any part thereof, from the Property unless Lender shall first consent to such assignment and unless such assignment shall expressly provide that it is subordinate to the assignment contained in this Deed and any assignment executed pursuant hereto or concerning the Indebtedness.

c) Borrower shall furnish to Lender, within ten (10) days after a request by Lender to do so, a sworn statement setting forth the names of all lessees and tenants of the Property, the terms of their respective leases, tenant contracts, or rental agreements, the space occupied, and the rentals payable thereunder, and stating whether any defaults, off-sets or defenses exist under or in connection with any of said leases, tenant contracts or rental agreements. Any and all leases, tenant contracts, and rental agreements affecting the Property shall provide for giving by the lessees or tenants thereunder of certificates with respect to the status of such leases, tenant contracts, or rental agreements. Borrower shall exercise Borrower's right to request such certificates within five (5) days of any demand therefor by Lender.

d) Each lease, tenant contract and rental agreement pertaining to the Property, or any part thereof, shall provide that, in the event of the enforcement by Lender of the remedies provided by law or by this Deed, the lessee or tenant thereunder will, upon request of Lender or any other person or entity succeeding to the interest of Lender as a result of such enforcement, automatically become the lessee or tenant of Lender or said successor in interest, without change in the terms or other provisions of said lease, tenant contract or rental agreement; provided, however, that neither Lender nor any such successor in interest shall be bound by (i) any payment of rental or additional rental for more than one (1) month in advance, except prepayments in the nature of security for the performance by said lessee or tenant of its obligations under said lease, tenant contract or rental agreement (and then only if such prepayments have been deposited with and are under the control of Lender); or (ii) any amendment or modification of said lease, tenant contract or rental agreement made without the express written consent of Lender or said successor in interest. Each lease, tenant contract, and rental agreement pertaining to the Property shall also provide that, upon request by said successor in interest, the lessee or tenant thereunder shall deliver an instrument or instruments confirming such attornment.

e) Notwithstanding any other provisions of this Deed, Borrower shall not hereafter enter into any lease, tenant contract, rental agreement, franchise agreement, management contract or other contract, license or permit affecting the Property, or any part thereof, without the prior written consent of Lender and except upon the following conditions: (i) each such instrument shall contain a provision that the rights of the parties thereunder are expressly subordinate to all of the rights and title of Lender under this Deed; (ii) any such instrument shall contain a provision whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Lender may sell the Property in the manner provided in Article 2, and thereby, at the option of Lender, sell the same subject to such instrument; and (iii) at or prior to the time of execution of any such instrument, Borrower shall, as a condition to such execution, procure from the other party or parties thereto an agreement in favor of Lender, in form and substance satisfactory to Lender, under which such party or parties agree to be bound by the provisions of Article 2, regarding the manner in which Lender may foreclose or exercise the power of sale under this Deed.

f) Borrower hereby directs any tenant in possession of the Property at any time to pay its rent and all other sums due and payable under its lease agreement directly to Lender at such time as Lender notifies such tenant that an Event of Default has occurred under this Deed and is continuing. Borrower hereby releases any tenant complying with such directions from any liability to Borrower as a result of such payments to Lender. Lender's receipt of such payments shall not constitute an assumption of Borrower's obligations to any such tenant under its lease agreement or otherwise

1.08 *Security Agreement.*

a) Insofar as the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, and articles of personal property either referred to or described in this Deed or in any way connected with the use and enjoyment of the Property is concerned, this Deed is hereby made and declared to be a security agreement, encumbering each and every item of personal property included herein, in compliance with the provisions of the Uniform Commercial Code as enacted in the state wherein the Land is situated. A financing statement or statements reciting this Deed to be a security agreement, affecting all of said personal property aforementioned, shall be executed by Borrower and Lender and appropriately filed. The remedies for any violation of the covenants, terms, and conditions of the security agreement herein contained shall be (i) as prescribed herein, (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Lender's sole election. Borrower and Lender agree that the filing of such financing statement(s) in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and hereby stated intention of Borrower and Lender that everything used in connection with the production of income from the Property and/or adapted for use therein and/or which is described or reflected in this Deed, is, and at all times and for all purposes and in all proceedings both legal or equitable shall be, regarded as part of the real estate irrespective of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (iii) any such item is referred to or reflected in any such financing statement(s) so filed at any time. Similarly, the mention in any such financing statement(s) of the rights in and to (aa) the proceeds of any fire and/or hazard insurance policy, or (bb) any award in eminent domain proceedings for a taking or for loss of value, or (cc) Borrower's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall never be construed as in anywise altering any of the rights of Lender as determined by this instrument or impugning the priority of Lender's lien granted hereby or by any other recorded document, but such mention in such financing statement(s) is declared to be for the protection of Lender in the event any court shall at any time hold with respect to the aforegoing (aa), (bb) or (cc), that notice of Lender's priority of interest to be effective against a particular class of persons, must be filed in the Uniform Commercial Code records.

b) Borrower warrants that (i) Borrower's (that is, "Debtor's") name, identity or corporate structure and residence or principal place of business are as set forth in Subparagraph 1.08(c) hereof; (ii) Borrower (that is, "Debtor") has been using or operating under the said name, identity or corporate structure without change for the time period set forth in Subparagraph 1.08(c) hereof; and (iii) the location of the collateral is upon the Land. Borrower covenants and agrees that Borrower will furnish Lender with notice of any change in the matters addressed by clauses (i) or (iii) of this Subparagraph 1.08(b) within thirty (30) days of the effective date of any such change and Borrower will promptly execute any financing statements or other instruments deemed necessary by Lender to prevent any filed financing statement from becoming misleading or losing its perfected status.




Initial Initial

c) The information contained in this Subparagraph 1.08(c) is provided in order that this Deed shall comply with the requirements of the Uniform Commercial Code, as enacted in the State of Texas, for instruments to be filed as financing statements. The names of the "Debtor" and the "Secured Party," the identity or corporate structure and residence or principal place of business of "Debtor," and the time period for which "Debtor" has been using or operating under said name and identity or corporate structure without change, are as set forth in Schedule 1 of Exhibit "C" attached hereto and by this reference made a part hereof, the mailing address of the "Secured Party" from which information concerning the security interest may be obtained, and the mailing address of "Debtor," are as set forth in Schedule 2 of said Exhibit "C" attached hereto; and a statement indicating the types, or describing the items, of collateral is set forth hereinabove.

1.09 *Further Assurances; After Acquired Property.* At any time, and from time to time, upon request by Lender, Borrower will make, execute and deliver or cause to be made, executed and delivered to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or refiled at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve (a) the obligations of Borrower under the Note and under this Deed and (b) the lien of this Deed as a first and prior lien upon and security title in and to all of the Property, whether now owned or hereafter acquired by Borrower. Upon any failure by Borrower so to do, Lender may make, execute, record, file, rerecord and/or refile any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates, and documents for and in the name of Borrower and Borrower hereby irrevocably appoints Lender the agent and attorney-in-fact of Borrower so to do. The lien hereof will automatically attach, without further act, to all after-acquired property attached to and/or used in the operation of the Property or any part thereof.

1.10 *Expenses.* Borrower will pay or reimburse Lender, upon demand therefor, for all attorney's fees, costs, and expenses incurred by Lender in any suit, action, legal proceeding, or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this Deed or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the indebtedness secured by the lien of this Deed.

