JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

March 17, 2022 through April 18, 2022

Account Number: ▬▬▬▬▬



## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-935-9935** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00070351 DRE 021 219 10922 NNNNNNNNNNN  1 000000000 12 0000

PATRICK P WALSH
OR HANNAH J WALSH

### We're making a change to the Non-Chase ATM Transaction Fee

On June 12, 2022, we're increasing the Non-Chase ATM Transaction Fee* from $2.50 to $3. This fee applies when you use a Non-Chase ATM for Domestic Withdrawals, Domestic & International Balance Inquiries, or Domestic & International Balance Transfers. The International Withdrawal Fee for ATMs outside the U.S., Puerto Rico and the U.S. Virgin Islands remains $5 per withdrawal. As a reminder, you won't pay a fee for using Chase ATMs and you may get these fees waived depending on the type of account(s) you have.

- We'll continue to waive this fee on the following types of accounts: Chase Sapphire℠ Checking, Chase Private Client Checking℠, Chase Premier Savings℠, Chase Plus Savings℠, Chase Private Client Savings℠ and Chase Premier Plus Checking℠ with Military Banking Enhanced Benefits.
- We'll continue to waive the first four Non-Chase ATM transaction fees for each statement period for Chase Premier Plus Checking and Chase Premier Checking℠ accounts.

If you'd like to see the full Fee Schedule on the Additional Banking Services and Fees document, please go to **chase.com/disclosures** or visit a branch.

Please call the number on this statement if you have any questions. We accept operator relay calls.

*Fees from the ATM owner/networks may still apply.*

## CHECKING SUMMARY    Chase Total Checking

| | AMOUNT |
|---|---|
| **Beginning Balance** | **-$2,112.20** |
| Deposits and Additions | 42,685.12 |
| ATM & Debit Card Withdrawals | -23,116.31 |
| Electronic Withdrawals | -14,508.04 |
| Fees | -198.00 |
| **Ending Balance** | **$2,750.57** |



GOVERNMENT
EXHIBIT
6

March 17, 2022 through April 18, 2022

Account Number: ██████████

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|-------:|--------:|
| | Beginning Balance | | -$2,112.20 |
| 03/25 | Online Transfer From Chk ...8513 Transaction#: 13962005131 | 5,000.00 | 2,887.80 |
| 03/28 | Online Transfer From Chk ...8513 Transaction#: 13976989144 | 4,500.00 | 7,387.80 |
| 03/28 | Wire Reversal B/O: JPMc Cb Funds Transfer Same Day Tampa FL 33610-9128 US Org: Aba/061201754 Ameris Bank Ref:/Bnf/Our Ref Jpm220328-005402 Chaseref0163790087Ff Rtn Dtd 03/28/202 2 Trn 3246182087Es As Uta Bene Acc Ou Nt Closed Trn: 1430500087Hh | 3,500.00 | 10,887.80 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -99.99 | 10,787.81 |
| 03/28 | Recurring Card Purchase 03/26 Adobe Ps Creative Cld 408-536-6000 CA Card 8506 | -20.99 | 10,766.82 |
| 03/28 | Card Purchase          03/26 Google *Youtube Memb G.CO/Helppay# CA Card 8506 | -14.99 | 10,751.83 |
| 03/28 | Recurring Card Purchase 03/26 Adobe Stock 408-536-6000 CA Card 8506 | -29.99 | 10,721.84 |
| 03/28 | Card Purchase          03/26 Amazon.Com*160Cz9Hl1 Amzn.Com/Bill WA Card 8506 | -21.38 | 10,700.46 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 10,690.47 |
| 03/28 | Card Purchase          03/26 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -12.98 | 10,677.49 |
| 03/28 | Card Purchase          03/26 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -11.99 | 10,665.50 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 10,655.51 |
| 03/28 | Card Purchase          03/27 Springhill Suites Lafa Lafayette LA Card 8506 | -183.54 | 10,471.97 |
| 03/28 | Card Purchase          03/27 Springhill Suites Lafa Lafayette LA Card 8506 | -167.55 | 10,304.42 |
| 03/28 | Card Purchase          03/27 Springhill Suites Lafa Lafayette LA Card 8506 | -167.55 | 10,136.87 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 10,126.88 |
| 03/28 | Card Purchase          03/26 Uber   Eats Help.Uber.Com CA Card 8506 | -42.08 | 10,084.80 |
| 03/28 | Card Purchase          03/26 Paypal *Uber Eats 402-935-7733 CA Card 8506 | -29.28 | 10,055.52 |
| 03/28 | Card Purchase          03/26 Paypal *Uber Eats 402-935-7733 CA Card 8506 | -5.18 | 10,050.34 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -5.99 | 10,044.35 |
| 03/28 | Recurring Card Purchase 03/25 Netflix.Com 866-5797172 CA Card 8506 | -20.93 | 10,023.42 |
| 03/28 | Recurring Card Purchase 03/26 Apple.Com/Bill 866-712-7753 CA Card 8506 | -8.99 | 10,014.43 |
| 03/28 | Card Purchase          03/26 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -7.99 | 10,006.44 |
| 03/28 | Recurring Card Purchase 03/26 Blimps.Com Hosting Www.Theperfec PA Card 8506 | -15.00 | 9,991.44 |
| 03/28 | Recurring Card Purchase 03/27 Adobe Acropro Subs 408-536-6000 CA Card 8506 | -14.99 | 9,976.45 |
| 03/28 | Card Purchase          03/26 Fossil Rim Wildlife Ce 999-9999999 TX Card 8506 | -199.55 | 9,776.90 |
| 03/28 | Card Purchase          03/26 Prime Video*162C57Lg0 888-802-3080 WA Card 8506 | -4.38 | 9,772.52 |
| 03/28 | Card Purchase          03/26 Buc-Ee's #26 Madisonville TX Card 8506 | -98.69 | 9,673.83 |
| 03/28 | Recurring Card Purchase 03/27 Apple.Com/Bill 866-712-7753 CA Card 8506 | -12.99 | 9,660.84 |
| 03/28 | Recurring Card Purchase 03/26 2CO.Com*Texasoilp 650-249-5280 OH Card 8506 | -20.00 | 9,640.84 |
| 03/28 | Recurring Card Purchase 03/27 Apple.Com/Bill 866-712-7753 CA Card 8506 | -4.99 | 9,635.85 |
| 03/28 | Recurring Card Purchase 03/27 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 9,625.86 |
| 03/28 | Card Purchase          03/27 Apple.Com/Bill 866-712-7753 CA Card 8506 | -7.50 | 9,618.36 |
| 03/28 | Card Purchase          03/27 Prime Video*162Rv78V1 888-802-3080 WA Card 8506 | -7.67 | 9,610.69 |
| 03/28 | Recurring Card Purchase 03/27 Rocketlaw 877-757-15 Www.Rocketlaw CA Card 8506 | -39.99 | 9,570.70 |
| 03/28 | Card Purchase          03/27 Ziprecruiter, Inc. 855-747-5493 CA Card 8506 | -504.00 | 9,066.70 |
| 03/28 | Recurring Card Purchase 03/27 Bvd*Beenverified.Com 855-9046471 NY Card 8506 | -13.44 | 9,053.26 |
| 03/28 | Card Purchase          03/27 Prime Video*166Bx4601 888-802-3080 WA Card 8506 | -4.38 | 9,048.88 |

March 17, 2022 through April 18, 2022

Account Number: ▬▬▬▬▬▬

## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 03/28 | Card Purchase          03/28 Comcast 800-266-2278 GA Card 8506 | -481.57 | 8,567.31 |
| 03/28 | Recurring Card Purchase 03/27 Smartsheet Inc. Smartsheet.CO WA Card 8506 | -19.00 | 8,548.31 |
| 03/28 | Card Purchase          03/27 Gooutdoorsflorida.Com 888-3474356 FL Card 8506 | -72.33 | 8,475.98 |
| 03/28 | Card Purchase          03/27 Prime Video*161Qr3DC1 888-802-3080 WA Card 8506 | -10.17 | 8,465.81 |
| 03/28 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -7.99 | 8,457.82 |
| 03/28 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -4.99 | 8,452.83 |
| 03/28 | Recurring Card Purchase 03/28 Mycleanpc Httpswww.Mycl CA Card 8506 | -19.95 | 8,432.88 |
| 03/28 | ,,03/28 Online Domestic Wire Transfer Via: Ameris Bank/061201754 A/C: Walsh Family Land Corp Williston FL 32696 US Imad: 0328B1Qgc03C004487 Trn: 3246182087Es | -3,500.00 | 4,932.88 |
| 03/28 | Card Purchase          03/28 Store*Chick-Fil-A Www.Doordash. CA Card 8506 | -18.92 | 4,913.96 |
| 03/28 | Card Purchase With Pin  03/28 Hop IN 430456 Abilene TX Card 8506 | -80.00 | 4,833.96 |
| 03/28 | Card Purchase With Pin  03/28 Dollar General # Dg 20 Abilene TX Card 8506 | -26.24 | 4,807.72 |
| 03/28 | Online Domestic Wire Fee | -25.00 | 4,782.72 |
| 03/29 | Card Purchase          03/26 Moon River Ranch Resort Satin TX Card 8506 | -450.50 | 4,332.22 |
| 03/29 | Recurring Card Purchase 03/28 Www.Time4Learning.Com 954-7710914 FL Card 8506 | -34.90 | 4,297.32 |
| 03/29 | Card Purchase          03/28 Global Outreach Intl 662-842-4615 MS Card 8506 | -103.00 | 4,194.32 |
| 03/29 | Card Purchase          03/28 Taylor Food #2084 Rising Star TX Card 8506 | -75.00 | 4,119.32 |
| 03/29 | Card Purchase          03/28 Paypal *Starstablee 28 35314369001 Card 8506 | -8.49 | 4,110.83 |
| 03/29 | Recurring Card Purchase 03/29 Apple.Com/Bill 866-712-7753 CA Card 8506 | -7.99 | 4,102.84 |
| 03/29 | Card Purchase          03/28 Amzn Mktp US*163Z83G Amzn.Com/Bill WA Card 8506 | -16.55 | 4,086.29 |
| 03/29 | Card Purchase          03/29 Amazon.Com*162PR7Lt2 Amzn.Com/Bill WA Card 8506 | -15.58 | 4,070.71 |
| 03/29 | Card Purchase          03/29 Paypal *Apple.Com/Bil 402-935-7733 CA Card 8506 | -10.73 | 4,059.98 |
| 03/29 | Card Purchase With Pin  03/29 Wm Superc Wal-Mart Sup Brownwood TX Card 8506 | -15.00 | 4,044.98 |
| 03/30 | Online Transfer From Chk ...8513 Transaction#: 13990868162 | 2,800.00 | 6,844.98 |
| 03/30 | Card Purchase          03/28 The Home Depot #0253 Ocala FL Card 8506 | -2,257.50 | 4,587.48 |
| 03/30 | Recurring Card Purchase 03/29 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 4,577.49 |
| 03/30 | Card Purchase          03/29 Murphy7235Atwalmart Abilene TX Card 8506 | -85.43 | 4,492.06 |
| 03/30 | Card Purchase          03/29 Ontarget Cpa Indianapolis IN Card 8506 | -2,000.00 | 2,492.06 |
| 03/30 | Card Purchase          03/30 Pp*Doordash Chick-Fil 402-935-7733 CA Card 8506 | -94.45 | 2,397.61 |
| 03/30 | Card Purchase          03/29 Arby's 8535 Abilene TX Card 8506 | -31.13 | 2,366.48 |
| 03/30 | Card Purchase          03/29 Prime Video*165AR6Ys1 888-802-3080 WA Card 8506 | -1.99 | 2,364.49 |
| 03/30 | Recurring Card Purchase 03/29 Www.Theperfectwebsit Www.Theperfec PA Card 8506 | -15.00 | 2,349.49 |
| 03/30 | Paypal          Retry Pymt Nutrafol          Web ID: Paypalsi77 | -79.00 | 2,270.49 |
| 03/30 | Card Purchase          03/30 Subway 27150 Clyde TX Card 8506 | -38.90 | 2,231.59 |
| 03/31 | Online Transfer From Chk ...8513 Transaction#: 14002410975 | 2,500.00 | 4,731.59 |
| 03/31 | Recurring Card Purchase 03/30 Accountant  *Justansw 800-240-1371 CA Card 8506 | -50.00 | 4,681.59 |
| 03/31 | Card Purchase          03/29 The Home Depot #0253 Ocala FL Card 8506 | -732.83 | 3,948.76 |