1.11 *Estoppel Affidavits.* Borrower, upon ten (10) days prior to written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not any offsets or defenses exist against such principal and interest.

1.12 *Subrogation.* To the full extent of the Indebtedness, Lender is hereby subrogated to the liens, claims, and demands, and to the rights of the owners and holders of each and every lien, claim, demand, and other encumbrance on the Property, which is paid or satisfied, in whole or in part, out of the proceeds of the Indebtedness, and the respective liens, claims, demands, and other encumbrances shall be, and each of them is hereby, preserved and shall pass to and be held by Lender as additional collateral and further security for the Indebtedness, to the same extent they would have been preserved and would have been passed to and held by Lender had they been duly and legally assigned, transferred, set over and delivered unto Lender by assignment, notwithstanding the fact that any instrument providing public notice of the same may be satisfied and canceled of record.





Initial Initial

1.13 *Books, Records, Accounts, and Annual Reports.* Borrower shall keep and maintain or shall cause to be kept and maintained, at Borrower's cost and expense and in accordance with generally accepted accounting principles, proper and accurate books, records, and accounts reflecting all items of income and expense in connection with the operation of the Property and in connection with any services, equipment or furnishings provided in connection with the operation of the Property. Lender, by Lender's agents, accountants, and attorneys, shall have the right from time to time to examine such books, records, and accounts at the office of Borrower or such other person or entity maintaining such books, records, and accounts, to make copies or extracts thereof as Lender shall desire and to discuss Borrower's affairs, finances and accounts with Borrower and with the officers and principals of Borrower, at such reasonable times as may be requested by Lender. Borrower will furnish to Lender annually within ninety (90) days after the end of Borrower's fiscal year a financial statement for the Property for such fiscal year compiled by an independent certified public accountant satisfactory to Lender containing a profit and loss statement and all supporting schedules covering the operation of the Property, all in reasonable detail, prepared in accordance with generally accepted accounting standards consistently applied and accompanied by the unqualified opinion and certification of such independent certified public accountant who shall have examined and certified the accuracy of such audit; and Borrower will furnish to Lender, at any time within thirty (30) days after demand by Lender, unaudited statements, certified by Borrower's principal financial or accounting officer, covering such financial matters as Lender may reasonably request, including, without limitation, monthly operating statements with respect to the Property.

1.14 *Limit of Validity.* If from any circumstances whatsoever fulfillment of any provision of this Deed or the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.14 shall control every other provision of this Deed and the Note.

1.15 *No Default Affidavits.* At Lender's request, all payments made under the Note or hereunder shall be accompanied by the affidavit of Borrower or a principal financial or accounting officer of Borrower, dated within five (5) days of the delivery of such payment to Lender, swearing that he knows of no Default (as hereinafter defined), nor of any circumstance which after notice or lapse of time or both would constitute a Default, which has occurred and is continuing or, if any such Default has occurred and is continuing, specifying the nature and period of existence thereof and the action Borrower has taken or proposes to take with respect thereto and, except as otherwise specified, stating that Borrower has fulfilled all of Borrower's obligations under this Deed which are required to be fulfilled on or prior to the date of such affidavit.

1.16 *Use and Management of Property.* Borrower shall at all times operate the Property in accordance with all applicable governmental requirements and zoning regulations and ordinances. Borrower shall not be permitted to abandon the Property without the prior written consent of Lender.

1.17 *Conveyance of Property.* Borrower hereby acknowledges to Lender that (i) the identity and expertise of Borrower were and continue to be material circumstances upon which Lender has relied in connection with, and which constitute valuable consideration to Lender for, the extending to Borrower of the indebtedness evidenced by the Note and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed. Borrower, therefore, covenants and agrees with Lender, as part of the consideration for the extending to Borrower of the indebtedness evidenced by the Note, that Borrower shall not encumber, pledge, convey, transfer or assign (i) any or all of the Property or any or all of Borrower's interest in the Property, or (ii) any beneficial interest in Borrower if Borrower is not a natural person, without the prior written consent of Lender nor under any terms, conditions, and provisions except those specifically set forth in any such consent by Lender.

1.18 *Acquisition of Collateral.* Borrower shall not acquire any portion of the personal property covered by this Deed subject to any security interest, conditional sales contract, title retention arrangement, or other charge or lien taking precedence over the security title and lien of this Deed.

## ARTICLE 2

2.01 *Events of Default.* The terms **"Default," "Event of Default,"** or **"Events of Default,"** wherever used in this Deed, shall mean any one or more of the following events:

a) Failure by Borrower to pay as and when due and payable any portion of the Indebtedness; or

b) Failure by Borrower to duly observe or perform any other term, covenant, condition, or agreement of this Deed; or

c) Failure by Borrower to duly observe or perform any term, covenant, condition, or agreement in any assignment of lease(s) or any other agreement now or hereafter evidencing, securing, or otherwise relating to the Note or this Deed or the Indebtedness; or

d) The occurrence of a default or an event of default under any loan agreement, assignment of leases, or any other agreement now or hereafter evidencing, securing, or otherwise relating to the Note or this Deed or the Indebtedness; or

e) Any warranty of Borrower contained in this Deed or any other instrument, document, transfer, conveyance, assignment, or loan agreement given by Borrower with respect to the Indebtedness proves to be untrue or misleading in any material respect; or

f) The filing by Borrower or any endorser or guarantor of the Note of a voluntary petition in bankruptcy or the filing by Borrower or any such endorser or guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or Borrower's or any such endorser's or guarantor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Borrower, such endorser or guarantor, or of all or any substantial part of the Property or of any other property or assets of Borrower, such endorser or guarantor, or of any or all of the income, rents, issues, profits or revenues thereof, or the making by Borrower, or any such endorser or guarantor, of any general assignment for the benefit of creditors, or the admission in writing by Borrower, or for any such endorser or guarantor, of its inability to pay its debts generally as they become due or the commission by Borrower or any such endorser or guarantor of an act of bankruptcy; or

g) The filing of a petition against Borrower, or any endorser or guarantor of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal, state, or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of Borrower, or any such endorser or guarantor or of all or any substantial part of the Property or any or all of the income, rents, issues, profits or revenues thereof unless such petition shall be dismissed within thirty (30) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

Unofficial Copy

h) The Property is subjected to actual or threatened waste, or any part thereof is removed, demolished, or altered without the prior written consent of Lender; or (i) Borrower or any endorser or guarantor of the Note (if a corporation) is liquidated or dissolved or its charter expires or is revoked, or Borrower or such endorser or guarantor (if a partnership, limited liability company or business association) is dissolved or partitioned, or Borrower or such endorser or guarantor (if a trust) is terminated or expires, or Borrower or such endorser or guarantor (if an individual) dies.