March 17, 2022 through April 18, 2022

Account Number: ███████████

# TRANSACTION DETAIL  *(continued)*

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|--|--------|---------|
| 03/31 | Recurring Card Purchase 03/30 Web*Networksolutions 888-6429675 FL Card 8506 | | -7.99 | 3,940.77 |
| 03/31 | Card Purchase | 03/30 Shell Oil 12416928005 Cisco TX Card 8506 | -100.00 | 3,840.77 |
| 03/31 | Card Purchase | 03/30 Shell Oil 12416928005 Cisco TX Card 8506 | -53.83 | 3,786.94 |
| 03/31 | Card Purchase 8506 | 03/30 Elliott Electric Suppl Nacogdoches TX Card | -48.86 | 3,738.08 |
| 03/31 | Card Purchase 8506 | 03/31 Sq *Winning Edge Carwas Gosq.Com FL Card | -302.00 | 3,436.08 |
| 04/01 | Recurring Card Purchase 03/31 West Michigan Communic 231-7942526 MI Card 8506 | | -300.00 | 3,136.08 |
| 04/01 | Recurring Card Purchase 03/31 Tu *Transunion 800-493-3292 CA Card 8506 | | -24.95 | 3,111.13 |
| 04/01 | Card Purchase | 03/31 Cefco 2082 Cross Plains TX Card 8506 | -101.34 | 3,009.79 |
| 04/01 | Card Purchase | 03/31 Cefco 2082 Cross Plains TX Card 8506 | -22.01 | 2,987.78 |
| 04/01 | Card Purchase | 03/31 Subway 12986 Sweetwater TX Card 8506 | -33.67 | 2,954.11 |
| 04/01 | Card Purchase | 04/01 Incfile.Com 888-462-3453 TX Card 8506 | -29.00 | 2,925.11 |
| 04/01 | Card Purchase 8506 | 03/31 Dollar General #19723 Buffalo Gap TX Card | -7.58 | 2,917.53 |
| 04/01 | Card Purchase Card 8506 | 04/01 Prime Video*168Kp9Xt2 888-802-3080 WA | -2.99 | 2,914.54 |
| 04/01 | Card Purchase Card 8506 | 04/01 Prime Video*1H4Qe8Tm1 888-802-3080 WA | -5.65 | 2,908.89 |
| 04/01 | Recurring Card Purchase 04/01 Microsoft*Ultimate 1 M 425-6816830 WA Card 8506 | | -14.99 | 2,893.90 |
| 04/04 | Card Purchase Return   04/04 Amzn Mktp US Amzn.Com/Bill WA Card 8506 | | 16.55 | 2,910.45 |
| 04/04 | Online Transfer From Chk ...7006 Transaction#: 14039421629 | | 7,500.00 | 10,410.45 |
| 04/04 | Online Transfer From Chk ...2395 Transaction#: 14024688840 | | 1,300.00 | 11,710.45 |
| 04/04 | Online Transfer From Chk ...8513 Transaction#: 14024692577 | | 1,300.00 | 13,010.45 |
| 04/04 | Card Purchase | 03/31 Joeallensbbq Abilene TX Card 8506 | -131.41 | 12,879.04 |
| 04/04 | Card Purchase | 04/02 Incfile.Com 888-462-3453 TX Card 8506 | -29.00 | 12,850.04 |
| 04/04 | Card Purchase 8506 | 04/02 4Te*Consolidated Wate 352-291-5900 FL Card | -54.38 | 12,795.66 |
| 04/04 | Card Purchase | 04/01 Cefco 2082 Cross Plains TX Card 8506 | -142.10 | 12,653.56 |
| 04/04 | Card Purchase 8506 | 04/01 Florida Pest Control 352-3762661 FL Card | -96.00 | 12,557.56 |
| 04/04 | Recurring Card Purchase 04/02 Apple.Com/Bill 866-712-7753 CA Card 8506 | | -9.99 | 12,547.57 |
| 04/04 | Recurring Card Purchase 04/02 Apple.Com/Bill 866-712-7753 CA Card 8506 | | -16.10 | 12,531.47 |
| 04/04 | Recurring Card Purchase 04/02 Apple.Com/Bill 866-712-7753 CA Card 8506 | | -9.99 | 12,521.48 |
| 04/04 | Card Purchase | 04/01 Whataburger 1131 Sweetwater TX Card 8506 | -32.82 | 12,488.66 |
| 04/04 | Card Purchase 8506 | 04/01 IN *B4 Signs & Adverti 352-6011288 FL Card | -540.35 | 11,948.31 |
| 04/04 | Card Purchase Card 8506 | 04/01 Prime Video*167Zq9Hy2 888-802-3080 WA | -11.30 | 11,937.01 |
| 04/04 | Card Purchase 8506 | 04/02 Pp*Doordash Littlecae 402-935-7733 CA Card | -80.00 | 11,857.01 |
| 04/04 | Recurring Card Purchase 04/02 Apple.Com/Bill 866-712-7753 CA Card 8506 | | -8.99 | 11,848.02 |
| 04/04 | Card Purchase 8506 | 04/02 Paypal *Frogiefreak 402-935-7733 CA Card | -781.31 | 11,066.71 |
| 04/04 | Card Purchase Card 8506 | 04/02 Prime Video*1H0GA9Pd1 888-802-3080 WA | -3.28 | 11,063.43 |
| 04/04 | Card Purchase Card 8506 | 04/02 Prime Video*168SD2BB2 888-802-3080 WA | -4.38 | 11,059.05 |
| 04/04 | Card Purchase | 04/03 Incfile.Com 888-462-3453 TX Card 8506 | -29.00 | 11,030.05 |
| 04/04 | Card Purchase | 04/02 Kfc C975031 Abilene TX Card 8506 | -45.40 | 10,984.65 |

March 17, 2022 through April 18, 2022

Account Number: █████████████

# TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 04/04 | 04/02 Online Transfer To Chk ...3676 Transaction#: 14024899424 | -200.00 | 10,784.65 |
| 04/04 | Card Purchase W/Cash    04/02 Target T- 3710 Ridgemo Abilene TX Card 8506 Purchase $302.81 Cash Back $40.00 | -342.81 | 10,441.84 |
| 04/04 | Card Purchase      04/03 Paypal *Targetcorpo 402-935-7733 IN Card 8506 | -38.51 | 10,403.33 |
| 04/04 | Card Purchase      04/02 Dq-18 #13959 Cross Plains TX Card 8506 | -35.71 | 10,367.62 |
| 04/04 | Card Purchase      04/03 Regal Cinemas Mobile Ap Knoxville TN Card 8506 | -39.09 | 10,328.53 |
| 04/04 | Card Purchase      04/03 Msft * E0400l27X4 800-6427676 WA Card 8506 | -162.50 | 10,166.03 |
| 04/04 | Card Purchase      04/03 Amzn Mktp US*1H6Jk7L Amzn.Com/Bill WA Card 8506 | -42.79 | 10,123.24 |
| 04/04 | Card Purchase      04/03 Walmart.Com Aa 800-966-6546 AR Card 8506 | -157.62 | 9,965.62 |
| 04/04 | Card Purchase      04/03 Walmart.Com Aa 800-966-6546 AR Card 8506 | -16.14 | 9,949.48 |
| 04/04 | Card Purchase W/Cash    04/03 Dollar General # Dg 14 Brownwood TX Card 8506 Purchase $96.24 Cash Back $40.00 | -136.24 | 9,813.24 |
| 04/04 | Recurring Card Purchase 04/04 Dealstream Pro Httpsdealstre MA Card 8506 | -40.00 | 9,773.24 |
| 04/05 | Recurring Card Purchase 04/04 Apple.Com/Bill 866-712-7753 CA Card 8506 | -7.99 | 9,765.25 |
| 04/05 | Card Purchase      04/04 Cefco 2082 Smart Desq Cross Plains TX Card 8506 | -102.56 | 9,662.69 |
| 04/05 | Card Purchase      04/04 Cefco 2082 Cross Plains TX Card 8506 | -40.31 | 9,622.38 |
| 04/05 | Card Purchase      04/05 Pp*Doordash Chick-Fil 402-935-7733 CA Card 8506 | -23.39 | 9,598.99 |
| 04/05 | Card Purchase      04/05 Pp*Doordash Chick-Fil 402-935-7733 CA Card 8506 | -23.39 | 9,575.60 |
| 04/05 | Card Purchase      04/04 Golden Chick Sweetwater TX Card 8506 | -24.12 | 9,551.48 |
| 04/05 | Card Purchase      04/04 Texaco 0381689 Clyde TX Card 8506 | -96.47 | 9,455.01 |
| 04/05 | Card Purchase      04/05 Prime Video*1H0M250G0 888-802-3080 WA Card 8506 | -2.99 | 9,452.02 |
| 04/05 | Card Purchase      04/05 Amazon Kids+*1H9J327T 888-802-3080 WA Card 8506 | -6.99 | 9,445.03 |
| 04/05 | Card Purchase      04/05 Airbnb Hmqrh49Qwe Airbnb.Com CA Card 8506 | -2,010.77 | 7,434.26 |
| 04/05 | 04/05 Online Transfer To Chk ...3676 Transaction#: 14044113641 | -200.00 | 7,234.26 |
| 04/05 | Card Purchase W/Cash    04/05 Allsups 2 9279 Interst Merkel TX Card 8506 Purchase $11.25 Cash Back $20.00 | -31.25 | 7,203.01 |
| 04/05 | Zelle Payment To Danny Merriman Jpm999Aj3Rdl | -500.00 | 6,703.01 |
| 04/05 | Card Purchase With Pin  04/05 Stripes 0472918 Brownwood TX Card 8506 | -4.31 | 6,698.70 |
| 04/05 | Card Purchase W/Cash    04/05 Wal-Mart Super Center Brownwood TX Card 8506 Purchase $184.16 Cash Back $100.00 | -284.16 | 6,414.54 |
| 04/06 | Card Purchase      04/04 Cowboy Pump & Supply Sweetwater TX Card 8506 | -926.33 | 5,488.21 |
| 04/06 | Card Purchase      04/04 Cowboy Pump & Supply Sweetwater TX Card 8506 | -545.86 | 4,942.35 |
| 04/06 | Recurring Card Purchase 04/06 Name-Cheap.Com* Aejq Www.Namecheap AZ Card 8506 | -14.16 | 4,928.19 |
| 04/06 | Card Purchase      04/05 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -4.99 | 4,923.20 |
| 04/06 | Card Purchase      04/05 Cefco 2082 Smart Desq Cross Plains TX Card 8506 | -55.13 | 4,868.07 |
| 04/06 | Recurring Card Purchase 04/05 Apple.Com/Bill 866-712-7753 CA Card 8506 | -29.99 | 4,838.08 |
| 04/06 | Recurring Card Purchase 04/05 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 4,828.09 |
| 04/06 | Recurring Card Purchase 04/05 Apple.Com/Bill 866-712-7753 CA Card 8506 | -12.99 | 4,815.10 |

March 17, 2022 through April 18, 2022

Account Number: ██████████

# TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 04/06 | Recurring Card Purchase 04/06 Apple.Com/Bill 866-712-7753 CA Card 8506 | -8.58 | 4,806.52 |
| 04/06 | Card Purchase      04/05 Youngla Httpsyoungla. CA Card 8506 | -35.59 | 4,770.93 |
| 04/06 | Card Purchase      04/05 Iron Horse Travel Cente Merkel TX Card 8506 | -14.14 | 4,756.79 |
| 04/06 | Card Purchase      04/06 Playstationnetwork 650-2956540 CA Card 8506 | -69.99 | 4,686.80 |
| 04/06 | Card Purchase      04/05 Cash Depot Vend Brownwood TX Card 8506 | -2.00 | 4,684.80 |
| 04/06 | Card Purchase      04/06 Subway 32893 Sweetwater TX Card 8506 | -23.56 | 4,661.24 |
| 04/06 | Card Purchase      04/06 Paypal *Dakota.Barron 402-935-7733 CA Card 8506 | -167.00 | 4,494.24 |
| 04/06 | Recurring Card Purchase 04/06 Study.Com * Study.Com Study.Com CA Card 8506 | -199.99 | 4,294.25 |
| 04/07 | Online Transfer From Chk ...2395 Transaction#: 14058466377 | **10,000.00** | 14,294.25 |
| 04/07 | Online Transfer From Chk ...2395 Transaction#: 14063943923 | **3,000.00** | 17,294.25 |
| 04/07 | Card Purchase      04/05 Chick-Fil-A #04630 325-510-3302 TX Card 8506 | -37.17 | 17,257.08 |
| 04/07 | Card Purchase      04/05 Brownwood Market Brownwood TX Card 8506 | -75.00 | 17,182.08 |
| 04/07 | Card Purchase      04/06 Cefco 2082 Cross Plains TX Card 8506 | -18.70 | 17,163.38 |
| 04/07 | Card Purchase      04/06 Apple.Com/Bill 866-712-7753 CA Card 8506 | -4.29 | 17,159.09 |
| 04/07 | Recurring Card Purchase 04/06 Apple.Com/Bill 866-712-7753 CA Card 8506 | -4.99 | 17,154.10 |
| 04/07 | Card Purchase      04/07 Amzn Mktp US*1H71W1J Amzn.Com/Bill WA Card 8506 | -19.25 | 17,134.85 |
| 04/07 | Card Purchase      04/06 Walgreens #7937 Abilene TX Card 8506 | -8.49 | 17,126.36 |
| 04/07 | Card Purchase      04/06 Cefco 2082 Cross Plains TX Card 8506 | -1.58 | 17,124.78 |
| 04/07 | Recurring Card Purchase 04/07 Apple.Com/Bill 866-712-7753 CA Card 8506 | -6.99 | 17,117.79 |
| 04/07 | Card Purchase      04/07 Amazon.Com*1H73N38S0 Amzn.Com/Bill WA Card 8506 | -15.44 | 17,102.35 |
| 04/07 | Card Purchase      04/07 Prime Video*1H2B28Bo0 888-802-3080 WA Card 8506 | -4.38 | 17,097.97 |
| 04/07 | Card Purchase      04/07 Ziprecruiter, Inc. 855-747-5493 CA Card 8506 | -384.00 | 16,713.97 |
| 04/07 | 04/07 Online Domestic Wire Transfer Via: Ffin Abilene/111301122 A/C: First Texas Title Abilene TX 79606 US Ref: Attention Julie Dorsey/Time/08:03 Imad: 0407B1Qgc03C004054 Trn: 3136362097Es | -10,000.00 | 6,713.97 |
| 04/07 | Card Purchase W/Cash    04/07 Cefco 2082 Cross Plains TX Card 8506 Purchase $28.85 Cash Back $20.00 | -48.85 | 6,665.12 |
| 04/07 | Card Purchase W/Cash    04/07 Wal-Mart Super Center Sweetwater TX Card 8506 Purchase $191.21 Cash Back $100.00 | -291.21 | 6,373.91 |
| 04/07 | Online Domestic Wire Fee | -25.00 | 6,348.91 |
| 04/08 | Card Purchase      04/08 Walmart.Com Aa 800-966-6546 AR Card 8506 | -3.63 | 6,345.28 |
| 04/08 | Card Purchase      04/04 Humphrey Petes Restaura Early TX Card 8506 | -175.04 | 6,170.24 |
| 04/08 | Card Purchase      04/07 Cefco 2082 Cross Plains TX Card 8506 | -88.34 | 6,081.90 |
| 04/08 | Card Purchase      04/07 Amazon.Com*1A32453Y1 Amzn.Com/Bill WA Card 8506 | -26.28 | 6,055.62 |
| 04/08 | Card Purchase      04/07 Golden Chick Sweetwater TX Card 8506 | -32.62 | 6,023.00 |
| 04/08 | Card Purchase      04/07 Sq *Abilene Gasoline & Merkel TX Card 8506 | -1,117.14 | 4,905.86 |
| 04/08 | Card Purchase      04/07 Daniel H. Walkup, D.M. Ocala FL Card 8506 | -130.00 | 4,775.86 |
| 04/08 | Card Purchase      04/07 Cotton Patch Cafe - Br 972-4599430 TX Card 8506 | -138.66 | 4,637.20 |
| 04/08 | Card Purchase      04/07 United Supermarket 554 Brownwood TX Card 8506 | -6.07 | 4,631.13 |
| 04/08 | Card Purchase      04/08 Amzn Mktp US*1A2Jp4A Amzn.Com/Bill WA Card 8506 | -64.18 | 4,566.95 |
| 04/08 | Card Purchase      04/08 Prime Video*1H3Lv1Pz2 888-802-3080 WA Card 8506 | -5.65 | 4,561.30 |
| 04/08 | Card Purchase      04/08 Totalvisa 844-548-9721 Sioux Falls SD Card 8506 | -80.00 | 4,481.30 |