2.02 *Acceleration of Maturity.* If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

2.03 *Right to Enter and Take Possession.*

a) If an Event of Default shall have occurred and be continuing, Borrower, upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Property and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all the Property without the appointment of a receiver, or an application therefor, and may exclude Borrower and its agents and employees wholly therefrom, and may have joint access with Borrower to the books, papers, and accounts of Borrower.

b) If Borrower shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Borrower to deliver immediate possession of the Property to Lender, to the entry of which judgment or decree Borrower hereby specifically consents. Borrower will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys, and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

c) Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Property and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Borrower to the same extent as Borrower could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Lender, all as Lender from time to time may determine to be in its best interest. Lender may collect and receive all the rents, issues, profits, and revenues from the Property, including those past-due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding, managing, and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Lender may at its option pay; (ee) other proper charges upon the Property or any part thereof; and (ff) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender, Lender shall apply the remainder of the monies and proceeds so received by Lender, first to the payment of accrued interest and second to the payment of overdue installments of principal. Anything in this Paragraph 2.03 to the contrary notwithstanding, Lender shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of the exercise by Lender of its rights under this Deed. Lender shall be liable to account only for the rents, income, issues, profits, and revenues actually received by Lender.





Initial Initial

d) Whenever all that is due upon such interest, deposits, and principal installments and under any of the terms, covenants, conditions, and agreements of this Deed, shall have been paid and all Events of Default made good, Lender shall surrender possession of the Property to Borrower, its successors or assigns. The same right of taking possession, however, shall exist if any subsequent Event of Default shall occur and be continuing.

2.04 *Performance by Lender*. If Borrower shall default in the payment, performance, or observance of any term, covenant, or condition of this Deed, Lender may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Borrower to Lender with interest thereon at the Default Rate of Interest provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Borrower or any person in possession holding under Borrower.

2.05 *Receiver*. If an Event of Default shall have occurred and be continuing, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the state wherein the Land is situated. Borrower will pay to Lender upon demand all expenses, including receiver's fees, attorney's fees, costs, and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

2.06 *Enforcement*.

a) If a Default shall have occurred, Lender, at its option, may sell the Property or any part of the Property at one or more public sale or sales before the door of the courthouse of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including attorneys' fees in the amount of fifteen percent (15%) of the unpaid principal and interest, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriffs sales are advertised in said county. At any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple with full warranties of title, and to this end, Borrower hereby constitutes and appoints Lender the agent and attorney-in-fact of Borrower to make such sale and conveyance, and thereby to divest Borrower of all right, title and equity that Borrower may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Borrower. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for the collection of the Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Indebtedness. In the event of any sale under this Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect. If Lender so elects, Lender may sell the personal property covered by this Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of TEXAS. One or more exercises of the powers herein granted shall not extinguish nor exhaust such powers until the entire Property is sold, or the Indebtedness is paid in full. If the Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease, or other security instruments, Lender may at its option exhaust

the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

b) If a Default shall have occurred, Lender may, in addition to and not in abrogation of the rights covered under Subparagraph 2.06(a), either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Deed or any other right and (ii) to pursue any other remedy available to it, all as Lender at its sole discretion shall elect.

2.07 *Purchase by Lender.* Upon any foreclosure sale, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

2.08 *Application of Proceeds of Sale.* In the event of a foreclosure sale of the Property, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorney's and trustee's fees, then to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, then to the payment of the outstanding principal balance of the indebtedness secured hereby, then to the accrued interest on all of the foregoing, and finally the remainder, if any, shall be paid to Borrower or the person or entity lawfully entitled to same.

2.09 *Borrower as Tenant Holding Over.* In the event of any such foreclosure sale by Lender, Borrower shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10 *Waiver of Appraisement, Valuation Stay, Extension, and Redemption Laws.* Borrower agrees to the full extent permitted by law that in case of a default on the part of Borrower hereunder, neither Borrower nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Property, or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Borrower, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshaled upon any foreclosure of the lien hereof.

2.11 *Waiver of Homestead.* Borrower hereby waives and renounces all homestead and exemption rights provided for by the Constitution and the laws of the United States and any state in and to the Property as against the collection of the Indebtedness or any part thereof.

2.12 *Leases.* Lender, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Property. The failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Borrower, a defense to any proceedings instituted by Lender to collect the Indebtedness.

2.13 *Discontinuance of Proceedings.* In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise or in the event Lender commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every such case (i) Borrower and Lender shall be restored to their

former positions and rights, (ii) all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken, (iii) each and every Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall and shall be deemed to be a continuing Default and (iv) neither this Deed, nor the Note, nor the Indebtedness, nor any other instrument concerned therewith, shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Borrower hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the above.

2.14 *Remedies Cumulative.* No right, power, or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power, or remedy, but each and every such right, power, and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.15 *Waiver.*

a) No delay or omission of Lender or any holder of the Note to exercise any right, power, or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default or acquiescence therein; and every right, power, and remedy given by this Deed to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or default by Borrower in the performance of the obligations thereof hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance of the same or any other obligations of Borrower hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers, or remedies of Lender consequent on any breach or default by Borrower.

b) If Lender (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Borrower or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any default then made or of any subsequent default; nor, except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Deed be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

2.16 *Suits to Protect the Property.* Lender shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

2.17 *Lender May File Proofs of Claim.* In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, or other proceedings affecting Borrower, its creditors, or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire amount due and payable by Borrower under this Deed at the date of the institution of such proceedings and for any additional amount which may become due and payable by Borrower hereunder after such date.

**2.18 WAIVER OF BORROWER'S RIGHTS. BY EXECUTION OF THIS DEED AND BY INITIALING THIS PARAGRAPH 2.18, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND RIGHT TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED; AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER'S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS DEED IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.**

## ARTICLE 3

3.01 *Successors and Assigns.* This Deed shall inure to the benefit of and be binding upon Borrower and Lender and their respective heirs, executors, legal representatives, successors, and assigns as the context may permit or require. Whenever a reference is made in this Deed to Borrower or Lender, such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors, and assigns of Borrower or Lender, as the case may be. The provisions of this Paragraph 3.01 are subject to the restrictions on transfer contained in Paragraph 1.17.

3.02 *Terminology.* All personal pronouns used in this Deed, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles and Articles are for convenience only and neither limit nor amplify the provisions of this Deed itself, and all references herein to Articles, Paragraphs, or subparagraphs thereof shall refer to the corresponding Articles, Paragraphs, or subparagraphs thereof of this Deed unless specific reference is made to such Articles, Paragraphs or subparagraphs thereof of another document or instrument.

3.03 *Severability.* If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

3.04 *Applicable Law.* This Deed shall be interpreted, construed, and enforced according to the laws of the state wherein the Land is situated. 3.05 Notices. Any and all notices, elections, or demands permitted or required to be made under this Deed shall be in writing, signed by the party giving such notice, election, or demand, and shall be delivered personally or sent by registered or certified United States mail, postage prepaid, to the other party at the address set forth below, or at such other address within the continental United States of America as may have theretofore been designated in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of such notice, election, or demand. For the purposes of this Deed:

Borrower:

**1402 CR 161 LLC, A TX LIMITED LIABILITY COMPANY**
12 NW 5th Place
Williston, Florida 32696

Lender(s):

**HAS REINSURANCE COMPANY LTD**
1810 Main Street
McAlister, Oklahoma 74501

**ANDERSON FAMILY TRUST**
**C/O KURT ANDERSON, TRUSTEE**
21515 Back Alley Road
Bend, Oregon 97702

**CRF COMMERCIAL BRIDGE FUND II, LLC**
1931 Humble Place Drive, Suite 205
Humble, Texas 77338

Lender's Administrative Agent:

**COPPER RIVER FUNDING, LLC**
1931 Humble Place Drive, Suite 205
Humble, Texas 77338

3.05 *Replacement of Note.* Upon receipt of evidence reasonably satisfactory to Borrower of the loss, theft, destruction, or mutilation of the Note, and in the case of any such loss, theft, or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Borrower or, in the case of any such mutilation, upon surrender and cancellation of the Note, Borrower will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in this Deed to the Note shall be deemed to refer to such replacement Note.