March 17, 2022 through April 18, 2022

Account Number: ▉▉▉▉▉▉▉▉▉

# TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 04/08 | Card Purchase W/Cash    04/08 Wal-Mart #0536 Abilene TX Card 8506 Purchase $112.05 Cash Back $100.00 | -212.05 | 4,269.25 |
| 04/11 | Card Purchase Return    04/10 Amazon.Com Amzn.Com/Bill WA Card 8506 | 15.58 | 4,284.83 |
| 04/11 | Card Purchase          04/07 Chick-Fil-A #04630 325-510-3302 TX Card 8506 | -18.99 | 4,265.84 |
| 04/11 | Recurring Card Purchase 04/08 Straighterline 877-787-8375 MD Card 8506 | -99.00 | 4,166.84 |
| 04/11 | Card Purchase          04/08 Epc*Fortnite 919-854-0070 NC Card 8506 | -11.99 | 4,154.85 |
| 04/11 | Recurring Card Purchase 04/08 Apple.Com/Bill 866-712-7753 CA Card 8506 | -4.99 | 4,149.86 |
| 04/11 | Card Purchase          04/08 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -9.99 | 4,139.87 |
| 04/11 | Card Purchase          04/08 Cash Depot Vend Brownwood TX Card 8506 | -2.00 | 4,137.87 |
| 04/11 | Card Purchase          04/08 Stripes 0472918200 Brownwood TX Card 8506 | -86.17 | 4,051.70 |
| 04/11 | Card Purchase          04/08 Stripes 0472918200 Brownwood TX Card 8506 | -63.90 | 3,987.80 |
| 04/11 | Card Purchase          04/08 Stripes 0472918200 Brownwood TX Card 8506 | -30.64 | 3,957.16 |
| 04/11 | Recurring Card Purchase 04/09 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 3,947.17 |
| 04/11 | Recurring Card Purchase 04/09 Apple.Com/Bill 866-712-7753 CA Card 8506 | -5.99 | 3,941.18 |
| 04/11 | Recurring Card Purchase 04/09 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 3,931.19 |
| 04/11 | Card Purchase          04/08 Office Depot #347 Abilene TX Card 8506 | -27.05 | 3,904.14 |
| 04/11 | Card Purchase          04/08 Office Depot #347 Abilene TX Card 8506 | -0.49 | 3,903.65 |
| 04/11 | Card Purchase          04/08 Panda Express #2194 Abilene TX Card 8506 | -37.78 | 3,865.87 |
| 04/11 | Card Purchase          04/08 Subway 29285 Abilene TX Card 8506 | -46.71 | 3,819.16 |
| 04/11 | Card Purchase          04/08 Msft * E0500Hnwt3,E050 800-6427676 WA Card 8506 | -725.00 | 3,094.16 |
| 04/11 | Card Purchase          04/08 Murphy7235Atwalmart Abilene TX Card 8506 | -11.12 | 3,083.04 |
| 04/11 | Card Purchase          04/09 Pp*Apple.Com/Bill 402-935-7733 CA Card 8506 | -49.97 | 3,033.07 |
| 04/11 | Card Purchase          04/09 Fandango 8668575191 CA Card 8506 | -87.96 | 2,945.11 |
| 04/11 | Recurring Card Purchase 04/09 Apple.Com/Bill 866-712-7753 CA Card 8506 | -8.99 | 2,936.12 |
| 04/11 | Card Purchase          04/08 Little Caesars 1184-000 Abilene TX Card 8506 | -53.25 | 2,882.87 |
| 04/11 | Card Purchase          04/08 Cinemark Theatres 1146 Abilene TX Card 8506 | -49.85 | 2,833.02 |
| 04/11 | Card Purchase          04/09 Paypal *Uber Eats 402-935-7733 CA Card 8506 | -10.28 | 2,822.74 |
| 04/11 | Card Purchase          04/09 Fandango 8668575191 CA Card 8506 | -12.62 | 2,810.12 |
| 04/11 | Card Purchase          04/10 Amzn Mktp US*1A8Io4M Amzn.Com/Bill WA Card 8506 | -22.46 | 2,787.66 |
| 04/11 | Recurring Card Purchase 04/11 Adobe Inc 800-8336687 CA Card 8506 | -14.99 | 2,772.67 |
| 04/11 | Paypal          Inst Xfer  Uber Eats       Web ID: Paypalsi77 | -6.07 | 2,766.60 |
| 04/11 | Paypal          Inst Xfer  Uber Eats       Web ID: Paypalsi77 | -2.00 | 2,764.60 |
| 04/12 | Card Purchase Return    04/12 Prime Video 888-802-3080 WA Card 8506 | 2.99 | 2,767.59 |
| 04/13 | Recurring Card Purchase 04/12 Apple.Com/Bill 866-712-7753 CA Card 8506 | -7.99 | 2,759.60 |
| 04/13 | Insufficient Funds Fee For A $7.99 Recurring Card Purchase - Details: 0412Apple.Com/Bill 866-712-7753 CA        0############8506 00820 | -34.00 | 2,725.60 |
| 04/18 | Zelle Payment From William T Robinson Bbt115401889 | 1,250.00 | 3,975.60 |
| 04/18 | Card Purchase          04/16 Audible*1O82F0P91 Amzn.Com/Bill NJ Card 8506 | -14.95 | 3,960.65 |
| 04/18 | Card Purchase          04/17 Amzn Mktp US*1O4Gr55 Amzn.Com/Bill WA Card 8506 | -31.02 | 3,929.63 |
| 04/18 | Recurring Card Purchase 04/17 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 3,919.64 |
| 04/18 | Recurring Card Purchase 04/17 Apple.Com/Bill 866-712-7753 CA Card 8506 | -9.99 | 3,909.65 |
| 04/18 | Recurring Card Purchase 04/17 Apple.Com/Bill 866-712-7753 CA Card 8506 | -8.99 | 3,900.66 |
| 04/18 | Recurring Card Purchase 04/18 Adobe Ps Creative Cld 408-536-6000 CA Card 8506 | -20.99 | 3,879.67 |
| 04/18 | Card Purchase          04/18 Msft * E0500Idul1 800-6427676 WA Card 8506 | -362.50 | 3,517.17 |
| 04/18 | Card Purchase          04/17 Sed*Central Florida El 800-2271302 FL Card 8506 | -617.17 | 2,900.00 |

March 17, 2022 through April 18, 2022

Account Number: ███████████

## TRANSACTION DETAIL *(continued)*

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 04/18 | Card Purchase          04/18 Prime Video*1A2Tl3Qo2 888-802-3080 WA Card 8506 | -12.44 | 2,887.56 |
| 04/18 | Recurring Card Purchase 04/18 Blimps.Com Hosting Www.Theperfec PA Card 8506 | -15.00 | 2,872.56 |
| 04/18 | Paypal          Inst Xfer  Apple.Com Bill  Web ID: Paypalsi77 | -7.99 | 2,864.57 |
| 04/18 | Insufficient Funds Fee For A $14.95 Card Purchase - Details: 0416Audible*1O82F0P91 Amzn.Com/Bill NJ  0############8506 01 | -34.00 | 2,830.57 |
| 04/18 | Insufficient Funds Fee For A $31.02 Card Purchase - Details:          0417Amzn Mktp US*1O4Gr55 Amzn.Com/Bill WA0############8506 01987 | -34.00 | 2,796.57 |
| 04/18 | Insufficient Funds Fee For A $9.99 Recurring Card Purchase - Details: 0417Apple.Com/Bill 866-712-7753 CA   0############8506 00820 | -34.00 | 2,762.57 |
| 04/18 | Monthly Service Fee | -12.00 | 2,750.57 |
| | Ending Balance | | $2,750.57 |

### WANT TO AVOID PAYING A MONTHLY SERVICE FEE ON YOUR CHECKING ACCOUNT?

A Monthly Service Fee was charged to your Chase Total Checking account.  Here are the three ways you can avoid this fee during any statement period.

- **Have electronic deposits made into this account totaling $500.00 or more, such as payments from payroll providers or government benefit providers, by using (i) the ACH network, (ii) the Real Time Payment network, or (iii) third party services that facilitate payments to your debit card using the Visa or Mastercard network.** (You did not have an electronic deposit this statement period)

- **OR, keep a balance at the beginning of each day of $1,500.00 or more in this account.** (Your balance at the beginning of each day was -$2,112.20)

- **OR, keep an average beginning day balance of $5,000.00 or more in qualifying linked deposits and investments.** (Your average beginning day balance of  qualifying linked deposits and investments was  $2,170.59)

*Talk to a banker about transferring your balances to Chase today!*

Stop in today and explore all Chase has to offer.

## OVERDRAFT AND RETURNED ITEM FEE SUMMARY

| | Total for This Period | Total Year-to-date |
|---|---|---|
| Total Overdraft Fees * | $136.00 | $1,666.00 |
| Total Returned Item Fees | $.00 | $.00 |

* Total Overdraft Fees includes Insufficient Funds Fees, and Extended Overdraft Fees

March 17, 2022 through April 18, 2022

Account Number: ▬▬▬▬▬▬▬



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

**JPMorgan Chase Bank, N.A. Member FDIC**

March 17, 2022 through April 18, 2022
Account Number:

This Page Intentionally Left Blank

January 26, 2023

To whom it may concern,

During the week of January 16th I coordinated the travel and meetings for the following people to support the ongoing projects of Shiloh Oil Company.

Patrick Walsh

Isaac Bennet

Joe Burgess

Scott Moffat

During their stay in Texas they resided at the "Shiloh Base Camp" House and office located at 1402 CR161 Ovalo, Texas 79541. This was a business trip to facilitate an inspection on ongoing Shiloh Oil projects that Patrick Walsh oversees. Meetings took place at the Shiloh Base Camp location and at each of the different project wells sites.

Thank you,

Jay Cline

520-256-1564

emailingjdc@gmail.com

Notary Public State of Florida
Gregory A Jacobs
My Commission HH 302036
Expires 8/17/2026

GOVERNMENT
EXHIBIT

7



















GOVERNMENT
EXHIBIT
9









**1402 County Road 161, Ovalo, TX 79541**
4 bed · 3.5 bath · 3,607 sqft · 34.91 acre lot

Ask an agent

**Property Details** | Price & Tax History | Schools | Neighborhood | **Environmental Risk**

🏠 **Property Details** ∧

**Property Overview**

Welcome to your ostentatious custom home resting on 35 panoramic view acres & near the foot of Bald Eagle Mtn! This modern farmhouse styled by Caitlyn Murray of Black Lacquer Designs Los Angeles lives up to it's name & features thoughtful custom finishes throughout. Elevated luxury & functional layout is ideal for hosting & includes a formal dining topped with artist painted wallpaper, built in serve ware cabinet, hand crafted glass transoms, kitchen with ample cabinetry & quartz topped counters, prep island, wet bar with wine fridge & coffee station. Carefully selected & hand built lighting completes the look. Owners suite offers 2 walk-in closets with built-in dressers, en suite bath, clawfoot soaking tub & walk-in shower with contemporary tiling. 2nd story living provides boastful rooms, walk-in closets & built in study with two desks. Watch the game in the well equipped media room. Outdoor living boasts new heated pool & full barndominium apartment with impeccable styling + shop!