3.06 *Assignment.* This Deed is assignable by Lender, and any assignment hereof by Lender shall operate to fully vest in the assignee all rights and powers herein conferred upon and granted to Lender.

3.07 *Time of the Essence.* Time is of the essence with respect to each and every covenant, agreement, and obligation of Borrower under this Deed, the Note, and any and all other instruments now or hereafter evidencing, securing, or otherwise relating to the Indebtedness.

IN WITNESS WHEREOF, Borrower has executed this Deed under seal, as of the day and year first above written.

1402 CR 161 LLC, A TEXAS LIMITED LIABILITY COMPANY

Patrick Walsh, Manager

STATE OF ~~TEXAS~~ Florida )
COUNTY OF Levy )

Before me, on this 13 day of July 2022, personally appeared Patrick Walsh known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that Patrick Walsh executed the same as the act of 1402 CR 161, LLC, a Texas limited liability company, as its Manager, and for the purposes and consideration therein expressed.

Notary Public, State of ~~Texas~~ Florida
My commission expires: 2/3/2024

EUGENE R. MORTON
Notary Public - State of Florida
Commission # GG 954560
My Comm. Expires Feb 3, 2024

Unofficial Copy

EXHIBIT "A"
(Description of Land)








Initial Initial

**EXHIBIT "A"**

**BEING 34.90 acres out of the J. F. Johnson Survey No. 474, Abstract No. 193, Taylor County, Texas, said 34.90 acres being all of that same 34.91 acre tract described in Instrument No. 2011-18232, Official Public Records, Taylor County, Texas and being more particularly described as follows:**

**BEGINNING at a 1/2" rebar found in Taylor County Road No. 161 on the EBL of said Survey No. 474 at the northeast corner of a 7.72 acre tract recorded as Tract 1 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas for the southeast corner of this tract, whence a PK nail with washer found in the intersection of said county road and Taylor County Road No. 162 at the southeast corner of said survey No. 474 bears S0°52'20"W 501.07 feet;**

**THENCE S85°40'28"W 1396.92 feet to a 1/2" rebar found at the northwest corner of an 8.29 acre tract recorded as Tract 2 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas and the southeast corner of a 25.39 acre tract recorded in Instrument No. 2018-5661, Official Public Records, Taylor County, Texas for the southwest corner of this tract;**

**THENCE N0°51'36"E at 593.29 feet pass a 1/2" rebar found and continue along for a total distance of 1090.23 feet to a point on the NBL of said Survey No. 474 at the northeast corner of said 25.39 acre tract for the northwest corner of this tract, whence an existing 2" pipe fence corner post bears S47°30'W 0.5 feet;**

**THENCE N85°28'55"E 1397.59 feet to a 1/2" rebar found in Taylor County Road No. 161 at the northeast corner of said Survey No. 474 for the northeast corner of this tract;**

**THENCE S0°52'20"W 1094.97 feet along Taylor County Road No. 161 and the EBL of said Survey No. 474 to the place of beginning and containing 34.90 acres of land.**

Unofficial Copy




EXHIBIT "B"
(Permitted Encumbrances)

None.



Initial Initial

EXHIBIT "C"
Schedule I

(Description of "Debtor" and "Secured Party")

A. Debtor:

1. Name and Identity:

   **1402 CR 161 LLC, A TEXAS LIMITED LIABILITY COMPANY**

2. The residence or principal place of business of Debtor in the State of Texas is located at:

   12 NW 5th Place, Williston, Florida 32696

B. Secured Party: **HAS REINSURANCE COMPANY LTD,** an undivided 52.1739% interest, **ANDERSON FAMILY TRUST, C/O KURT ANDERSON AS TRUSTEE,** an undivided 26.0869% interest, and **CRF COMMERCIAL BRIDGE FUND II, LLC,** an undivided 21.7392% interest, with **COPPER RIVER FUNDING, LLC,** acting as Lender's Administrative Agent.






Initial Initial

Schedule 2

(Notice Mailing Addresses of "Debtor" and "Secured Party")

A. The mailing address of Debtor is:

Borrower: 1402 CR 161 LLC, a Texas limited liability company
12 NW 5th Place
Williston, Florida 32696

B. The mailing address of the Secured Party is:

Lender(s): HAS Reinsurance Company LTD
1810 Main Street
McAlister, Oklahoma 74501

Anderson Family Trust
c/o Kurt Anderson, Trustee
21515 Back Alley Rd.
Bend, OR 97702

CRF Commercial Bridge Fund II, LLC
1931 Humble Place Drive, Suite 205
Humble, Texas 77338

Lender's Administrative Agent: Copper River Funding, LLC, a Texas limited liability company
1931 Humble Place Drive, Suite 205,
Humble, Texas 77338

Unofficial Copy






Initial Initial

**THE STATE OF TEXAS**
**COUNTY OF TAYLOR**

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Offiial Public Records of Taylor County, Texas.

2022-15227 DT
07/19/2022 03:44:49 PM Total Fees: $110.00

Larry G. Bevill,County Clerk
Taylor County, Texas



Unofficial Copy

220839F

2022-15228 07/19/2022 03:44 PM Total Pages: 12

## ABSOLUTE ASSIGNMENT OF RENTS

This Absolute Assignment of Rents ("**Assignment**") was entered into on the 13 day of July 2022 by and between **1402 CR 161 LLC,** A TEXAS LIMITED LIABILITY COMPANY ("**Assignor**"), and **HAS REINSURANCE COMPANY LTD,** an undivided 52.1739% interest, **ANDERSON FAMILY TRUST, C/O KURT ANDERSON, TRUSTEE,** an undivided 26.0869% interest, and **CRF COMMERCIAL BRIDGE FUND II, LLC,** an undivided 21.7392% interest, with **COPPER RIVER FUNDING, LLC,** acting as Administrative Agent (collectively the "**Assignee**");

**WITNESSETH:**
**ARTICLE I: DEFINITIONS**

**Section 1.1** **Parties.** As used in this Assignment, the terms "Assignor" and "Assignee" mean the parties above-identified by such designation and their respective heirs, executors, administrators, successors, and assigns. The preceding sentence shall not be interpreted to authorize any transfer which is otherwise prohibited by any agreement of such parties.