READ LESS ∧

**Property Features**

**Bedrooms**
- Bedrooms: 4

SEE MORE ∨





# BELIZE

INTERNATIONAL FINANCIAL SERVICES COMMISSION

INTERNATIONAL TRUSTS REGISTRY

## CERTIFICATE OF REGISTRATION

TRUST NO.
IFSC/99/T251/20

This is to certify that

THE WALSH INTERNATIONAL & IRREVOCABLE FAMILY TRUST settled on 30th July, 2020

*(Name of the Trust)*

having satisfied the requirement of the Trusts Act (CAP . 202), as amended by Act No. 9 of 2007, and the
International Trusts Regulations (S. I. No. 68 of 2007, was registered as an International Trust on the

17th   day of   August   2020

Trust Agent:   **Georgetown Trust, Ltd.**
**Caye Financial Centre, 3rd Floor**
**Cor. Coconut Drive & Hurricane Way**
**P. O. BOX 159 San Pedro Town, Ambergris Caye,**

Date of Issue:   17th August, 2020

*Deputy Registrar of International Trusts*

N.B This certificate is issued under Section 65 B (4) (b) of the Trusts Act, as Amended by
Act No. 9 of 2007.

GOVERNMENT EXHIBIT
10

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Executed as of _30_ July, 2020

**TABLE OF CONTENTS**

I. Name of Trust; Change of Name
    A. Name of Trust
    B. Change of Name

II. Irrevocability; Amendment
    A. Irrevocability
    B. Amendment

III. Beneficiaries; Dispositive Provisions
    A. Trust for Grantors and Grantors' Issue
        1. Income and Principal
        2. Termination
        3. Gift Over
        4. GST Exempt and Non-GST Exempt Portions
    B. Child's Trust
        1. Income and Principal
        2. Termination
        3. Gift Over
    C. Beneficiaries under Age 30
        1. Trust
        2. Income and Principal
        3. Termination
    D. Merger

IV. Trustees
    A. Designation of Successor or Additional Trustees
        1. Protector Shall Appoint or Remove Trustees
        2. Indemnity
        3. Notice of Change of Trustee
        4. Unavailable Trustee
    B. Limitations on Trustees
    C. Resignations
    D. Powers of Successor Trustees
    E. Reliance
    F. Exoneration
    G. Indemnification
    H. Accounts
    I. Compensation
    J. Trustee's Discretions

V. Trustee and Protector Not Required to Give Bond

VI.  Statement of Intent; Payment of Taxes
    A.  Not Binding
    B.  Support
    C.  General Welfare
    D.  Payment of Taxes
    E.  Tax Savings Clause
    F.  Generation-Skipping Transfer Tax Savings Clause

VII.  Vesting of Interests
    A.  Survivorship
    B.  Spendthrift Provision
    C.  Sole and Separate Interest
    D.  Perpetuities

VIII.  Trustee's Powers and Provisions
    A.  Trustee's Powers
    B.  Beneficiaries
        1.  Distribution
        2.  Deposits
        3.  Direct Expenditures
        4.  Receipt

IX.  Powers of Appointment
    A.  Permitted Appointees
    B.  Impermissible Appointees
    C.  Exercise of Power of Appointment
        1.  Will or Codicil
        2.  Revocable Trust
        3.  Donee's Acknowledged Instrument
    D.  Donee's Increased Taxes
    E.  Rights of Appointees Against Distributees

X.  Protector; Powers of Protector
    A.  Designation of Protector and Successor Protector
    B.  Removal or Resignation of Protector
        1.  Involuntary Removal
        2.  Voluntary Resignation
    C.  Protections and Exculpations
    D.  Consent to Addition or Removal of Beneficiary
    E.  Remove or Appoint Trustee and Designate Governing Law
    F.  Appoint Additional Trustees
    G.  Demand Accounting
    H.  Require Bond
    I.  Duration of Powers
    J.  Written Consent
    K.  Compensation

XI.  Construction Provisions
     A.  Definitions
          1.  Acknowledged Instrument
          2.  Assets
          3.  Business Entity
          4.  Charitable Organizations
          5.  Child and Issue
          6.  CPI Adjustment
          7.  Distribute
          8.  Gift Tax Liability
          9.  Grantors
          10.  Grantors' Income Tax Liability Attributable to the Trust
          11.  Grantors' Estimated Income Tax Liability Attributable to the Trust
          12.  Heirs at Law
          13.  Internal Revenue Code
          14.  Per Stirpes
          15.  Personal Representative
          16.  Political Organizations
          17.  Relatives
          18.  S Stock
          19.  Securities
          20.  Tax
          21.  Trust Property
     B.  Contingent Beneficiaries
     C.  Governing Law
          1.  Laws of Belize
          2.  Foreign Administration
          3.  Change of Governing Law
          4.  Appointment to Another Trust
     D.  Notice
          1.  Notice to Trustee
          2.  Notice by Protector or Beneficiary to Trustee
          3.  Notice by Trustee to Any Person
     E.  Multiple Counterparts
     F.  Headings
     G.  References
     H.  Gender and Number

## THE WALSH
## INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE

**THIS TRUST INDENTURE** is entered into this 3 O day of July, 2020 between Patrick Parker Walsh & Hannah Judy Walsh whose address is P.O. Box 147, Williston, Florida, 32696, United States of America as "Grantors", and Georgetown Trust, Ltd. having its principal office at Caye Financial Centre, Coconut Drive & Hurricane Way, San Pedro, Ambergris Caye, Belize, as "Trustee," and Joel M. Nagel, Esq., having his principal office at 409 Broad Street, Suite 204, Sewickley, Pennsylvania, 15143, United States of America as "Protector," for the benefit of Patrick P. & Hannah J. Walsh

### RECITALS

**WHEREAS** Patrick P. & Hannah J. Walsh wish to make an irrevocable gift of money and property as contained in Schedule "A" to The Walsh International & Irrevocable Family Trust Indenture;

**WHEREAS** Georgetown Trust, Ltd. (Belize) agrees to accept this indenture and act as Trustee on the terms and conditions stated herein;

**NOW THEREFORE**, the Grantors set forth this Trust Indenture as follows:

## I. NAME OF TRUST; CHANGE OF NAME

A. **Name of Trust**: The initial trust created by this Trust Indenture shall be known as "The Walsh International & Irrevocable Family Trust Indenture"

B. **Change of Name**: The Trustee, with the consent of the Protector, by deed or other written instrument, may change the name of any trust created by or pursuant to this Trust Indenture.

## II. IRREVOCABILITY; AMENDMENT

A. **Irrevocability**: The Grantors transfer to the Trustee the property described in Schedule A absolutely and irrevocably, upon the uses and trusts herein stated. The Trustee agrees to hold and administer the trust estate in accordance with the terms set forth below and the Trustee's best judgment.

B. **Amendment**: During the lifetimes of the Grantors, the Trustee, with the consent of the Protector, may amend, alter, change, or modify this Trust Indenture, in any manner, in whole or in part, by a written instrument signed by the Trustee and the Protector. Upon the death of the last Grantor, this Trust Indenture may not be amended, altered, changed, or modified in any way by the Trustee, the Protector, or any other person whomsoever, except as provided in this Trust Indenture.

4

## III. BENEFICIARIES; DISPOSITIVE PROVISIONS

A. **Trust for Grantors and Grantors' Issue**: The Trustee shall administer and distribute the trust for the benefit of Grantors, and Grantors' issue, whether now living or born to or adopted by the Grantors during the Grantors' lives. The Trustee by a written instrument, with the consent of the Protector, at any time during the lifetime of both Grantors, may (i) designate any person or class of persons, charitable organization (being recognized as having charitable status in its country of formation or operation), or any other entity, to be a Beneficiary; and (ii) declare that any Beneficiary (whether originally named as a Beneficiary of the Trust herein or subsequently nominated) shall cease to be a Beneficiary, either for all time or any lesser period. The Trustee shall ensure that during the Grantors' lives there is always at least one Beneficiary.

1. **Income and Principal**: The Trustee is authorized, at any time or times, to distribute all or any part of the net income or principal or both to Grantors and Grantors' issue, in equal or unequal shares, which is advisable in the Trustee's absolute discretion, for his best interests and general welfare, even if the distribution results in the termination of the trust. Any undistributed net income shall be accumulated and added to principal at intervals determined by the Trustee.

2. **Termination**: Unless sooner terminated by discretionary distributions pursuant to paragraph 1, this trust shall terminate on the date of the death of the second Grantor. (Referred to in this Section A as "Termination Date").

3. **Gift Over**: Upon the Termination Date, the Trustee shall distribute all principal and any accrued or undistributed income which remains and has not been disposed of by Grantors' exercise of a valid power of appointment, in the following manner:

a. The assets shall be distributed to the secondary or contingent beneficiaries of this Trust pursuant to the Trustees discretion, taking into account any letter of wishes or evidence of the Grantors' intentions with regard to specific property or all of the trust assets in general. Any amount allocated for a then living child of Grantors shall be distributed to such child, subject to the provisions of Section B. Any amounts allocated for a then living issue of Grantors other than a child of the Grantors (or any other person or entity) shall be distributed to such beneficiary, subject to the provisions of Section C.

b. If none of Grantors' issue is then living, the assets shall be distributed to the contingent beneficiaries, with those beneficiaries' identities, and the shares of the distributable assets which they each receive, to be determined as of the date of death of the Grantors.

4. **GST Exempt and Non-GST Exempt Portions**: If at any time the Trustee is holding assets which are potentially subject to generation-skipping transfer ("GST") tax, it is the Grantors' intent that the Trustees first allocate and distribute the Non-GST Exempt assets to Grantors' issue, to the extent possible, and the GST-Exempt assets to Grantors' grandchildren.

B. **Child's Trust**: Each trust established for the benefit of a child of the Grantors shall be known by the name designated by the Trustee, at the time such trust is created.

1. **Income and Principal**: The Trustee, with the consent of the Protector, is authorized, at any time or times, to distribute all or any part of the net income or principal or either to such child and his or her issue, in equal or unequal shares, which is advisable in the Trustee's absolute discretion, with the consent of the Protector, for his, best interests and general welfare, even if the distribution results in termination of the trust. Any undistributed net income shall be accumulated and added to principal at intervals determined by the Trustees. The Trustee shall generally observe the Child Clause Provisions of Section C below without impeding the Trustee's absolute discretion.

2. **Termination**: Unless sooner terminated by discretionary distributions pursuant to paragraph 1, the trust shall terminate on the date of death of such child referred to in this Section B as "Termination Date."

3. **Gift Over**: Upon the Termination Date, the Trustee shall distribute all principal and any accrued or undistributed income which remains in the following manner:

a. The assets shall be distributed at the discretion of the Trustee, for the then living issue of such child and distributed to such child, subject to the provisions of Section C.

b. If none of such child's issue is then living, the Trustee shall re-allocate the assets for the Grantors' then living beneficiaries. Any amount allocated for a then living child of Grantors shall be distributed to such child, unless such child is a beneficiary of another trust under this Trust Indenture, in which case his or her share shall be added to principal of that trust. Any amounts allocated for a then living issue of Grantors other than a child of the Grantors shall be distributed to such issue, subject to the provisions of Section C.

c. If none of the child's issue nor the issue of the Grantors is then living, the assets shall be distributed to the contingent beneficiaries, with those beneficiaries' identities and amount to be received by such beneficiary, to be determined as of the date of death of such child, by the Trustee.

C. **Beneficiaries Under Age 30**: Each trust established for the benefit of any beneficiary other than a child of the Grantors shall be known by the name designated by the Trustee, with the consent of the Protector, at the time such trust is created.

1. **Trust**: If any beneficiary other than a child of the Grantors becomes eligible to receive a distribution under this trust before he or she reaches his or her 30th birthday, the Trustee shall retain the beneficiary's distribution in trust to be administered and distributed as provided in this Section.

2. **Income and Principal**:

a. The Trustee is authorized, at any time to distribute any part of the net income or principal or both which is advisable in the Trustee's discretion for the beneficiary's support in

reasonable comfort, even if the distribution results in the termination of the trust. Any undistributed net income shall be accumulated and added to principal at intervals determined by the Trustee.

b. **Disposition**: When the beneficiary reaches his or her 18th birthday, the Trustee may distribute up to 10% of all trust assets, as then constituted, to the beneficiary. When the beneficiary reaches his or her 21st birthday, the Trustee may distribute up to another 10% of the balance of the trust assets, as then constituted, to the beneficiary. When the beneficiary reaches his or her 25th birthday, the Trustee may distribute up to 30% of the balance of the trust assets, as then constituted, to the beneficiary. When the beneficiary reaches his or her 30th birthday, the Trustee may distribute up to the total balance of the trust assets as then constituted, to the beneficiary. The Trustee may extend or withhold payments to the Beneficiary for any reason with full discretion. If the beneficiary dies before reaching his or her 30th birthday, the Trustee shall distribute all trust assets, as then constituted, to the alternate or contingent beneficiaries as described within this Trust Indenture.

3. **Termination**: Unless sooner terminated by discretionary distributions pursuant to paragraph 1, this trust shall terminate upon the beneficiary's 65th birthday.

D. **Merger**: If, at any time, the Trustee of any trust created by or pursuant to this Trust Indenture is also acting as Trustee of any other trust created by a trust instrument (including this Trust Indenture) or by a will for the benefit of the same beneficiary or beneficiaries upon substantially the same terms and conditions, the Trustee is authorized and empowered, if in its discretion this action is in the best interest of the beneficiary or beneficiaries, to transfer and merge all of the assets then held in the trust created by or pursuant to this Trust Indenture to and with such other trust; provided, however, that both or all of such trusts must have been administered by the same Trustee and in the same jurisdiction prior to the transfer and merger.