**Section 1.2** **Other Definitions.** As used in this Assignment, the terms hereafter set forth shall have the respective meanings hereafter indicated.

a. **"Property"** means the land described below, together with all improvements presently or hereafter situated on such land, as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN.**

b. **"Leases"** means all present and future leases with respect to which the leased premises consist of any portion of the Property.

c. **"Rents"** means all rent (including, without limitation, fixed rent, minimum rent, and percentage rent, if any) and all other monetary amounts of every type (including, without limitation, damages for breach), which are from time to time payable by tenants (at the Property) to Assignor (as landlord) under the Leases or which are otherwise receivable by Assignor with respect to the Leases or Property and all of such previously mentioned sums which are from time to time payable by guarantors (of the obligations of tenants) to Assignor (as landlord) under the Leases and all amounts payable by tenants (and guarantors for tenants) to Assignor (as landlord) under the provisions of the Bankruptcy Code as amended from time to time.

d. **"Note"** means that certain Promissory Note of even date herewith in the principal sum of $575,000.00, executed by 1402 CR 161 LLC, a Texas limited liability company (sometimes referred to herein as the "**Borrower**"), as maker therein bearing interest and being payable to the order of Assignee, as the payee in installments in accordance with the terms and provisions therein set forth.

e. **"Security Documents"** means the following documents of even date herewith: (i) Deed to Secure Debt, Security Agreement, and Financing Statement (the "**Deed to Secure Debt**") of even date herewith executed by Borrower for the benefit of Lender, as beneficiary, creating a lien on the Property and containing a power of sale; (ii) Guarantee Agreement of even date herewith executed by Patrick P. Walsh and Hannah J. Walsh., for the benefit of Assignee; (iii) Security Agreement of even date herewith, executed by 1402 CR 161 LLC, a Texas limited liability company for the benefit of Assignee; (iv) Absolute Assignment of Rents executed by Borrower for the benefit of Lender, creating a lien on the real property described therein.

GOVERNMENT EXHIBIT 5
PENGAD 800-631-6989



Unofficial Copy

f. **"Indebtedness"** means all monetary amounts from time to time owing by Borrower to Assignee under the Note, and by Assignor to Assignee under this Assignment and under any one or more of the Security Documents including, without limitation, all, if any, amendments of this Assignment and all, if any, renewals, extensions, rearrangements and modifications of the Note and any of the Security Documents.

g. **"Event of Default"** shall mean any Event of Default under the Deed to Secure Debt after the applicable grace period or notice and failure to cure after the applicable cure period.

## ARTICLE II: ASSIGNMENT

**Section 2.1 - Absolute Assignment.** For and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby absolutely assign, transfer, and set over to Assignee the Rents. To have and to hold the Rents to Assignee, and Assignor hereby binds itself and agrees to warrant and forever defend the title to the rents unto Assignee against every person whomsoever lawfully claiming or to claim the same or any part of such Rents.

**Section 2.2 Incidents of Assignment.** This Assignment is absolute, unconditional, and immediately effective. This Assignment does not collaterally transfer the Rents to Assignee and does not grant Assignee a lien on the Rents; instead, this Assignment absolutely vests title to the Rents in Assignee and constitutes Assignee as the owner of the Rents in accordance with the terms and provisions of this Assignment. It shall never be necessary for the Assignee to institute legal proceedings of any kind to enforce the provisions of this Assignment.

**Section 2.3 No Pro Tanto Payment.** Recognizing that, pursuant to subsequent terms and provisions of this Assignment, the Rents are permitted to be paid to Assignor under the circumstances hereafter provided and that the Rents may never be paid to Assignee and also recognizing that by reason of the terms and provisions of the Leases including without limitation, those terms and provisions of the Leases providing for abatement of Rents, rights of termination of the Leases and other circumstances, and the possible occurrence of other events including possible insolvency of the tenants under the Leases, which may result in non-payment of the Rents, Assignor acknowledges and agrees that the execution and delivery of this Assignment absolutely transferring ownership of the Rents to Assignee does not constitute any nature of pro tanto payment of the Indebtedness to Assignee. In the case of Rents which may hereafter be paid to Assignor (pursuant to the subsequent provisions of this Assignment), such Rents will not constitute payment to Assignee (and hence will not be credited on the Indebtedness) unless and until such Rents are actually paid by Assignor to Assignee and applied by Assignee in such manner. In the case of Rents paid to Assignee by the tenants, such Rents will be pro tanto credited on the Indebtedness only to the extent, if any, that such Rents paid to Assignee are neither disbursed by Assignee to Assignor nor paid directly by Assignee for utilities, maintenance, repairs, taxes, assessments, insurance or other expenses relating to the Property.

## ARTICLE III: COVENANTS, REPRESENTATIONS, AND WARRANTIES OF ASSIGNOR

**Section 3.1 Covenants of Assignor.** Assignor hereby unconditionally covenants and agrees as follows (any non-compliance by Assignor shall constitute an Event of Default, and any attempt by Assignor to take any of the prohibited action hereafter described shall constitute an Event of Default and shall be void and of no effect):

a. to observe, perform and discharge, diligently and punctually, all the obligations imposed upon the landlord under the Leases and not to do or permit to be done anything to impair the Leases or the Rents obligations or any of the other obligations of the tenants under the Leases; and Assignor shall give prompt notice to Assignee of any failure on the part of the Assignor to observe, perform and discharge any of Assignor's obligations under this paragraph or any other portion of this Assignment;

b. except as required by prudent business judgment exercised by Assignor in good faith, not to receive or collect any of the Rents arising or accruing under any of the Leases or from the Property in advance of the calendar month next preceding the calendar month with respect to which such Rents are due and payable;

c. except as required by prudent business judgment exercised by Assignor in good faith, not to grant any period of the free rental or abated rental under any of the Leases;

d. not to execute any assignment of the rights or interests of Assignor (as landlord) in the Leases without Assignee's prior written consent, such consent not to be unreasonably withheld or delayed, and not to execute any other assignment of rents (whether absolute or collateral) arising or accruing from the Leases or from the Property;

e. not to subordinate any of the Leases to any of the Security Documents or any other mortgage or other encumbrance, or permit, consent or agree to such subordination without Assignee's prior written consent, such consent not to be unreasonably withheld or delayed.

f. except as required by prudent business judgment exercised by Assignor in good faith, not to alter, modify or change the terms of any of the Leases (or the terms of any guaranty of any of the Leases) or give any consent or exercise any option required or permitted by such terms without the prior written consent of Assignee, such consent not to be unreasonably withheld or delayed, or cancel or terminate any of the Leases (or any guaranty of any of the Leases) or accept a surrender of any of the Leases or take or permit any action the effect of which is to result in a surrender of any Lease by operation of law;

g. not to consent to any assignment of or subletting under any of the Leases, whether or not in accordance with their terms, without the prior written consent of Assignee, such consent not to be unreasonably withheld or delayed, and not to grant any renewal or extension option under any of the Leases or agree to the enlargement or diminution in size or relocation of the leased premises under any Lease without the prior written approval of Assignee;

h. to execute and deliver at the request of Assignee all such further assurances and written instruments and take all such other action with respect to the Property as Assignee shall from time-to-time request in writing in order to carry out the purpose and intent of this Assignment;

i. to enforce, in the name of Assignor (as landlord), and at the cost, expense, and risk of Assignor, the performance of each and every obligation, term, covenant, condition, and agreement in the Leases to be performed by any tenant, except as otherwise waived by Assignor as required by prudent business judgment exercised by Assignor; and Assignor (as landlord) shall appear in and defend any action or proceeding arising under, occurring out of or in any manner connected with the Leases or the obligations, duties or liabilities of Assignor (as landlord) and any tenant thereunder, and, upon request by Assignee, Assignor will do so in the name and on behalf of Assignee, but at the expense of the Assignor, and Assignor shall pay all costs and expenses of Assignee, including reasonable attorneys' fees and disbursements, in any action or proceeding in which Assignee may appear;




Initial Initial

j. except as deemed necessary and otherwise required by prudent business judgment exercised by Assignor, not to waive, excuse, discount, set-off, compromise, or in any manner release or discharge any tenant under any Lease (or any guarantor for any such tenant) of and from any monetary or other obligations, covenants, conditions and agreements to be kept, observed and performed by such tenant (or guarantor for such tenant), including, without limitation, the obligation to pay Rents thereunder, in the manner and at the time and place specified therein; and

k. not to incur any indebtedness to any tenant (or guarantor for any tenant) under any of the Leases unless each such tenant (or guarantor) contemporaneously expressly waives in writing any right to offset against (or recoupment of) any portion of such indebtedness from Rents.