## IV. TRUSTEES

A. **Designation of Successor or Additional Trustees.**

1. **Protector Shall Appoint or Remove Trustees:** The power to appoint a new Trustee or Trustees and an additional Trustee or Trustees and to remove a Trustee or Trustees of any trust created by or pursuant to this Trust Indenture shall be vested in the Protector in accordance with Article Ten. However, the Protector cannot appoint himself as Trustee, as successor Trustee, or as an additional Trustee.

2. **Indemnity:** A resigning or removed Trustee shall be entitled to require from each continuing Trustee or new Trustee indemnity as described in Article IV.G. The Trustee shall have the right upon resignation or removal or upon its otherwise ceasing to be a Trustee hereof or upon distribution or withdrawal of assets forming all or part of the Trust Property to withhold, unless otherwise indemnified to its satisfaction, such assets as it shall in good faith consider necessary on account of liabilities (whether vested, contingent, or otherwise) to which it may as Trustee be subject, or to satisfy its rights of indemnification granted hereunder or by law implied.

3. **Notice of Change of Trustee:** Notices of all changes in the office of Trustee shall be endorsed on or attached to this Trust Indenture and signed by the surviving, continuing, or new Trustee or Trustees, and every such notice shall be sufficient evidence to any person having dealings concerning this Trust Indenture as to the facts to which it relates.

4. **Unavailable Trustee**: Whenever any Trustee is absent or otherwise unavailable, the other Trustees may act without the unavailable Trustee except with respect to the exercise of any discretion with respect to the distribution of income or principal of the trust. Any person dealing with the Trustees may, at any time or from time to time, rely on an acknowledged instrument by one or more of them that he has or they have sole authority to act because of the unavailability of the other Trustees, and such acknowledged instrument shall be binding on the trust to make fully valid the action with the person relying on such acknowledged instrument.

B. **Limitations on Trustees:** Any other provision of this Trust Indenture to the contrary notwithstanding, no Trustee shall participate in the exercise of any discretion with respect to the distribution of income or principal or any portion of the trust property in which he, or any person he is obligated to support, has any present beneficial interest, and the discretion shall be exercised only by the remaining Trustee or Trustees.

C. **Resignations:** Any Trustee may resign at any time by giving fourteen (14) days notice by acknowledged instrument to the Co-Trustee, if any, and to the Protector, or, if none, to the then income beneficiaries. With regard to any Trustee, upon (i) certification from two licensed doctors of medicine, each doctor affirming in a written instrument signed by him or her that he or she has examined such Trustee, and has concluded, based upon such examination, that such Trustee is unable to discharge its duties as Trustee, or (ii) the Trustee becoming subject to any bankruptcy laws, or if the Trustee is a company, (a) entering into liquidation, whether compulsory or voluntary, provided that such liquidation is not merely a voluntary liquidation for the purposes of amalgamation or reconstruction, (b) entering into receivership, (c) having an administrator of the Trustee appointed, or (d) being in any analogous state or subject to any analogous action in any jurisdiction, such Trustee shall thereupon be deemed to have resigned as Trustee, and the appointment of a successor Trustee shall be governed by Article X. Any such resignation shall operate to vest the Trust Property in the Co-Trustees, if any, or the successor Trustees.

D. **Powers of Successor Trustees:** Each successor Trustee shall have all rights and discretions which are granted to the original Trustee. No Trustee shall be responsible for any act or omission of any other Trustee. No successor or additional Trustee shall incur any liability as a result of qualifying as a Trustee before receiving an account of the previous administration of the trust.

E. **Reliance:** No person who deals with the Trustee shall be bound to see to the application of any asset delivered to the Trustee, or to inquire into the authority for, or propriety of, any action taken or not taken by the Trustee.

F. **Exoneration:** Any decision of the Trustee with respect to the exercise or nonexercise of any discretionary power or the time or manner of the exercise thereof, made

8

in good faith, shall fully protect the Trustee and be binding upon all persons interested in any trust created by this Trust Indenture. The Trustee shall not be liable for acts or omissions in administering a trust, except that each Trustee shall be liable for his own actual fraud, gross negligence, or willful misconduct. Furthermore, the Trustee may consult with counsel, in trust situs or elsewhere, who may be counsel to the Grantors, or to the Trustee, or to the Protector concerning any question which may arise with reference to the Trustee's duties or powers, or any of the provisions of this Trust Indenture, and the opinion of such counsel shall be a full and complete authorization and protection with regard to any action taken or not taken by the Trustee in good faith and in accordance with such opinion of counsel, and the Trustee shall not be liable for any loss or damage sustained as a result thereof.

G. **Indemnification:** Each Trustee shall be indemnified and held harmless by the trust to the full extent of the assets thereof, with respect to any liability incurred by him in his capacity as Trustee. In addition, the Trustee is authorized to reimburse himself with respect to any expense, including legal fees, incurred by him in connection with his services hereunder.

H. **Accounts:** The Trustee shall prepare annually an account of the income and principal of each trust created hereunder and deliver a copy of such account and the income tax returns filed by the Trustee (or information provided so that such tax and / or information returns may be filed) on behalf of such trust to the Grantors or Grantors' representatives during Grantors' lives. After the second Grantors' death, the Trust shall provide such statements to any beneficiary with regard only to their specific distribution and not as to the overall financial activity of the trust. Unless compelled by judicial process or administrative procedure, the Trustee shall not disclose any further information regarding the assets or income of any trust created hereunder to any beneficiary thereof. The Trustee shall be acquitted from liability for any action or omission taken in good faith which is disclosed in any account delivered to any beneficiary or their personal representatives or successors if no specific written objection to such action or omission is delivered by any such beneficiary or their personal representatives or successor to the Trustee within sixty (60) days of receipt of any such account.

I. **Compensation:** Except as the governing law of this Trust Indenture or the terms of any trust created by or pursuant to this Trust Indenture provide to the contrary, the Trustee shall be entitled to charge and pay out of principal or income (or partly out of each) of this Trust Indenture, or any trust created by or pursuant to this Trust Indenture, remuneration in accordance with Schedule B attached hereto and made a part of this Trust Indenture. Any Trustee that is a banker may, without accounting for any resulting profit, act as banker to each such trust for all purposes upon the terms that are usual between such bank and a customer. Any Trustee that is a professional person or firm may act in that professional capacity toward such trust for all purposes upon the terms that are usual between such professional person or firm and a client. [Notwithstanding the foregoing provisions of this Section I, however, the Trustee's charges and remuneration shall not exceed reasonable and customary charges and remuneration for similar services charged by corporate fiduciaries in the same geographic area.] It is hereby expressly provided that any corporation organized by the Grantors, a beneficiary or beneficiaries of any trust created by or pursuant to this Trust Indenture, or by the Trustee, may establish accounts and contract for services, including,

without limitation, custodian accounts, with or without investment advisory services, or other professional services, as the case may be, with the Trustee hereof, or with any affiliate thereof, and each may deal freely with the other, without the Trustee being required to account for any resulting profit, in like manner and to the same extent as if the said Trustee were not Trustee hereunder, and the Grantors hereby waive any principle or rule of law or equity that would in any way restrict any transaction, contract, or dealing because of a real or possible conflict of interest between the Trustee and said corporation, and all persons at any time interested hereunder shall be bound by such waiver.

J. **Trustee's Discretions:** Except as otherwise provided in this Trust Indenture, every discretion or power hereby or by law conferred upon the Trustee shall be an absolute and uncontrolled discretion or power. Every Trustee which is a corporation or company may exercise or concur in exercising any discretion or power hereby or by law conferred upon the Trustee by a resolution of such corporation or company or its governing body or may delegate the right and power to exercise or concur in exercising any such discretion or power to one or more members of its governing body appointed from time to time by its governing body for that purpose, or may delegate such right or power to any one of its directors, officers, or employees.

## V. TRUSTEE AND PROTECTOR NOT REQUIRED TO GIVE BOND.

Subject to the power of the Protector to require bond pursuant to Article X, neither the Trustee nor the Protector nor any person or entity to whom the Trustee has delegated a power pursuant to the provisions of any Article of this Trust Indenture shall be required to give a bond or other security for the faithful administration and discharge of its duties under or by virtue of this Trust Indenture, or any trust created by or pursuant to this Trust Indenture, and should any bond or undertaking be required, this direction notwithstanding, by any law or rule of court, no surety shall be required thereon. If the Protector requires that any Trustee or person or entity to whom the Trustee has delegated a power pursuant to the provisions of Article X shall give a bond or other security, the amount of such bond or other security shall be in an amount that is reasonably attainable by such person or entity.

## VI. STATEMENT OF INTENT; PAYMENT OF TAXES

A. **Not Binding:** Paragraph B of this Article explains the Grantors' intent in granting the powers contained in this Trust Indenture. It is meant only as a nonbinding guide to that intent, and shall not change or limit those powers.

B. **Support:** The discretion granted in this Trust Indenture to distribute assets for a beneficiary's support in reasonable comfort includes the discretion to make assets available to provide the beneficiary the necessities of life, such as food, shelter, clothing, and medical care; to furnish the beneficiary a reasonable amount of amenities of life; and to provide for the education of a beneficiary who would benefit by it.  Trustee may also withhold payments for such support within his absolute discretion and no enforceable right to receive payments of any kind shall be created for any beneficiary herein.

C. **General Welfare:** The discretion granted in this Trust Indenture to distribute assets

for a beneficiary's best interests and general welfare includes, in addition to making assets available for the beneficiary's support in reasonable comfort, the discretion to make assets available to provide the beneficiary entertainment, travel, and vacations; to purchase and furnish a residence for the beneficiary; and, if circumstances warrant, to purchase, start, or invest in a business for the beneficiary which appears to be sound or promising, even though it is not the type of investment in which trust assets were normally invested. Trustee may also withhold payments for such support within his absolute discretion and no enforceable right to receive payments of any kind shall be created for any beneficiary herein.

D. **Payment of Taxes:** With respect to each trust created by or pursuant to this Trust Indenture, the Trustee of such trust may use so much or all of the assets of such trust for the payment of any part or all of any taxes, including, without limitation, income, gift, estate, inheritance, succession, generation-skipping transfer, and death taxes and duties, required to be paid for any reason by (1) any person who may have transferred property of any nature to such trust, or (2) any one or more of the beneficiaries of such trust or the estate of such beneficiaries, in such amounts and in such manner, and whether proportionately or not, or may refrain from paying any part or all of such taxes, as the Trustee, in the Trustee's sole discretion, deems proper under the circumstances, and regardless of whether the payment of such taxes, or any part thereof, may or may not be legally enforceable against the Trustee of such trust. Such payment may be made to the personal representative of the estate of a deceased beneficiary, or to any person or corporation, whether or not in a fiduciary capacity, purporting to act on behalf of the estate of a deceased beneficiary, or to any beneficiaries of a deceased beneficiary's estate, or to any person or persons by whom such taxes or any part thereof are payable, or directly to any governmental bureau or other agency to which such taxes are payable, as the Trustee, in the Trustee's sole discretion, shall deem appropriate in the circumstances. The Trustee shall be absolutely protected in relying on any written statement as to the sums necessary for such payments of taxes as shall be furnished by any of the persons or entities above described to whom, or on whose behalf, payment of such taxes may be made. The Trustee shall not be required to see to the proper allocation of any such sums. Payment of or failure or refusal to pay such taxes, by the Trustee, in the exercise of the discretionary authority hereby conferred upon the Trustee, shall be conclusive and binding upon all persons interested in the Trust Property.

E. **Tax Savings Clause:** A Trustee or Protector of any trust created by or pursuant to this Trust Indenture who is a natural person shall not have any power whatsoever in the determination of accumulation of income or of distribution (including but not limited to distributions to such person and distributions in discharge of any legal obligation of such person) of income or principal or in the apportionment of receipts and expenses between principal and income or in the establishment and maintenance of reserves in any trust created by or pursuant to this Trust Indenture or any power in any other determination or distribution that would cause trust principal to be includible in such person's estate for tax purposes, that would cause such person to make a gift for tax purposes (whether by reason of a prior disclaimer by such person, by reason of the making of such determination or distribution, or otherwise), or that would cause trust income to be taxed to such person, but such determinations and distributions shall be made in the sole discretion of the other Trustee or Protector then acting, if any. If there is no other Trustee or Protector then acting, such determinations and distributions shall not be made.

11

F. **Generation-Skipping Transfer Tax Savings Clause:** Notwithstanding any other provision of this Trust Indenture to the contrary, in no event shall the Trustee of any trust created by or pursuant to this Trust Indenture transfer any assets of a trust which has an inclusion ratio (as defined in Section 2642 of the Internal Revenue Code) of zero (0) to another trust which has an inclusion ratio (as defined in Section 2642 of the Internal Revenue Code) of more than zero (0) or which would otherwise result in the loss of any exemption or exclusion for purposes of the generation-skipping transfer tax under Chapter 13 of the Internal Revenue Code.

## VII. VESTING OF INTERESTS

A. **Survivorship**: For purposes of this Trust Indenture, a requirement that an individual survive a specified individual or event (such as the termination date of a trust) or be "then living" or "living" on a specified date means survival of the specified individual, event, or date by such individual by at least ninety (90) days. Any distribution under this Trust Indenture that is conditioned on the survivorship of one or more persons or requires that such persons be "then living" or "living" shall be of no effect if such survivorship condition is not met. Notwithstanding the preceding sentences, however, if, upon termination of a trust established hereunder, the effect of the preceding sentences with respect to any individual's death would (but for the provisions of this sentence) cause any part of the trust's termination to be a taxable termination for purposes of the generation-skipping transfer tax under Chapter 13 of the Internal Revenue Code, then a requirement that such individual survive the termination or be "living" or "then living" means that the individual (with respect to whose death after the trust's termination but prior to ninety (90) days after such termination is at issue) must only be living on the day of the termination of the trust. In this regard, if an individual dies under circumstances making it impractical to determine whether such individual was actually living on the day of the termination of the trust, such individual shall be deemed to have been living on the day of the termination of the trust.