**Section 3.2 Representations and Warranties of Assignor.** Assignor unconditionally represents and warrants to Assignee as follows:

a. Assignor is the sole owner of

i. the Property, and

ii. the landlord's interest in the Leases;

b. Assignor has all of the requisite right, power, and authority to absolutely assign the Rents to Assignee, and no other person, firm, corporation, or entity has any right, title, or interest in the Rents;

c. To the best of the Assignor's knowledge, the Leases are valid and enforceable, in full force and effect, and have not been altered, modified, or amended in any manner whatsoever;

d. To the best of the Assignor's knowledge, the tenants named in the Leases are not in default under any of the lease's terms, covenants, or conditions. Assignor has duly and punctually performed and shall at all times hereafter duly and punctually perform all and singular the terms, covenants, conditions, and warranties of the leases on the Assignor's part to be kept, observed and performed;

e. No Rents provided for under any of the Leases have been previously sold, assigned, transferred, mortgaged, or pledged, and no Rents for any period subsequent to the date of this Assignment have been collected by Assignor or shall be collected by Assignor earlier than the calendar month next preceding the calendar month with respect to which such Rents are due and payable under the terms of any of the Leases; and

f. Except as required by prudent business judgment exercised by the Assignor, no period of free or abated rental has been granted to any tenant under any of the Leases.

## ARTICLE IV: TERMINABLE LICENSE OF ASSIGNOR TO COLLECT RENTS

**Section 4.1 Terminable License of Assignor.** So long as there exists no Event of Default after the applicable grace period or notice and failure to cure after the applicable cure period, Assignor shall have and is hereby granted the license (the "**License**") to receive and collect all of the Rents. The Rents so received and collected by Assignor shall be deposited by Assignor in one or more accounts containing only the Rents so deposited in such accounts (plus any interest paid by the depository on the amount from time to time in such accounts). Such Rents (and interest, if any) shall not be commingled with any other funds of Assignor, and Assignor shall not deposit any other funds in such accounts other than the Rents. Assignor shall, at all times, keep Assignee advised in writing of the names and locations of each depository at which such accounts containing the Rents are maintained as well as the account number of each such account and, within seven (7) days following written notice from Assignee to Assignor. Assignor shall advise Assignee of the balance in each such account to the extent that Assignee may request such information. As provided in Article III (entitled "**Covenants, Representations, and Warranties of Assignor**") of this Assignment,

Assignor shall not receive or collect any of the Rents arising or accruing under any of the Leases or from the Property in advance of the calendar month next preceding the calendar month with respect to which such Rents are due and payable under the terms of any of the Leases. Assignor acknowledges and agrees that the License does not negate or otherwise affect this Assignment's status as an absolute assignment fully transferring to Assignee title to the Rents.

**Section 4.2 Trust Fund.** All of the Rents so received or collected by Assignor pursuant to the License hereby granted pursuant to Section 4.1 hereof shall constitute a trust fund held by Assignor for the benefit of Assignee. Assignor shall utilize the entirety of the Rents constituting such trust fund for payment of the Indebtedness, for timely payment of taxes and assessments on the Property before the accrual of any penalty or interest with respect thereto, for payment of premiums on insurance required under the Security Documents, for payment of the costs of maintenance and repairs with respect to the Property, for the fulfillment of Assignor's other obligations under the Security Documents and for the fulfillment of Assignor's obligations (as landlord) under the Leases, all of such previously stated obligations of Assignor to be fulfilled by Assignor (in such order of priority as Assignee may from time to time direct) prior to Assignor's utilization of the Rents for any other purpose whatsoever. In all matters relating to the Rents, Assignor owes to Assignee the highest degree of loyalty and legal fiduciary responsibility recognized by law.

**Section 4.3 Automatic Termination of Assignor's License.** Upon the occurrence of any Event of Default after applicable grace period or notice and failure to cure after applicable cure period, the aforesaid License of Assignor under Section 4.1 of this Agreement shall, ipso facto, automatically terminate without the necessity that Assignee give Assignor any nature of notice or institute against Assignor any nature of legal proceedings or take any other action. Upon the occurrence of any such Event of Default, and after the applicable grace period or notice, with the failure to cure happening after the applicable cure period, and the resulting automatic termination of such License, upon written notice to Assignor, unless Assignee gives Assignor notice to the contrary (a matter within the sole discretion of Assignee), all Rents thereafter received by Assignor shall, in their entirety, be promptly paid over by Assignor to Assignee. Assignee may exercise any and all legal and equitable remedies including, without limitation the remedies provided from under Article V of this Assignment. Under no circumstances, however, does Assignee's legal ownership of the Rents depend upon the occurrence of any such Event of Default or the resulting automatic termination of Assignor's license or the giving of notice by Assignee or the filing of any lawsuit or the taking of any other action whatsoever by Assignee, it being the agreement and intention of Assignor and Assignee that this Assignment is absolute (not collateral) and immediately vests ownership of the Rents in Assignee.

**Section 4.4 Impact on Tenants of Termination of Assignor's License.** Notwithstanding any of the other terms or provisions of this Assignment, until receipt from Assignee of written notice of the occurrence of any Event of Default, each tenant may pay rentals directly to Assignor. Upon receipt by any tenant under the Leases, however, of written notice from the Assignee that an Event of Default has occurred, irrespective of whether the Assignor contests the occurrence or existence of such Event of Default or contests the Assignee's entitlement to receive the Rents, each such tenant under the Leases is hereby authorized and directed and required to pay directly to Assignee all Rents accruing after the date of the Event of Default stated in such written notice form Assignee (irrespective of any contrary provision of the lease to such tenant or any other circumstances whatsoever). The receipt by Assignee of Rents shall constitute a release of each tenant paying such Rents to the extent of the amounts paid to Assignee by such tenant. The written notice from Assignee to tenants referred to in this Section 4.4 is intended solely for the benefit of each tenant and shall never inure to the benefit of Assignor or any party claiming through or under Assignor. The receipt by a tenant of any such written notice from Assignee constitutes full authorization and mandate for such tenant to make all future payment of Rents directly to Assignee and each tenant paying such future Rents to Assignee after such notice for any Rents so paid to Assignee by

such tenant. In the event that any tenant receiving any such notice from Assignee does not timely pay such future Rents to Assignee, whether on account of continued payment of such Rents by such tenant to Assignor or withholding of such Rents by such tenant or such tenant's paying such rents into the registry of the court in connection with an interpleader or other action or any other non-payment of such Rents to Assignee by any tenant, such tenant will be liable to Assignee for the Rents not so paid to Assignee plus costs of the court plus attorneys' fees of Assignee. Whenever reasonably requested by Assignee, but no more often than annually, Assignor shall promptly notify each tenant of this Assignment, that Assignee has, nevertheless, subject to the terms and provisions of this Assignment, granted Assignor a revocable (by Assignee) license to collect the Rents so long as there is no Event of Default and containing the other terms and provisions hereinabove set forth in this Section 4.4. Assignor agrees that the provisions of this Section 4.4 shall be contained in each Lease hereafter executed by Assignor (as landlord) and by a tenant.