B. **Spendthrift Provision:** No interest of any beneficiary in any trust created by or pursuant to this Settlement shall in any event be subject to the beneficiary's liabilities or to creditors claims, in the event of bankruptcy, death, divorce or other legal, regulatory or judicial proceeding, nor may there be a sale, anticipation, assignment, hypothecation, pledge, or transfer by such beneficiary (except in the case of assets disposed of pursuant to the exercise of a power of appointment granted herein), nor shall the assets of such trust or the income therefrom be liable for any debt of any beneficiary or be subject to any judgment rendered against any beneficiary or to the process of any court in aid of execution of any judgment so rendered, and all of the income and principal shall be transferable, payable, and deliverable only to or applicable only for the benefit of the beneficiaries designated hereunder at the time or times that they are eligible to the same under the terms of this Settlement.

C. **Sole and Separate Interest:** No interest of any beneficiary of any trust created by or pursuant to this Trust Indenture, nor any part of the same, nor any income therefrom shall, in any event, form or constitute a portion of any communal or joint estate of such beneficiary, and any such interest shall be and remain the sole, separate, and exclusive property of such beneficiary, and should such beneficiary be married or marry in a jurisdiction the laws of which provide for community of property, then any such interest shall be expressly excluded

12

from the community, and if any such beneficiary shall be female, such interest shall also be free from the interference, control, or marital power of her husband.

D. **Perpetuities:** Regardless of any contrary provision of this Trust Indenture, no asset shall be held in any trust for a longer period than twenty years after the date of death of the last survivor of Grantors and all of Grantors' issue living at the time of execution of this Trust Indenture. If any assets are held in a trust at the end of that period, all rights and discretions granted in this Trust Indenture to accumulate the trust net income shall terminate. All then remaining trust principal and accrued or undistributed income shall then vest in, and be distributed to, the beneficiary or beneficiaries of that trust to whom the Trustee must or may then pay the trust's income, in proportion to their interests in trust income, or, if such interests are indefinite, equally to such beneficiaries without regard to their relationship to the Grantors.

## VIII.  TRUSTEE'S POWERS AND PROVISIONS

A. **Trustee's Powers:** The Trustee, subject only to the limitations expressly provided in this Indenture, shall have the following powers and rights besides those vested in the Trustee elsewhere in this Indenture or by law:

1. To manage, sell, contract to sell, grant options to purchase, convey, exchange, transfer, abandon, improve, repair, insure, lease for any term even though commencing in the future or extending beyond the term of the trusts, and otherwise deal with all property, real or personal, in such manner, for such considerations, and on such terms and conditions as the Trustee shall decide.

2. To retain, invest, and reinvest the Trust Property in stocks, bonds, mortgages, notes, loans to any person or other property of any kind, real or personal, and irrespective of rules of law, including without limitation any investment of a type similar to any investment that is a part of the Trust Property as of the date of the Trust's execution; and any investment made or retained by the Trustee in good faith shall be proper although not of a kind or constituting a diversification considered by law suitable for trust investments.

3. To subdivide, raze, alter, dedicate, vacate, resubdivide, donate, partition or release real estate and any or all improvements thereon, and to renew or extend leases, amend, change or modify leases, contract to make leases, grant options to lease, options to renew leases, options to purchase the whole or any part of the reversion, contract regarding the manner of fixing the amounts of present or future rentals, and grant easements or charges of any kind, on or with respect to such real estate, or any right, title, or interest therein, all for such considerations and on such terms and conditions as the Trustee shall decide.

4. To borrow money for any purpose, on such terms and from such sources (including any Trustee acting hereunder) as the Trustee considers proper, and to mortgage or pledge any Trust Property.

5. To compromise, contest, arbitrate, or abandon claims or demands, all in the Trustee's discretion.

13

6. To have with respect to Trust Property all the rights of an individual owner, including the power to give proxies, to participate in voting trusts, mergers, consolidations, foreclosures, reorganizations, or liquidations, and to exercise or sell stock subscription or conversion rights.

7. To hold securities or other property in the name of a nominee, agent, trustee of a land trust, or in such other manner as the Trustee deems best with or without disclosing the trust relationship.

8. To employ agents and counsel and to delegate to them such of the Trustee's powers as the Trustee considers desirable.

9. To divide or distribute Trust Property in undivided interests, in pro rata or non pro rata shares, or in kind or partly in money and partly in kind, at such valuations as the Trustee considers fair, and to sell property for the purpose of making division or distribution; and, for administrative and investment purposes only, to consolidate any trust with any other trust in which any beneficiary hereunder has any interest, and for such purposes to hold such several trusts in one or more common accounts in which such trusts have undivided interests and to make joint or several distributions of the income or principal thereof.

10. To pay all taxes and all reasonable costs, charges, and expenses incurred in the administration of the trusts hereby created, including compensation to the Trustee and the Trustee's agents and counsel.

11. To purchase property from, sell property or make secured loans to, or otherwise deal without restriction with the executor, trustee, or other representative of any trust or estate in which any beneficiary has any interest, even though the Trustee be such executor, trustee, or representative without liability for loss or depreciation resulting therefrom.

12. To receive additional property from any person by will or otherwise.

13. To determine the allocation or apportionment of all receipts and disbursements between income and principal in accordance with applicable law or, in those cases in the Trustee's judgment not covered by that law, in an equitable manner.

14. To purchase and keep in force insurance of an appropriate nature and form and in a reasonable amount for the protection of the Trust Property or the ownership thereof.

15. To acquire insurance, endowment, and annuity policies on the Grantors' lives or on the life of any beneficiary of any trust created hereunder or on the life of any person in whom the Grantors or such beneficiary may have an insurable interest; provided, however, that no Trustee or Investment Advisor shall have or exercise any Incidents of ownership with respect to any policy insuring the life of such person.

16. To transfer the Trust Property (or any portion thereof) or the situs of the Trust administration, or both, at any time and from time to time from one jurisdiction to another jurisdiction and, regardless of any other designation of applicable law, to elect in writing that

the law of such other jurisdiction shall thereafter govern to such extent as may be necessary and appropriate.

17. To appoint or remove from time to time by written instrument any person or qualified corporation, wherever located, as special Trustee as to part or all of the Trust Property, including property as to which the Trustee does not act, and such special Trustee, except as specifically limited or provided by this Indenture or the appointing Instrument, shall have all of the rights, titles, powers, duties, discretions, and immunities of the Trustee.

18. To continue interests in or to organize or join in the organization of one or more corporations, partnerships (general or limited), joint ventures, limited liability companies, sole proprietorships, or other businesses (each referred to separately below as a "Business Entity") under the laws of any state or other jurisdiction and to transfer to a Business Entity any part or all of the Trust Property in exchange for securities of, or other evidences of interest in, such Business Entity; to participate in the management of a Business Entity by having the Trustee or one or more agents of the Trustee act as a partner, limited partner, employee, manager, officer, or director thereof, with appropriate compensation from the Business Entity, and by delegating powers to them, all as the Trustee shall consider advisable; and with respect to the foregoing activities, the Trustee or the agent or agents of the Trustee shall not be liable to third persons with respect to any action, not sounding in tort, unless such Trustee or agent fails to identify the Trust Property and reveal that he, she, or it is acting in a representative capacity. The Trustee hereby expressly is authorized to incur obligations on account of, or for the benefit of, a Business Entity, to make further investments in, or to advance or loan funds to, a Business Entity out of any property held by the Trustee, and, in general, to continue, conduct, and operate a Business Entity in like manner and with the same full power, authority, and discretion, either alone or in conjunction with the other participant or participants in such Business Entity, as the Grantors would have if the Grantors were operating the same as individuals.

19. To retain indefinitely, and invest any part or all of the Trust Property in, Business Entities, even though such investments may constitute a substantial part or all of the Trust Property; and to dispose of all or any part of an interest in a Business Entity to third parties, to the Business Entity, or to a party with a preexisting interest in the Business Entity, upon such terms as the Trustee deems reasonable, and without regard to any duty to solicit offers from third parties. The Trustee shall not be liable or responsible to any person for any diminution in value of the Trust Property that may result from disposing of, retaining, or investing in Business Entities, or for any loss resulting from lack of diversification caused by such investments.

20. To exercise control over an interest in a Business Entity in order to elect himself or herself as a member of the board of directors, managing partner, or other official of the Business Entity; to receive reasonable compensation for services rendered as a director, officer, or other official of any such Business Entity; and to deal in an individual capacity or as such director, officer, or other official of any such Business Entity with himself or herself as Trustee. The Grantors hereby expressly authorize the Trustee to take any such action without obtaining the approval or confirmation of any court, and, subject to the Trustee's duty to act fairly, the actions of the Trustee in these respects shall be as binding and conclusive upon all

15

of the beneficiaries hereunder as though no such relationship or possible conflict of interest existed.

21. To write, sell, purchase, exercise, or otherwise engage in options on securities or other property; and to invest in gold, silver, and other precious metals, works of art, antiques, foreign currencies, coins, jewels, postage stamps, rare books, and any other type of collectible.

22. To invest the Trust Property in, and sell or otherwise dispose of, remainder interests, income interests, life estates, annuity interests and any other terminable, term, or future interests or similar types of limited interests in property; and to make joint purchases and sales of any property or interests therein with any entity or person (including any trust hereunder or beneficiary thereof or the Grantors).

23. To explore, drill, mine, test, complete, equip, develop, maintain, improve, and operate oil, gas, or other mineral property by primary, secondary or other means; to sell, lease, sublease, release, exchange, convey, unitize and abandon the same; to grant powers of attorney and options; to enter into dry-hole, bottom-hole, or like commitments; to contract for the exploration, drilling, mining, developing, completing, equipping, operating, improving and financing of oil, gas, or other mineral property and the finding, recovery, production, processing, treatment, storage, transportation, marketing and conservation of oil, gas, and other minerals therefrom, including all constituents and products thereof, to the extent the Trustee considers the exercise of such powers necessary in order to conserve the Trust Property.

24. To execute oil, gas and mineral leases (including leases with pooling provisions and leases extending beyond the term of the trusts), contracts, deeds, agreements, mineral conveyances, assignments, division orders, transfer orders, grants, and other instruments or documents of every kind or character upon such terms and containing such provisions as the Trustee considers appropriate.

25. To invest in any farming property or interest and to participate in the management of any such property or interest by performing such acts as the Trustee shall consider advisable, using such methods as are commonly employed in the community in which such farming property or interest is located, including engaging agents, managers, and employees and delegating powers to them.

26. To divide (on the basis of fair market values at the time of division) any trust into separate trusts to provide:

a. a portion that would and a portion that would not be included in a beneficiary's federal gross estate if the beneficiary were to die at the time of division;

b. a portion that has an inclusion ratio for federal generation-skipping purposes of zero and a portion that has an inclusion ratio for such purposes of one; and

c. a portion for federal generation-skipping purposes that has only one transferor; and

16

d. separate portions for any other reason which the Trustee finds desirable.

Any trusts so divided shall be administered separately as the Trustee, in the Trustee's discretion, shall determine is appropriate under the circumstances.

27. Except while the Grantors or an agent retains the powers to invest all or any portion of the Trust Property during the Grantors' lives:

a. in a home (other than one in which the Grantors reside) in which a Relative may live either rent-free or upon such terms as the Trustee shall decide; and

b. in secured or unsecured loans to any one or more Relatives and Charitable and Political Organizations, with or without interest, for such duration and with such other terms as the Trustee shall specify (except such power may not be exercised to benefit the Grantors' own candidacy).

In the event of any such investment by the Trustee during the Grantors' lives, the Trustee, if the Trustee so elects, may make such investment subject to the obligations of a Net Gift. Any Gift Tax Liability not otherwise satisfied shall be paid by the Trustee and charged first to the income and, to the extent the income is insufficient, to the principal of the Trust Property of the trust in which such investment has been made.

28. To invest all or any portion of the Trust Property:

a. in any trade, business, or profession in which a Relative has entered or proposes to enter (except to the extent the investment of the Trust Property therein would produce an economic benefit to the Grantors apart from the Grantors' interest in any trust under this Indenture); and

b. in any investment in which a Relative has invested or proposes to invest (except to the extent the investment of the Trust Property therein would produce an economic benefit to the Grantors apart from the Grantors' interest in any trust under this Indenture).

29. After the second Grantors' death, with respect to all or any portion of the Trust Property of a trust named for a person created above, to invest:

a. in a home in which such person may live either rent-free or upon such terms as the Trustee shall decide; and

b. in secured or unsecured loans to such person, with or without interest, for such duration and with such other terms as the Trustee shall specify.

30. To have any rights and to do anything and everything with respect to Trust Property that an individual owner thereof would have or could do.

31. To perform any and all other acts in the Trustee's judgment necessary or appropriate for the proper and advantageous management, investment, and distribution of

17

the Trust Property, whether in the jurisdiction of the trust administration or in any jurisdiction of any trust beneficiary.