**Section 4.5 Application of Rents by Assignee Prior to Foreclosure.** All Rents received by Assignee for any period prior to Assignee's foreclosure on the Property or acceptance of a deed to the Property in lieu of foreclosure shall continue to constitute the property of Assignee and shall be applied by Assignee (in such order as Assignee may from time to time determine) to the payment of (a) all expenses of managing the Property including, but not limited to, salaries, fees, and other payments to a manager of the Property and/or such other personnel as Assignee may deem necessary or desirable; (b) all expenses of preserving, maintaining and operating the Property including, without limitation, all taxes, assessments, utility charges, insurance premiums, repairs, renovations, alterations and replacements; (c) all expenses incurred by Assignee incident to exercise of Assignee's rights under this Assignment and Assignee's rights under any of the Security Documents; and (d) payment of the Indebtedness and performance of all of Assignor's other obligations under the Security Documents.

## ARTICLE V: REMEDIES

**Section 5.1 Remedies.** Assignor expressly acknowledges and agrees that upon or at any time after the occurrence of an Event of Default after applicable grace period or notice and failure to cure after applicable cure period, Assignee's right, title, and interest in and to the Leases and Rents shall be and remain absolute and inviolate in accordance with the provisions of this Assignment. Moreover, without limiting, altering, affecting, or impairing in any manner or to any extent the absolute right, title, and interest of Assignee as provided herein, upon the occurrence of such an Event of Default, Assignee shall have the complete right, power and authority hereunder, then or thereafter, to exercise and enforce any or all of the following rights and remedies:

a. Upon written notice to Assignor, to terminate the License and then and thereafter, without taking possession of the Property, in Assignor's own name, to demand, collect, receive, sue for, attach and levy on the Rents and give proper receipts, releases and acquittances therefor, and after deducting all necessary and proper costs and expenses of operation of the Property and collection as determined by Assignee, including attorneys' fees, and apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, in reduction or repayment of the Indebtedness and fulfillment of Assignor's other covenants, duties and obligations under this Agreement and the Security Documents in such order or priority as Assignee may, in its sole discretion, determine; and

b. After the applicable grace period or notice and failure to cure after the applicable cure period, to declare the unpaid principal balance on the Note, the unpaid accrued interest and any other accrued but unpaid portion of the Indebtedness immediately becomes due and payable without any further notice of default, demand or action of any nature whatsoever whereupon the same shall become immediately due and payable and, at Assignee's option or exercise all of the rights and remedies contained in the Security Documents.

**Section 5.2 Exculpation of Assignee.** The acceptance by Assignee of this Assignment, and the exercise by Assignee of any of the rights, powers, privileges and authority provided under this Agreement, shall not, prior to action (if any) by Assignee in entering upon and taking possession of the Property, be deemed or construed to constitute Assignee a "mortgagee in possession", or thereafter or at any time or in any event obligate Assignee to appear in or defend any action or proceeding relating to the Leases, the Rents or the Property or to take any action hereunder or to expend any money or incur any expenses or perform or discharge any obligation, duty or liability of Assignor (as landlord) under any Lease or to assume any obligation or responsibility for any security deposits or other deposits delivered to Assignor by any tenant which were not actually delivered by Assignor to Assignee, nor shall Assignee be liable in any way for any injury or damage to persons or property sustained by any person, entity, firm or corporation in or about the Property.

**Section 5.3 No Waiver or Election of Remedies.**

a) **No Waiver.** Neither the collection of the Rents by Assignee nor application of the Rents by Assignee as provided for in this Assignment shall be deemed to cure or waive any Event of Default or waive, modify or affect any notice of default under any of the Security Documents or invalidate any act done pursuant to any such notice. The enforcement of any such right or remedy by Assignee, once exercised, shall continue for so long as Assignee shall elect, notwithstanding that the collection and application of the Rents may have cured the prior Event of Default. If Assignee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy under this Agreement may be reasserted at any time and from time to time following any subsequent Event of Default.

b) **Election of Remedies.** The right of the Assignee to collect and enforce the payment of the Indebtedness may be exercised by the Assignee either prior to or simultaneously with, or subsequent to any action taken under this Assignment. The failure of Assignee to assert any of the terms, covenants and conditions of this Assignment for any period of time or at any time or times shall not be construed or deemed to be a waiver of any such right, and nothing contained in this Agreement nor anything done or omitted to be done by Assignee pursuant to this Assignment shall be deemed to be an election of remedies or a waiver by Assignee of any of its rights and remedies under any of the Security Documents or under the law.

**Section 5.4 Indemnification by Assignor.** Assignor hereby agrees to indemnify and hold Assignee free and harmless from and against any and all liability, loss, cost, damage, or expense which Assignee may incur under or by reason of this Assignment, or by reason of any action taken by Assignee hereunder, or by reason of or in defense of any and all claims and demands whatsoever which may be asserted against Assignee arising out of the Leases, including specifically, but without limitation, any claim by any tenant of credit for Rents paid to and received by Assignor, but not delivered to Assignee, for any period under any Lease earlier than the calendar month next preceding the calendar month with respect to which such Rents payment is due. In the event the Assignee incurs any such liability, loss, cost, damage, or expense, the amount thereof, including attorneys' fees, shall be payable by Assignor to Assignee immediately, without demand, and shall be secured by all the security for the payment and performance of the Indebtedness.

## ARTICLE VI: MISCELLANEOUS

**Section 6.1 Possible Inconsistency Between Assignment and Other Documents.** Notwithstanding that the Note or any of the Security Documents may indicate the transfer of Rents by Assignor to Assignee to be a pledge or a collateral assignment or assignment, which is made as security or as further security for the payment or performance of some monetary or other obligation of Assignor, such provisions are not controlling and are intended to be and are hereby superseded by the provisions of this Assignment indicating that the assignment of Rents is an absolute assignment of Rents passing ownership of the Rents to Assignee subject to the terms and provisions of this Assignment.

**Section 6.2 Effect of this Assignment as a Severance.** This Assignment affects a severance of the Rents. Accordingly, the Assignor's future collection of the Rents pursuant to the License granted under this Assignment does not impair the prior severance of such Rents arising by reason of the provisions of this Assignment. The Assignee is expressly authorized to transfer title to the Rents by an assignment of such Rents to a separate assignment instrument, and, similarly, Assignee is expressly authorized to transfer title to the Rents in the case of a deed in lieu of foreclosure, either pursuant to and as a part of the terms and provisions of such deed or under a separate assignment instrument. If, after an Event of Default, but prior to any such foreclosure or deed in lieu of foreclosure, Assignor has received any of the Rents applicable to any period after such Event of Default but collected by Assignor prior to (or contemporaneous with) such Event of Default, the entirety of the Rents applicable to any period after such Event of Default are immediately due and payable by Assignor to Assignee.