B. **Beneficiaries:** In making payments to any beneficiary in accordance with the provisions of this Trust Indenture, the Trustee may pay those assets directly to the beneficiary. Alternatively, the Trustee has discretion to distribute assets for the beneficiary's benefit in any one or more of the following ways:

1. **Distribution**:

a. to the beneficiary's natural or testamentary guardian;

b. to a custodian for the beneficiary under the Uniform Gifts to Minors Act or the Uniform Transfers to Minors Act, as the case may be, of either the jurisdiction in which the beneficiary or the custodian resides, or any other appropriate jurisdiction, with the custodial arrangement continuing until the beneficiary reaches 21 years of age rather than 18, if allowable under the laws of the relevant jurisdiction;

c. to the committee, guardian, or conservator of a beneficiary for whom such a fiduciary is qualified and acting;

d. to distribute assets to any person or institution who has the care, custody, or control of the beneficiary, or with whom, or at which, the beneficiary resides, for the beneficiary's sole and exclusive benefit;

e. to any trust of which the beneficiary is the current beneficiary (to be added to and administered as a part thereof);

f. to distribute assets in all ways provided by laws dealing with gifts to or distributions to persons under disability;

2. **Deposits**: To deposit assets in one or more accounts in the beneficiary's name with any brokerage firm, bank, savings bank, savings and loan association, or money market fund;

3. **Direct Expenditures**: To expend assets directly for the beneficiary's sole and exclusive benefit in any other manner, including paying the beneficiary's bills or guaranteeing and paying the beneficiary's obligations.

4. **Receipt:** The receipt of any person described in this Article for assets distributed, or evidence of any expenditure made in accordance with this Article, shall fully discharge the Trustees as to the distributed assets.

## IX. POWERS OF APPOINTMENT

A. **Permitted Appointees:** In exercising a power of appointment conferred on the donee of such power, the donee may, in addition to and not in substitution for any other provisions of applicable law relating to powers of appointment: appoint outright or in trust;

18

select the Trustee if he or she appoints in trust; create new powers of appointment in a Trustee or in any other appointee; if he or she makes an appointment in trust, grant such administrative powers to the Trustee as he or she deems appropriate; appoint a life interest to one or more objects of his or her power with remainder to others; appoint to his or her grandchildren or more remote descendants, even though the parents of such appointees are living; impose lawful conditions and restrictions upon any appointment; appoint different types of interests to different appointees; appoint to one or more objects to the exclusion of others; impose lawful spendthrift restrictions; and generally appoint to the permissible class of appointees by a document described in Article IX.C. in any manner he or she selects; always further provided that such power over the trust estate is irrevocably releasable in whole or in part and that, in addition to any other method of release recognized by law, such power may be released by a writing filed with the Trustee, irrevocably declaring an intention to release.

B. **Impermissible Appointees:** With respect to any special power of appointment conferred on a donee of such power in this Trust Indenture, however, (a) no appointment the donee makes may directly or indirectly benefit the donee, the donee's estate, the donee's creditors, or the creditors of the donee's estate and (b) no one who is not an object of the power may be benefitted. A special power of appointment over principal conferred on the donee shall not extend to any policy of insurance on such donee's life.

C. **Exercise of Power of Appointment:** A power of appointment conferred on the donee of such power in this Trust Indenture may be exercised only in one of the following manners: (a) by a clause in the will or codicil of the donee; (b) by a provision of a revocable trust (including, without limitation, any trust known as a "living trust" in the United States) settled by the donee; or (c) by an instrument in writing signed by the donee and acknowledged by the Trustee as such. Any such clause, provision, or instrument shall identify the power by specific reference thereto and shall dispose of any part or all of the property subject to the power.

1. **Will or Codicil:** In determining whether, in what manner, and to what extent a power of appointment hereunder has been exercised by will or codicil, the Trustee may act in reliance upon a court order admitting an instrument to probate as the will or codicil of the donee or a finding that the donee died intestate and, unless within nine (9) months after the donee's death the Trustee has actual notice of the existence of proceedings to probate a will or codicil of the donee, the Trustee shall assume that the donee died intestate.

2. **Revocable Trust:** In determining whether, in what manner, and to what extent a power of appointment hereunder has been exercised in a revocable trust, the Trustee may act in reliance upon a copy of the applicable revocable Trust Indenture certified by the Trustee thereof within nine (9) months of the donee's death that such copy is a true and correct copy (including all amendments thereto) and that such revocable Trust Indenture was in full force and effect as of the date of death of the donee, and unless the Trustee receives such a copy of any such trust within nine (9) months of the donee's death, the Trustee shall assume that the donee died with no such trust in existence.

3. **Donee's Acknowledged Instrument:** In determining whether, in what manner, and to what extent a power of appointment hereunder has been exercised in an instrument in

writing signed by the donee and acknowledged by the Trustee as such, the Trustee may act in reliance upon an original of such instrument delivered to it by the donee during the donee's lifetime.

D. **Donee's Increased Taxes:** To the extent that death taxes or other governmental charges payable upon the exercise or nonexercise of the donee's special power of appointment are imposed upon any appointee or taker in default of appointment in an amount greater than would have been imposed if the donee had not held such power, the Trustee shall pay such taxes or other charges from the Trust Property and reduce the share of such appointee or taker in default in an amount equal to the increment in taxes or charges imposed upon such person.

E. **Rights of Appointees Against Distributees:** No provision of this Article IX shall affect any right that an appointee or beneficiary in default of appointment may have against any distributee.

## X. PROTECTOR; POWERS OF PROTECTOR

A. **Designation of Protector and Successor Protector:** There shall be a Protector of each trust created by or pursuant to this Trust Indenture. The original Protector (herein referred to as the Protector, and which term shall include any successor Protector from time to time acting hereunder) is named on Schedule C attached hereto and made a part hereof. Every Protector shall have the power to appoint a successor Protector who shall succeed it in all powers and discretions. Any such appointment may be changed by the appointing Protector from time to time before to the time it becomes effective. If any Protector resigns or otherwise ceases to act as such and fails to appoint a successor, the Trustee shall have the power at any time to appoint a successor Protector hereto, but may not appoint itself or any party related to or subordinate to itself as Protector. If any Protector resigns or otherwise ceases to act as such and fails to appoint a successor Protector and the Trustee also fails to appoint a successor Protector, then the beneficiaries of the applicable trust (or Trust) shall have the power to appoint a successor Protector by majority vote. Any appointment of a successor Protector shall be by a written instrument delivered to the appointee and shall be effective at the time or under the conditions specified in such instrument and shall be endorsed on or attached to this instrument and signed by the new Protector.

B. **Removal or Resignation of Protector:**

1. **Involuntary Removal:** With regard to any Protector, upon (i) certification from two licensed doctors of medicine, each doctor affirming in a written instrument signed by him or her that he or she has examined such Protector, and has concluded, based upon such examination, that such Protector is unable to discharge its duties as Protector, or (ii) the Protector becoming subject to any bankruptcy laws, or if the Protector is a company, (a) entering into liquidation, whether compulsory or voluntary, provided that such liquidation is not merely a voluntary liquidation for the purposes of amalgamation or reconstruction, (b) entering into receivership, (c) having an administrator of the Protector appointed, or (d) being in any analogous state or subject to any analogous action in any jurisdiction, such Protector shall thereupon be deemed to have resigned as Protector, and the appointment of a

20

successor Protector shall be governed by Section A.

2. **Voluntary Resignation:** The Protector may resign at any time by delivering written notice thereof to the Trustee. Any resignation of a Protector shall take effect upon the receipt of the written notice by the Trustee and shall be recorded on Schedule C or otherwise be attached to this instrument.

C. **Protections and Exculpations:** The Protector shall have the benefit of the same indemnities, protections, and exculpations as conferred on the Trustee by the operation of law or under the terms of this Trust Indenture.

D. **Consent to Addition or Removal of Beneficiary:** The Protector shall have absolutely no duty whatsoever to consent or not consent to the addition or the removal of any Beneficiary. The Protector shall not be liable for consenting or for failing to consent to the addition or the removal of any such Beneficiary.

E. **Remove or Appoint Trustee and Designate Governing Law:**

1. Notwithstanding any other provisions of this Trust Indenture, the Protector shall have the power from time to time and at any time by deed or other written instrument delivered to the Trustee:

a. to remove any Trustee of any trust created by or pursuant to this Trust Indenture;

b. to appoint a new Trustee or Trustees as Trustee of any trust created by or pursuant to this Trust Indenture upon the resignation or removal of any Trustee; and

c. to designate the law of any jurisdiction (under which the terms of any trust created by or pursuant to this Trust Indenture shall be capable of taking effect) to be the governing law of any trust created by or pursuant to this Trust Indenture, and to declare that such trust shall thereafter be governed by and take effect according to the laws of the jurisdiction so designated, the courts of which shall become the forum for the administration of such trust, as well as all matters applicable to the administration thereof. Such a designation and declaration shall be set forth in a deed or other written instrument which shall contain the powers and provisions which are necessary to enable such trust to be capable of taking effect under the laws of such jurisdiction, and which may also contain such other powers and provisions as the Protector may determine to be in the best interest of the beneficiaries, provided that such powers and provisions do not infringe upon the rule against perpetuities that is applicable to such trust.

2. Upon the appointment of a new Trustee, the Trustee shall immediately stand possessed of the property of such trust upon trust for the new Trustee or Trustees, and shall transfer the same to the new Trustee or Trustees as soon as possible, so that such property shall continue to be held upon the applicable trust or trusts hereof, but subject to and governed by the laws of the applicable jurisdiction.

3. Upon the declaration by the Protector that the Trust or any trust established by or

pursuant to this Trust Indenture shall be governed by the laws of a new jurisdiction, the rights of all persons and the construction and effect of each and every provision of the Trust or such trust shall be subject to and construed only according to the laws of the designated jurisdiction.

F. **Appoint Additional Trustees:** The Protector shall have the power from time to time and at any time by deed or other written instrument delivered to the Trustee to appoint additional Trustees up to the maximum number permitted by law.

G. **Demand Accounting:** The Protector shall have the power, exercisable at any time, to demand an accounting by the Trustee, setting forth the receipts, disbursements, and distributions of both principal and income during the period of accounting and the invested and uninvested principal and undistributed income at the time of such accounting

H. **Require Bond:** Subject to the provisions of Article X.I., the Protector shall have the power, exercisable at any time, to require in writing that the Trustee, or any person or entity to whom the Trustee has delegated a power pursuant to any Article of this Trust Indenture, be required to give a bond or other security for the faithful administration of its or their duties under this Trust Indenture.

I. **Duration of Powers:** The duties and powers of the Protector shall be personal and shall cease upon the death of the person holding such office (if an individual) or upon the dissolution of the entity acting as Protector (in the case of a corporation or other entity acting as Protector). The powers of the Protector shall not be capable of being delegated or of being exercised by any personal representative, agent, or liquidator of the Protector.

J. **Written Consent:** Any provision of this Trust Indenture which requires the consent of the Protector shall require the Protector's prior written consent, on each occasion. Furthermore, failure by the Protector to give any consent or decision or to communicate with the Trustee regarding any consent or decision shall be deemed for all purposes and shall be treated by the Trustee as a refusal to consent.

K. **Compensation:** The Protector, if it is a company, shall be entitled to act as Protector on its usual terms and conditions in force from time to time, including (in addition to reimbursement of such company's proper expenses, costs, and other liabilities) the right to remuneration. The Protector, if it is an individual, shall be entitled to remuneration for its services as such, including the right to reimbursement of proper expenses, costs, and other liabilities. Notwithstanding the foregoing provisions of this Article X, however, the Protector's charges and remuneration shall not exceed reasonable and customary charges and remuneration for similar services charged by corporate Protectors in the same geographic area.

## XI. CONSTRUCTION PROVISIONS

A. **Definitions:**

1. **Acknowledged Instrument:** "Acknowledged instrument" means a written

22

instrument executed in the presence of two subscribing witnesses, or a notary public.

2. **Assets**: "Assets" or "Trust Assets" means insurance policies; cash, accounts in banks, savings institutions, and money market funds; tangible personal property; securities, partnership interests and other intangible personal property; real property; oil, gas, mineral interests, and other natural resources; commodity futures; foreign exchange; and anything else which may be the subject of ownership.

3. **Business Entity:** The term "Business Entity" shall include but not be limited to corporations, general partnerships, limited partnerships, limited liability partnerships, limited liability companies.

4. **Charitable Organizations:** Any organizations, contributions to which can qualify for an income, gift, or estate tax deduction under the Internal Revenue Code of 1986 as amended or any successor federal income tax law (the "Code").

5. **Child and Issue**: "Child" and "children" means descendants of the first degree, whether born or adopted before or after the execution of this Trust Indenture. "Issue" means a descendant or descendants of any degree, whether born or adopted before or after the execution of this Trust Indenture. These terms include adopted children with full effect as if they were the natural children of the adoptive parent. Anyone who is born alive shall be regarded as having been a legitimate, living descendant of his or her parents during the entire period of gestation. An illegitimate child (that has not been adopted, legitimated, or legally recognized) shall not be included as a descendent on the child's paternal side.

6. **CPI Adjustment**: An adjustment, up or down as the case may be, by the change during the previous 12 months in the Consumer Price Index for All Urban Consumers for all consumer goods as published by the U.S. Department of Labor (or any successor index as determined by the Trustee).

7. **Distribute**: "Distribute" means "pay to or apply for the benefit of."