**Section 6.3 Termination of Assignment.** Upon payment in full of the Indebtedness, performance of all of the covenants, duties, and obligations of Assignor under the Security Documents, and performance of all of the covenants, duties, and obligations of Assignor under this Assignment, this Assignment shall be and become void and of no effect and, upon request of Assignor, Assignee shall promptly execute and deliver to Assignor an instrument under which Assignee releases its rights under this Assignment and sets forth the consent of Assignee to each tenant's future payment of Rents to Assignor.

**Section 6.4 Non-Merger.** So long as any of the Indebtedness remains unpaid and so long as any of the covenants, duties, and obligations of Assignor under any of the Security Documents or under this Assignment have not been performed, unless Assignee otherwise consents in writing, the fee and leasehold estates in and to the Property and any portion thereof shall not merge, but shall always remain separate and distinct, notwithstanding the union of such estates (without implying Assignee's consent to any such union) either in Assignor, Assignee, any tenant or in any third party by purchase or otherwise.

**Section 6.5 Non-Liability of Assignee for Performance of Duties of Assignor Under Leases.** Notwithstanding any of the other terms or provisions of this Assignment or the Note or any of the Security Documents, Assignee has not assumed or agreed to perform and shall not be obligated to perform any of the covenants, duties, or obligations of the Assignor (as landlord) under any of the Leases.

**Section 6.6 Notices.** Any notice provided to be given or desired to be given by either party to the other pursuant to this Assignment is required to be in writing and transmitted either by U.S. Mail, Registered or Certified, adequate postage prepaid, by hand delivery (with the delivery receipt signed on behalf of the recipient) or by delivery via Federal Express or other recognized overnight courier service (with the delivery receipt signed on behalf of the recipient), any such notice to be transmitted by the sender to the intended recipient at the addresses hereinafter set forth (or hereafter designated as provided in this Section):

A. Address of Assignor: 12 NW 5th Place<br>Williston, Florida 32696

B. Address of Assignee: 1931 Humble Place Dr., Ste 205<br>Humble, Texas 77338

Assignor and Assignee may change their respective addresses for purposes of receipt of notices by giving notice to the other party in accordance with the preceding provisions.

**Section 6.7 Captions.** Titles and headings appearing in this Assignment are intended solely for means of reference and are not intended to modify any of the provisions of this Assignment.



Unofficial

**Section 6.8 Severability.** If any of the provisions of this Assignment and the application thereof in any circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Assignment shall remain in full force and effect and shall be valid and enforceable to the fullest extent permitted by applicable law.

**Section 6.9 Entire Agreement.** This Assignment constitutes the entire agreement between Assignor and Assignee with respect to the subject matter of this Assignment and may not be modified or amended in any manner except by a writing executed by Assignor and Assignee and delivered.

**Section 6.10 Time of Essence.** Time is of the essence with respect to all of the terms and provisions of this Assignment.

**Section 6.11 Governing Law.** **THIS AGREEMENT IS EXECUTED AND DELIVERED AS AN INCIDENT TO A LENDING TRANSACTION NEGOTIATED AND CONSUMMATED IN HARRIS COUNTY, TEXAS, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. THE ASSIGNOR HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ALL THE STATE AND LOCAL COURTS OF HARRIS COUNTY, TEXAS, AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS. TO THE EXTENT PERMITTED BY LAW, THE ASSIGNOR HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT OR OTHER PROCESS OF THE PAPERS ISSUED THEREIN AND AGREES THAT SERVICE MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE MAKER AT THEIR ADDRESSES SET FORTH HEREIN. In the event of a conflict in choice of laws, the Assignee may choose which law to apply.**

**Section 6.12 Document Retention and Imaging.** The undersigned understands and agrees that (i) Assignee's document retention policy may involve the imaging of executed loan documents and other miscellaneous documents, papers, reports, and other correspondence, and the destruction of the paper originals, and (ii) the undersigned waives any right that it may have to claim that the imaged copies of the loan documents and other miscellaneous documents, papers and other correspondence related thereto are not originals.

EXECUTED on this the 13 day of July 2022.

**ASSIGNOR:** **1402 CR 161 LLC, A TEXAS LIMITED LIABILITY COMPANY**

[signature]
Patrick Walsh, Manager

@ Florida
STATE OF ~~TEXAS~~ )
COUNTY OF Levy )

EUGENE R. MORTON
Notary Public - State of Florida
Commission # GG 954560
My Comm. Expires Feb 3, 2024

Before me, on this 13 day of July 2022, personally appeared Patrick Walsh known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that Patrick Walsh executed the same as the act of 1402 CR 161, LLC, a Texas limited liability company, as its Manager, and for the purposes and consideration therein expressed.

[signature]
Notary Public, State of ~~Texas~~ Florida
My commission expires: 2/3/2024



Initial Initial

Unofficial Copy

PREPARED IN THE OFFICE OF:
Johnsen Law PLLC
1849 Kingwood Drive, Suite 105
Kingwood, Texas 77339

AFTER RECORDING RETURN TO:
Copper River Funding, LLC
c/o Tim Stamps
1931 Humble Place Dr, Suite 205
Humble, Texas 77338

Unofficial Copy





Initial Initial

**EXHIBIT "A"**

**BEING 34.90 acres out of the J. F. Johnson Survey No. 474, Abstract No. 193, Taylor County, Texas, said 34.90 acres being all of that same 34.91 acre tract described in Instrument No. 2011-18232, Official Public Records, Taylor County, Texas and being more particularly described as follows:**

**BEGINNING at a 1/2" rebar found in Taylor County Road No. 161 on the EBL of said Survey No. 474 at the northeast corner of a 7.72 acre tract recorded as Tract 1 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas for the southeast corner of this tract, whence a PK nail with washer found in the intersection of said county road and Taylor County Road No. 162 at the southeast corner of said survey No. 474 bears S0°52'20"W 501.07 feet;**

**THENCE S85°40'28"W 1396.92 feet to a 1/2" rebar found at the northwest corner of an 8.29 acre tract recorded as Tract 2 in Instrument No. 2018-20607, Official Public Records, Taylor County, Texas and the southeast corner of a 25.39 acre tract recorded in Instrument No. 2018-5661, Official Public Records, Taylor County, Texas for the southwest corner of this tract;**

**THENCE N0°51'36"E at 593.29 feet pass a 1/2" rebar found and continue along for a total distance of 1090.23 feet to a point on the NBL of said Survey No. 474 at the northeast corner of said 25.39 acre tract for the northwest corner of this tract, whence an existing 2" pipe fence corner post bears S47°30'W 0.5 feet;**

**THENCE N85°28'55"E 1397.59 feet to a 1/2" rebar found in Taylor County Road No. 161 at the northeast corner of said Survey No. 474 for the northeast corner of this tract;**

**THENCE S0°52'20"W 1094.97 feet along Taylor County Road No. 161 and the EBL of said Survey No. 474 to the place of beginning and containing 34.90 acres of land.**

Unofficial Copy

**THE STATE OF TEXAS**
**COUNTY OF TAYLOR**

I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the Offiial Public Records of Taylor County, Texas.

2022-15228 AS
07/19/2022 03:44:49 PM Total Fees: $66.00

Larry G. Bevill,County Clerk
Taylor County, Texas



Unofficial Copy