8. **Gift Tax Liability:**

a. GENERALLY: All gift and generation-skipping taxes, including interest, additions to tax, penalties, and similar charges on such taxes imposed upon the Grantors and attributable to such transfer or investment, with respect to a transfer or investment during the Grantors' lifetimes.

b. CALCULATION OF AMOUNT OF GIFT TAX LIABILITY: The amount of gift tax that shall be attributable to a transfer or investment shall equal the product of the Grantors' total gift tax liability for the year in which the transfer or investment is made times a fraction, the numerator of which equals the taxable amount of such transfer or investment and the denominator of which equals the total amount of taxable transfers attributable to the Grantors for the same year.

c. CALCULATION OF GST TAX LIABILITY: The amount of generation-skipping

23

transfer tax that shall be attributable to a transfer or investment shall equal the product of the Grantors' total generation-skipping transfer tax liability for the year in which the transfer or investment is made times a fraction, the numerator of which equals the taxable amount of the generation-skipping transfer attributable to the transfer or investment and the denominator of which equals the total taxable amount of generation-skipping transfers attributable to the Grantors for the same year.

d. ASSESSMENTS OF INTEREST AND PENALTIES: If any interest, additions to tax, penalties, or similar charges are assessed on any of the Grantors' gift or generation-skipping transfer taxes payable pursuant to the above provisions of this Section, then for the year in which the transfer is made such amounts shall be charged hereunder in the same proportions as the underlying tax is charged.

e. SEPARATE APPLICATION: The respective formulas shall be applied separately to each federal and state gift and generation-skipping transfer tax.

f. REDUCTION FOR NET GIFT: The amount of a Gift Tax Liability shall be reduced to the extent such liability has been made subject to the obligations of a Net Gift.

9. **Grantors**:  *Patrick Parker Walsh & Hannah Judy Walsh*

10. **Grantors' Income Tax Liability Attributable to The Trust**: The amount calculated pursuant to this Trust Indenture.

11. **Grantors' Estimated Income Tax Liability Attributable to The Trust**: The amount calculated pursuant to of this Trust Indenture.

12. **Heirs at Law**: "Heirs at Law" means the then-living individuals who shall be determined under the intestacy laws of the Belize, and which would now govern the distribution of the personal property of a resident dying without creditors, unmarried, owning only the distributable assets.

13. **Internal Revenue Code**: "Internal Revenue Code" means the United States Internal Revenue Code of 1986 as amended, in effect on the date of the execution of this Trust Indenture, and reference to any provision or section of that Code shall be deemed to refer to the provision or section of the United States federal tax law in effect from time to time that corresponds to the provision or section referred to that was in effect on the date of the execution of this Trust Indenture.

14. **Per Stirpes**: "Per stirpes" with reference to the issue of any individual means that the stocks begin with the children of such individual and that no distribution at any generational level shall be per capita.

15. **Personal Representative**: "Personal representative" means the individual or entity authorized by the terms of a will, court order, revocable Trust Indenture, or otherwise, to represent the estate of the person designated, and includes an executor or administrator of such estate.

16. **Political Organizations**: All parties, committees, associations, funds, PACs, or other organizations (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for the function of (i) influencing or attempting to influence the selection, nomination, election, or appointment of any individual to federal, state, or local public office or office in a political organization, or the election of Presidential or Vice Presidential electors, whether or not such individual or electors are selected, nominated, elected, or appointed; or (ii) influencing or attempting to influence the general public, or segments thereof, or public officials or both, with respect to legislative matters, elections, or referendums, all to the extent permitted by law.

17. **Relatives**: The descendants at any level of the Grantors' mothers, and the ancestors of those descendants; and such descendants and ancestors in each case shall include such persons whether now living or born or adopted in the future. Children adopted by any Relative and the descendants by blood or adoption of such children shall be considered to be the descendants of such Relative and of the ancestors of such Relative, but only if adopted prior to attaining age eighteen (18). Despite the above provisions, the Grantors shall not be a Relative.

18. **S Stock**: Stock in a corporation that is an "S corporation" under the Code.

19. **Securities**: "Securities" includes: common, preferred, and other classes of capital stock; warrants, options, and puts and calls; bonds, debentures, notes, and other fixed income-bearing obligations, regardless of conversion privileges, and units of participation in common trust funds, investment trust stocks, and mutual fund shares, regardless of whether they are listed, traded, domestic or foreign, or subject to investment letters or other contractual or legal restrictions.

20. **Tax:** Each federal, foreign, or state (or political subdivision thereof) tax, including interest, additions to tax, penalties, and similar charges thereon.

21. **Trust Property**: All of the property described in Schedule A attached hereto (which the Grantors have transferred to the Trustee), any other property transferred to the Trustee, all investment and reinvestment thereof, all substitutions therefore, and all income therefrom.

B. **Contingent Beneficiaries**: For purposes of this Trust Indenture, a direction to dispose of the principal or income of any trust created under this Trust Indenture to the "contingent beneficiaries" means a distribution of such property to the Heirs at Law of Grantors.

C. **Governing Law:**

1. **Laws of Belize:** Each trust created by or pursuant to this Trust Indenture is established under the laws of Belize, and shall be governed, construed, and regulated by such laws.

2. **Foreign Administration:** The Trustee may administer each trust created by or

25

pursuant to this Trust Indenture from such place or places (whether inside or outside of Belize or any new jurisdiction designated pursuant to this Trust Indenture) as the Trustee shall from time to time determine to be appropriate, without prejudice to the laws declared herein to be applicable hereto, and whether or not the law of such place or places shall be the law declared to be the applicable law hereunder. However, if at any time there is more than one Trustee, the place of administration shall be decided by a majority of the Trustees in accordance with the best interests of the beneficiaries of this Trust Indenture, and in the event that a majority decision cannot be reached, the place of administration shall be decided by the Trustee first named herein.

### 3. Change of Governing Law:

a. Subject to the provisions of this Trust Indenture, the Trustee shall, with the consent of the Protector, have the power, by deed or other written instrument, from time to time and at any time, to designate the law of any jurisdiction (under which the terms of any trust created by or pursuant to this Trust Indenture shall be capable of taking effect) to be the governing law of any trust created by or pursuant to this Trust Indenture, and to declare that such trust shall henceforth be governed by and take effect according to the laws of the jurisdiction so designated, the courts of which shall become the forum for the administration of such trust, as well as all matters applicable to the administration thereof. Such a designation and declaration shall be set forth in a deed or other written instrument which shall contain the powers and provisions which are necessary to enable such trust to be capable of taking effect under the laws of such jurisdiction, and which may also contain such other powers and provisions as the Trustee may determine to be in the best interest of the beneficiaries, provided that such powers and provisions do not infringe upon the rule against perpetuities that is applicable to such trust.

b. Upon the declaration by the Trustee (with the consent of the Protector) that the Trust or any trust established by or pursuant to this Trust Indenture shall be governed by the laws of a new jurisdiction, the rights of all persons and the construction and effect of each and every provision of the Trust or such trust shall be subject to and construed only according to the laws of the designated jurisdiction. Under no circumstances may this Trust be governed by any state or federal laws of the United States of America.

### 4. Appointment to Another Trust:

a. The Trustee, with the consent of the Protector, by deed or other written instrument, revocable or irrevocable, may appoint the whole or any part of the Trust Property upon another trust (including a new trust created by the Trustee with the consent of the Protector pursuant to this paragraph).

b. Any such appointment shall be in accordance with and subject to the powers and provisions of such other trust, so long as such appointment does not infringe upon the rule against perpetuities that is applicable to the trust from which the property was appointed. Any one or more (exclusive of the other or others) of the beneficiaries of any trust created by or pursuant to this Trust Indenture may be entitled to benefit from such other trust. The deed or other written instrument under which the property is appointed upon another trust may create

26

any discretionary trusts for the benefit of any one or more (exclusive of the other or others) of the beneficiaries of any trust created by or pursuant to this Trust Indenture and may confer any powers upon any persons (including but not limited to the Trustee).

c. Upon any such appointment being made, the Trustee may transfer to the Trustee of such other trust the property subject to such appointment, and thereupon the trust or trusts created by or pursuant to this Trust Indenture which held such property shall cease with respect to such property, and the property shall for all purposes be subject to the provisions and powers of the other trust and be subject to and governed by the law applicable to the other trust, whether or not such law shall be the law applicable to this Trust Indenture.

D. **Notice:** Notwithstanding any provision of this Trust Indenture to the contrary, and unless contrary to any provision of the laws governing the administration of any trust created by or pursuant to this Trust Indenture:

1. **Notice to Trustee:** Whenever any notice is to be given to the Trustee in accordance with the provisions of this Trust Indenture, the Trustee may waive any requirement that such notice be in writing and may accept notice in such form and manner as the Trustee may deem appropriate in the circumstances, including notice from third parties purporting to have authority to give such notice. Waiver of written notice on one or more occasions shall not impair the right of the Trustee to insist on written notice on subsequent occasions, however similar or dissimilar the subsequent occasions may be;

2. **Notice By Protector or Beneficiary to Trustee:** Whenever any notice is to be given by the Protector or any beneficiary to the Trustee in accordance with the provisions of this Trust Indenture, such notice may be given by delivering or mailing the same to the most recent address furnished by the Trustee to the Protector or such beneficiary who is giving notice or in such other manner and form as the Trustee may from time to time request, and such notice shall be deemed to have been given (even if not actually received by the Trustee) on the date of such delivery, or if mailed, ten days after mailing by registered mail in a postage paid envelope to such address;

3. **Notice By Trustee to Any Person:** Whenever any notice is to be given by the Trustee to any person or persons in accordance with the provisions of this Trust Indenture, such notice may be given by mailing or delivering the same to such address or addresses as may be furnished to the Trustee for such purpose from time to time or in such other manner and form as such persons may from time to time request, and such notice shall be deemed to have been given (even if not actually received by the relevant persons) on the date of such delivery, or if mailed, ten days after mailing by registered mail in a postage paid envelope to the last known address of such persons, or if no addresses have been furnished to the Trustee or if no directions have been given to the Trustee respecting the giving of such notice, then in such manner and form as the Trustee, in the circumstances, may deem to be in the best interest of such persons.

E. **Multiple Counterparts:** For convenience of the parties, this Trust Indenture is being executed in multiple counterparts, any one of which shall be deemed to be an original instrument.

27

F. **Headings:** The headings, titles, and subtitles in this Trust Indenture have been inserted solely for convenient reference, and shall be ignored in its construction.

G. **References:** A reference to a paragraph without identifying the Section or Article in which it appears is to a paragraph of the same Section or Article in which the reference appears. A reference to a Section without identifying the Article in which it appears is to the same Article in which the reference appears.

H. **Gender and Number:** Wherever the context requires, the feminine shall be substituted for the masculine, singular for plural, and vice versa.

*IN WITNESS WHEREOF*, the parties have set their hands and affixed their seals the day and year first above written. The Trustee, by joining in the execution of this Trust Indenture, signifies his acceptance of the trust.

Grantor, Patrick P. Walsh

Grantor, Hannah Judy Walsh

Trustee    Mr. Luis J. Ek
For and on behalf of
Georgetown Trust, Ltd.

Protector

Witness

Witness

Witness

Witness

28

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Schedule A

LIST OF ASSETS TRANSFERRED

| | Value |
|---|---|
| 1. Shiloh Oil Company, LLC (100% of member interests) | $950,000.00 |
| 2. Eagle Creek Management, LLC (100% of member interests) | $250,000.00 |
| 3. Florida Land Trust | $1,500,000.00 |
| 4. Cash | $200,000.00 |

29

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Schedule B

BENEFICIARIES

|  | Relationship | Suggested Percentage of Assets |
|---|---|---|
| **Primary Beneficiaries ~** | | |
| 1.  Patrick P. Walsh | Grantor | 100% of principal and income. |
| 2.  Hannah Judy Walsh | Grantor | 100% of principal and income. |
| **Secondary Beneficiaries ~** | | |
| 3.  Patrick Adrian Walsh | Son | 10% of principal and income subject to Child Clause provisions. |
| 4.  Brandon Parker Walsh | Son | 10% of principal and income subject to Child Clause provisions. |
| 5.  Hannah-lynn Victoria Walsh | Daughter | 10% of principal and income subject to Child Clause provisions. |
| 6.  Olivia Julianne Walsh | Daughter | 10% of principal and income subject to Child Clause provisions. |
| 7.  Ava Brooke Walsh | Daughter | 10% of principal and income subject to Child Clause provisions. |
| 8.  Jackson Cole Walsh | Son | 10% of principal and income subject to Child Clause provisions. |
| 9.  Bradley Hudson Walsh | Son | 10% of principal and income subject to Child Clause provisions. |
| 10. Brighton Peace Walsh | Daughter | 10% of principal and income subject to Child Clause provisions. |
| 11. Landon River Walsh | Son | 10% of principal and income subject to Child Clause provisions. |
| 12. Unborn Walsh Child | | 10% of principal and income subject to Child Clause provisions. |
| **Successor Beneficiaries ~** | | |
| 13. Grandchildren of Grantors | | 100% of principal and income per stirpes subject to Child Clause provisions. |

30

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Schedule B

BENEFICIARIES ~ CONTINUED

|  | Relationship | Suggested Percentage of Assets |
|---|---|---|

*Contingent Beneficiaries ~*

14. Ryan & Joy Anders                          50% of principal & income

15. Matt & Frances Schmidt                     50% of principal & income

ULTIMATE CONTINGENT BENEFICIARY
*In the event that no living issue of Grantors or Grantors' siblings shall survive*

16. Antioch Baptist Church (Gainesville, FL)

31

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Schedule C
DESIGNATION AND ACCEPTANCE OF PROTECTOR

Appointment Accepted by

_____

Protector: _____

**THE WALSH**
**INTERNATIONAL & IRREVOCABLE FAMILY TRUST INDENTURE**

Schedule D
AFFIDAVIT OF SOLVENCY

We, Patrick P. & Hannah Judy Walsh, do hereby certify that on the date of execution of this Trust Indenture we are solvent in all of my business and financial matters and have no adverse judgments or claims against us.

_____        _____
Patrick P. Walsh                                          Witness

_____        _____
Hannah Judy Walsh                                      Witness

33